Exhibit "1"

## IN THE CIRCUIT COURT FOR THE EIGHTEENTH JUDICIAL CIRCUIT
## IN AND FOR SEMINOLE, COUNTY FLORIDA

LOUIS SPAGNUOLO,                                    CASE NO.: 2021-CA-002275

    Plaintiff,

v.

INSURANCE OFFICE OF AMERICA,
INC., a Florida Corporation, VALLI S.
RITENOUR, individually, JOHN K.
RITENOUR, individually, HEATH
RITENOUR, individually, GEORGE
ANTHONY TATUM, individually, and
1188 PARTNERS, LLC, a Florida
Limited Liability Company.

    Defendants.

_____

## SECOND AMENDED COMPLAINT

**COMES NOW** Plaintiff, LOUIS SPAGNUOLO, ("Plaintiff" or "Spagnuolo"), by and

through his undersigned counsel, and sues Defendants INSURANCE OFFICE OF AMERICA,

INC. ("IOA"), VALLI S. RITENOUR ("Valli"), JOHN K. RITENOUR ("John", "Defendant

John" or "Chairman Ritenour), HEATH RITENOUR ("Heath"), GEORGE ANTHONY TATUM,

ESQUIRE ("Tatum"), and 1188 PARTNERS, LLC ("1188 Partners"), (hereinafter collectively

"Defendants"), and alleges as follows:

## JURISDICTION AND VENUE

1.    This is an action seeking damages in excess of Thirty Thousand Dollars and No/100

($30,000.00).

2.    Venue is appropriate in Seminole County as ordered by the Honorable Circuit Court

of the Seventeenth Judicial Circuit in and for Broward County on August 4, 2021.  Additionally,

all of the named Defendants reside in Seminole County, Florida.

3.      Plaintiff Louis Spagnuolo is a natural person and Florida resident residing in Broward County, Florida and is otherwise *sui juris*.

4.      Defendant Insurance Office of America, Inc. is a Florida corporation, authorized to and doing business in Seminole County, Florida

5.      Defendant Valli S. Ritenour is a natural person and Florida resident residing in Seminole County, Florida and is otherwise *sui juris*.

6.      Defendant John K. Ritenour is a natural person and Florida resident residing in Seminole County, Florida and is otherwise *sui juris*.

7.      Defendant Heath Ritenour is a natural person and Florida resident residing in Seminole County, Florida and is otherwise *sui juris*.

8.      Defendant George Anthony Tatum is a natural person and Florida resident residing in Seminole County, Florida and is otherwise *sui juris*.

9.      Defendant 1188 Partners, LLC is a Florida limited liability company, authorized to and doing business in Seminole County, Florida.

## GENERAL ALLEGATIONS

### *LOUIS SPAGNUOLO'S BACKGROUND AND ENTREPRENEURIAL SUCCESS*

10.     Plaintiff Spagnuolo was born in Boston, Massachusetts and worked from a very young age to support his family through challenging circumstances.

11.     In 1989, Spagnuolo was accepted into the University of Miami School of Business where he earned a Bachelor's degree in Finance in 1993.

12.     During his junior year of undergraduate studies, Spagnuolo began his entrepreneurial career in an import/export business.

13.    In the mid-1990s, Spagnuolo invested the money he had made in the import/export business and opened a restaurant.

14.    Thereafter, he began working in the venture capital space where he gained front-line experience in the field of business, finance, and the Internet.

15.    While at Cenetec and Crossbow Ventures, Spagnuolo grew his network of high-net worth investors leading to his recruitment into The Royal Bank of Canada ("RBC") by one of its top executives.

16.    At RBC, Spagnuolo's network of clients and business connections grew exponentially to include professional athletes, musicians, entertainers, actors, high net worth individuals and large businesses.

17.    By 2004, Spagnuolo had been recognized as a prominent and respected business entrepreneur.

18.    Over the course of the next decade, he was featured in numerous media publications, such as Forbes Magazine, The South Florida Business Journal, The Palm Beach Post, The Sun-Sentinel, South Florida Business Leader Magazine, Fox Business News, BankRate.com and South Florida Opulence.

19.    Spagnuolo also had a "weekly" business and finance column in the Sun Sentinel Newspaper for approximately three (3) years in or about 2006.

20.    Spagnuolo also dedicated his time and financial resources contributing to national and international charitable organizations.

21.    That charitable work included serving as a Board Member for Habitat for Humanity International; serving as a member of the Boys & Girls Club of Broward County; contributing and raising money for Make a Wish, Special Olympics, Caring Bridge Treatment For Children's

Cancer, Camp Fiesta Children's Caring Center, Haven House For Boys, Stop Hunger, I Have A Dream, Charley's Fund For The Treatment of Duchene, Muscular Dystrophy, Orphans of War Campaign, Broward County Alzheimer's Association, and One Family & Disease Society.

22.    In 2012, Spagnuolo was recruited into "Tiger 21."

23.    Tiger 21 is a prestigious ultra-high net worth investor group which requires, at a minimum, $20 million in investible assets to be considered for membership.

24.     In 2012, there were approximately 200+ members of Tiger 21 nationwide segmented into geographical regional groups; Spagnuolo held a leadership position in Tiger 21's Miami and Palm Beach Chapters.

25.    In 2014, Spagnuolo was featured in Forbes Magazine in an article entitled *Tiger 21: Meet The Wealthiest, Most Powerful Social Networking Group In The World* (https://www.forbes.com/sites/markfidelman/2014/01/07/tiger-21-meet-the-wealthiest-most-powerful-social-networking-group-in-the-world/?sh=58883a671489) which stated in relevant part: "[Tiger 21 is] no ordinary group, with an average net worth of $75 Million the 220 strong membership has the purchasing power of a small country."

### IOA IS FOUNDED BY JOHN AND VALLI

26.    Defendant IOA was founded in 1988.

27.    Today, it is a full-service insurance agency and one of the largest independent insurance companies in the United States.

28.    According to its website, IOA currently has: (1) 60 Plus Locations between the United States and United Kingdom; (2) 80,000 Plus Clients; (3) 1,400 Plus Team Members; and (4) boasts of placing in excess of $2.5 Billion in premiums.

### *IOA'S SIGNATURE UNIVERSAL OFFER*

29.     John's and his wife Valli's purported vision in founding IOA was born out of John being allegedly "screwed" by a former employer/insurance agency.

30.     From that experience, John created IOA's "Signature Universal Offer:"

     a.    branding IOA as offering the highest commissions to its insurance agents in the industry for new and residual business;

     b.    allowing all IOA Insurance Agents to keep their own their own book of business; and,

     c.    allowing all IOA Insurance Agents to freely leave IOA at any time and retain ownership of all their insurance accounts.

31.     IOA Chairman John Ritenour consistently promoted his Signature Universal Offer in many online articles, on YouTube and on IOA's website, such as the following:

     a.    The IOA model is different in many other respects. We believe that it is more cost-effective to keep existing customers than to just write new accounts. This is why [IOA pays] **the same 60% commission on new and renewal business**. We are committed to aggressive yet prudent expansion nationwide to continue the growth and profitability of the company. [Emphasis added].

                **John Ritenour,** IOA Chairman, former CEO and founder.  October 07, 2004 *Insurance Journal* interview.

                https://www.insurancejournal.com/news/southeast/2004/10/07/46613.htm

     b.    Opening his agency–then Insurance Office of Florida in Apopka, Fla.–the first thing [John Ritenour] did was to design a contract where agents received 60 percent of the commission and the agency 40 percent, on both new and renewal business. "It's the reason for our growth through the years–it's very producer-friendly," he noted.

                He also knew producers wanted to see three things–ownership of their book, input on the way the agency would be run and stock ownership in the agency. Those elements were designed into IOA's producer contracts and remain a hallmark of the agency today.

**John Ritenour,** IOA Chairman, former CEO and founder.  September 11, 2005 *Property Casualty 360* interview

*https://www.propertycasualty360.com/2005/09/11/ioa-seeks-partners-not-just-producers/*

c.    "When we took our shot, we said, 'Let's build something unique.' I knew what I wanted because I knew what I wasn't getting at that other company. I cast the vision of five things:

    i.      I wanted to take the greed out of the insurance business
    ii.     I wanted to share the wealth with all of my team
    iii.    I wanted book equity
    iv.    I wanted new and renewal commissions to be the same
    v.     I wanted my people to have stock ownership.

Those were my five goals and what I set out to do in 1988."

**John Ritenour,** IOA Chairman, former CEO and founder discusses the founding principles of Insurance Office of America.

https://cargocollective.com/news-feed/John-Ritenour-Says-IOA-Leadership-is-Headed-in-the-Right-Direction

d.    "I structured a commission that was higher than anyone else in the business, I structured an opportunity for my producers to come in and own a piece of the business and gave them an opportunity to be part of the leadership and management of the company"

John Ritenour, IOA Chairman, former CEO and founder discusses the founding principles of Insurance Office of America on IOA's YouTube Channel February 2019.

https://youtu.be/OUTkAZ_dFz4

e.    John Ritenour and his wife, Valli, started up the insurance company in 1988 after John was tired of other insurance employers changing up deals to mitigate his success. IOA was built on hard work and designed to offer the best deals in the industry-deals that wouldn't change when a producer was making a lot, or a year was particularly tough.

Based on John Ritenour's personal values, IOA ensures agents own their books of business, commissions remain unchanged, and the client is held in the highest value every time. This has turned into more than two decades of continued success and steady growth.

John **Ritenour,** IOA Chairman, former CEO and founder interview withTechTimes.com.

https://www.techtimes.com/amp/articles/257224/20210219/heath-ritenour-and-john-ritenour-ioa-sports-partners.htm

f.    "You get the best compensation contract in the industry and have a vested ownership interest in your book"

IOA Website. https://www.ioausa.com/for-brokers/

32.    The same Signature Universal Offer was acknowledged and touted by IOA Executives and its Recruiter, Daniel Mahalic ("Mahalic"):

a.    "[IOA] pays our agents 60% for both new and renewal business,"

**Mark Manfre**, one of IOA's Original Partners and Executive Vice President.

Quoted from July 6, 2006 Statement.

https://roughnotes.com/rnmagazine/2006/july06/07p058.htm

b."…. [IOA Agents] were getting paid crazy commission split like 60% … for new business and renewals…I'd also heard that the producers were getting ownership and their books"

**Bruce Johnson**, IOA Vice President and Author of: "Earn It, Own It – The Disruptive Agency Model Where Top Insurance Producers Are Finding Freedom, Wealth, and Their Dream Life."

Quoted from May 14, 2018 Statement.

https://authorhour.co/earn-it-own-it-bruce-johnson/

c."I mentioned to Mr. Spagnuolo that IOA offered all its licensed insurance agents the best compensation in the industry… on all new and renewal business and that he like all IOA agents would own their own book of business and were free to leave at any time, while taking their accounts with them."

 **Daniel Mahalic**, IOA Recruiter, February 2019 Statement.

33.    The Signature Universal Offer was used by John, Valli and IOA to attract potential insurance agents, including Spagnuolo, to IOA.

*October 2012: IOA Recruits Spagnuolo*

34.        In 2012, IOA began its efforts to recruit Spagnuolo to join IOA.

*IOA Recruiter Mahalic's Efforts to Recruit Spagnuolo*

35.        Daniel Mahalic ("Mahalic") at all times material hereto was a Recruiter for IOA:



36.        Mahalic worked for IOA beginning in 2010.

37.        In October 2012, Mahalic reached out to Spagnuolo via Mahalic's IOA's Recruitment Twitter Account, http://twitter.com/IOARecruiter, inquiring as to Spagnuolo's interest in joining IOA as an insurance agent.

38.        After receiving Mahalic's Twitter message and having an initial telephone call, Spagnuolo and Mahalic met for lunch.

39.        At that lunch, Spagnuolo described his extensive network of relationships with the "rich and famous".

40.        Mahalic inquired if Spagnuolo was open to joining IOA as an insurance agent and influencing his high-net-worth business and personal connections to consider IOA for their insurance needs.

41.        Mahalic expounded that becoming an IOA insurance agent was the best opportunity for Spagnuolo to synergize his business connections with IOA's insurance brokerage capabilities.

42.     Mahalic clearly and unequivocally stated to Spagnuolo that Spagnuolo would be paid under IOA's Signature Universal Offer if he decided to join IOA as an Insurance Agent.

43.     Almost immediately after their lunch meeting, Spagnuolo began performing his due diligence and research of IOA's reputation and business model which confirmed Mahalic's representations.

44.     Mahalic would ultimately speak to Spagnuolo numerous times from October 2012 regarding becoming an IOA Insurance Agent and never deviated from offering Spagnuolo IOA's Signature Universal Offer.

### *Spagnuolo's Good Faith Efforts During his Recruitment by IOA*

45.     Following and as a result of that lunch meeting, Spagnuolo became interested in building a relationship with IOA.

46.     In order to begin building that relationship, Spagnuolo in good faith began to introduce IOA agents to some of his business contacts in the private jet industry.

47.     For example, in response to, and in reliance on, Mahalic's representations, in late October or early November 2012, Spagnuolo in good faith reached out to one of his connections in the aviation industry, **Million Air**, and discussed with them the possibility of having the company's insurance underwritten by IOA.

48.     **Million Air** is an aviation company operated throughout the US, Canada and the Caribbean comprised of 1,000 employees and more than 800 aircraft.

49.     With over more than 30 years of experience of Fixed Base Operations ("FBO"), Million Air is designs, develops and operates new FBOs for general and commercial aviation users of a particular airport.

50.     Upon information and belief, IOA, through its agents, reached out to Spagnuolo's connection at Million Air for purposes of IOA writing insurance for the company.

51.     On October 30, 2012, Mahalic confirmed with Spagnuolo that he had followed up with **Million Air** in an email under the subject: "**Talking to the Chairman [Defendant John] about you**" meaning that the possibility of Spagnuolo joining IOA as an insurance agent was being discussed at the highest level – the desk of Defendant Chairman John Ritenour.

52.     In December 2012, Mahalic continued IOA's pursuit of Spagnuolo as an IOA insurance agent by arranging numerous meetings and introductions to other IOA Insurance Agents and employees.

53.     That pursuit culminated in December 2012, when, in an effort to convince Spagnuolo of IOA's offer, Mahalic arranged a meeting between Spagnuolo and IOA's Chairman, Defendant John Ritenour, at the Ritz Carlton in Orlando.

54.     At that meeting, John pitched Spagnuolo IOA's Signature Universal Offer, which was identical to Mahalic's October 2012 representations as well as those discovered by Spagnuolo's due diligence.

55.     On the personal side, John touted his religious beliefs and integrity and claimed that the same were the foundation of IOA's culture.

56.     IOA's Chairman, Defendant John Ritenour, would ultimately personally lead the charge to hire Spagnuolo as an IOA Agent.

57.     During their many conversations and meetings, Chairman Ritenour represented to Spagnuolo that IOA was founded on ethics, morals and integrity, and also repeated verbatim IOA's Signature Universal Offer.

*January 2013: IOA Ultra/IOA Media Business Concept Fails To Materialize*

58.    In or about late January 2013, Spagnuolo and Mahalic discussed a plan for building a concept business model for Spagnuolo's high net worth business connections.

59.    The model called for the creation of separate business entities "IOA Ultra" and "IOA Media."

60.    On February 7, 2013, John sought to close the deal with Spagnuolo becoming an IOA agent while they created "IOA Ultra" and "IOA Media" (collectively the "Separate Entities").

61.    Spagnuolo becoming an IOA Insurance Agent under the terms of IOA's Signature Universal Offer was completely separate and independent of the conceptual creation of the Separate Entities.

62.    In theory, these two separate entities would be owned "50/50" by Spagnuolo and John and would seek to acquire high net worth accounts through leveraging Spagnuolo's relationships/ownership of media companies and John's IOA related companies such as payroll services, technology solutions, environmental underwriting, and matchup promotions.

63.    While there was much "talk" about the Separate Entities, John ultimately decided not to pursue these ventures, "claiming that The [IOA] Board didn't grant him permission."

***Chairman Ritenour Takes Charge of Spagnuolo's Recruitment***

64.     On February 7, 2013, John took Spagnuolo out for a whirlwind tour of his Alaqua Country Club where he continued to recruit Spagnuolo as an IOA agent.

65.    On February 8, 2013, John sent Spagnuolo an email stating in part "I enjoyed our time together [the day before on February 7, 2013] and look forward to seeing your chart on what [IOA Ultra and IOA Media] would look like".  **Exhibit "A."**

66.    On February 11, 2013, Spagnuolo traveled to California, having been invited to the Grammy Awards.

67.     On February 11, 2013, John emailed Spagnuolo stating in relevant part: "Valli and I want to thank you for the Gift Baskets we received today.  I hope you had fun at the Grammys last night and have a safe flight home."  **Exhibit "B."**

68.     On March 1, 2013, Mahalic emailed Spagnuolo that John would be accompanying Spagnuolo on all meetings with "C level" (meaning CEO, COO, CFO) executives at the various businesses, **including the National Football League Miami Dolphins**, and stated in relevant part:

> I spoke to John Ritenour about you meeting with the Dolphin's CFO to discuss the insurance for the Miami Dolphins and some of the insurance opportunities like the Ferrari Challenge and the Boca Raton Resort.
>
> **John Ritenour has determined that he will accompany you on the "C" Level meetings regarding IOA insuring the clients**. [Emphasis added].

69.     On March 5, 2013, based upon Spagnuolo's submitted business to IOA at that point, John wrote an email to Mahalic announcing that he would be the direct "point of contact" regarding "**everything**" Spagnuolo was working on with IOA.

From: "John Ritenour (LNG)" <John.Ritenour@ioausa.com<mailto:John.Ritenour@ioausa.com>>
Date: March 5, 2013, 11:17:33 AM EST
To: "Daniel Mahalic (LNG)" <Daniel.Mahalic@ioausa.com<mailto:Daniel.Mahalic@ioausa.com>>
Subject: Re: New Client: Commercial Realty Insurance: ZRealtyGroup.com<http://ZRealtyGroup.com>

I will be your point of contact on everything that you and Louis open up for now.

John K. Ritenour
Chairman
Insurance Office of America, Inc.

***March 2013: Spagnuolo Accepts IOA's Offer***

70.     On the morning of March 8, 2013, IOA, through Mahalic and John, once again extended IOA's Signature Universal Offer to Spagnuolo via telephone.

71.     During the March 8, 2013, morning telephone call, Spagnuolo accepted IOA's Signature Universal Offer.

72.     Subsequent to the morning telephone conference on March 8, 2013, John invited Spagnuolo to drive to IOA Headquarters in Longwood Florida that very day such that the two could shake hands as he indicated that "***his handshake was his bond***."

73.     Spagnuolo and Mahalic traveled to IOA Headquarters and Mahalic  rolled out IOA's proverbial "red carpet" which included a personalized Specialty Bakery Cake to celebrate Spagnuolo joining IOA to become one of its insurance agents.



*Spagnuolo is Integrated As An IOA Agent*

74.    On March 20, 2013, John and Valli took Spagnuolo out to a Congratulatory Dinner at John's Alaqua Country Club.

75.    At this dinner, John instructed Spagnuolo to procure his "220-Property and Casualty" Insurance License in order for him to place Property and Casualty Insurance with IOA which would maximize Spagnuolo's contributions to IOA.

76.    John told Spagnuolo that he would direct IOA's Licensing Coordinator, Angela Harms, to get Spagnuolo's Health and Life license appointed with one of IOA's companies immediately.

77.    On March 22, 2013, **Chairman Ritenour directed IOA's Licensing Coordinator to "get Plaintiff's [Insurance Licenses Appointed."**

**From:** John Ritenour (LNG)
**Sent:** Friday, March 22, 2013 3:31 AM
**To:** Angela Harms (LNG)
**Cc:** 'ldavid@privatejet.com'
**Subject:** FW: Life and Health Re-Appointment

Angela,

Please get Louis's license placed with one of our Life & Health companies. Please copy me when this is finished.

78.    On April 3, 2013, in response to Spagnuolo completing important steps relative to securing his Property and Casualty License in weeks rather than 6 months, John praised Spagnuolo efforts as "**Amazing!!!!!!!!**"

79.    On May 1, 2013, IOA Field Operations Supervision Angela Harms ("Harms") wrote an email to Spagnuolo regarding the status of his insurance appointment stating in relevant part: "**The appointment process is completed...**" **Exhibit "C**."

80.      On May 3, 2013, Spagnuolo wrote an email referencing a news article that ranked IOA as the 2nd largest insurance agency in Florida.    Defendant John responded on the same day: "***With your success next year we will have a shot at number one*!!!!**"  **Exhibit "D.**"

81.      On May 8, 2013, John wrote Spagnuolo an email stating "**Great Job**" with regard to him passing his Property & Casualty Insurance Exam.

82.      On the same day, John wrote Spagnuolo an email asking him how he preferred his name on his IOA Corporate Email Address.



83.      On May 9, 2013, Spagnuolo advised John that his email address of choice was simply LDS@IOAUSA.COM but that he was also assigned   Louis.Spagnuolo@ioausa.com, which matched the company format:

84.      On May 9, 2013, John instructed Spagnuolo to email IOA employee Angela Harms about getting his licensed placed with IOA.

85.      On May 10, 2013, Mahalic emailed Spagnuolo welcoming him to the IOA family.  Chairman Defendant John Ritenour added he was: "***Enjoying working with [Spagnuolo]***".

**Daniel Mahalic (LNG)** <Daniel.Mahalic@ioausa.com>                    Fri, May 10, 2013 at 5:17 PM
To: Louis David <ldavid@privatejet.com>
Cc: "Louis D. Spagnuolo" <Louis.Spagnuolo@ioausa.com>, "John Ritenour (LNG)" <John.Ritenour@ioausa.com>, Jessica
Delplain <jessica.delplain@gmail.com>

Welcome to the IOA family Louis!  You did fantastic today. Warmest Regards, Daniel Mahalic on behalf of IOA

Sent from my iPhone

---

**John Ritenour (LNG)** <John.Ritenour@ioausa.com>                    Fri, May 10, 2013 at 5:28 PM
To: Louis David <ldavid@privatejet.com>, "Daniel Mahalic (LNG)" <Daniel.Mahalic@ioausa.com>
Cc: "Louis D. Spagnuolo" <Louis.Spagnuolo@ioausa.com>, Jessica Delplain <jessica.delplain@gmail.com>

I am enjoying working with you.

86.      On May 20, 2013, IOA's Licensing Coordinator, Angela Harms wrote Spagnuolo an email stating that his insurance licenses were officially with IOA:

**Angela Harms (LNG)** <Angela.Harms@ioausa.com>                    Mon, May 20, 2013 at 8:23 AM
To: Louis David <ldavid@privatejet.com>
Cc: "John Ritenour (LNG)" <John.Ritenour@ioausa.com>

The state advised all is in order with your appointment and CE.  Now they just want your money…  They have mailed you a
letter and invoice (approx $395 they believe) which is a required penalty to pay for the timeframe you didn't have an
appointment on your license.

Please let me know once received and submitted, and I'll continue to keep an eye on both licenses being issued.  Your 2-20
should be issued fairly quickly as there is no issue surrounding that application.

Thanks!

**Angela Harms**

Field Operations Supervisor

87.      On June 5, 2013, Harms wrote Spagnuolo another email, this time about the logistics of paying for his insurance license fees. Harms directed Spagnuolo to write a check directly to IOA and IOA would issue a check "to the [State of Florida]" to pay his fees.  Harms indicated that: [The Department of Insurance] would prefer it coming from an agency."

Angela Harms (LNG) <Angela.Harms@ioausa.com>                          Wed, Jun 5, 2013 at 8:20 AM
To: "Louis David (ldavid@privatejet.com)" <ldavid@privatejet.com>

I would suggest you make your check payable to IOA, and we issue the check to the state from our end.  I think they would
prefer it coming from an agency.  Should be the $395 backdate appointment fee + $60 new appointment fee = $455

88.    From 2013 through 2019, Spagnuolo would wire funds into IOA's operating account and IOA would pay the State of Florida directly on his behalf for his insurance license fees.

89.    On June 13, 2013, an **IOA Account Executive, Lissette Smith**, emailed Spagnuolo indicating that Federated National was processing his insurance appointment (the first of many through IOA, all of which are still active through IOA until June 2023) meaning Spagnuolo would be allowed to write Federated National insurance products for IOA.

90.    On June 17 and June 19, 2013, Harms of IOA emailed Spagnuolo that his 215 license was reinstated and active, and that his 220 license was active with IOA.

91.    On September 27, 2013, Harms of IOA emailed Spagnuolo about updating his continuing education credits for his insurance licenses and to continue to do so each and every year.

92.    On May 17, 2017, IOA employee Charlene Gerlach emailed Spagnuolo about his continuing education requirements for his license with IOA.

***Spagnuolo's Insurance Submissions to IOA***

93.    During his tenure as an IOA insurance agent, Spagnuolo's influence with his business connections resulted in IOA quoting insurance for major national and international accounts.

94.    The following are examples of Spagnuolo's introductions, submissions and resulting written insurance with IOA, as well as Spagnuolo's interactions with IOA's executives,

management, agents, employees and administration before and after he joined IOA as an insurance

agent on March 8, 2013:

a.   **MILLION AIR AVIATION:** In late October or early November 2012, Spagnuolo reached out to one of his connections in the aviation industry, **Million Air**, and discussed with them the possibility of having the company's insurance underwritten by IOA.

b.   **IOA EXECUTIVE AVERILL**: In December 2012, Mahalic continued IOA's pursuit of Spagnuolo by arranging numerous meetings and introductions to IOA Agents, such as **Prominent IOA Producer and Vice President of IOA Aerospace John Averill ("Averill")**. Spagnuolo went on to meet with Averill in person many times at IOA's Longwood, Florida office.

c.   **BRUCE TURKEL**: On January 9, 2013, Spagnuolo submitted to IOA one of his **VIP Clients, Bruce Turkel ("Turkel"), for Private Flood Insurance** for his home in the Florida Keys. That submission resulted in IOA quoting **Turkel** an insurance policy.

d.   **BILL COSBY'S GULFSTREAM IV PRIVATE JET**:   On January 16, 2013, Mahalic confirmed to Averill that Spagnuolo provided the **"Bill Cosby Gulfstream IV Insurance Package."**

---

**Head's up**
1 message

**Daniel Mahalic (LNG)** <Daniel.Mahalic@ioausa.com>                    Wed, Jan 16, 2013 at 12:25 PM
To: Chip Hunter <chip@v1aviation.com>
Cc: "John Averill (ATLA)" <John.Averill@ioausa.com>, "ldavid@privatejet.com" <ldavid@privatejet.com>

I totally appreciate your time Mr. Hunter.  As a respectful courtesy to Louis Spagnuolo, I got approbation to share the Bill Cosby GIV package and the edited licensing agreement.

Sent from my iPhone

---

e.   **IOA EXECUTIVE FAVA**: On January 21, 2013, Mahalic wrote an email to **Melanie Fava, IOA's Vice President of Employee Benefits ("VP Fava"),** **Averill** and Spagnuolo stating in relevant part: "**Things are going swimmingly well w/Private Jet…"**

f.   **IOA EXECUTIVE BRESSI**: On January 30-31, 2013, Spagnuolo met with **IOA's Vice President of Employee Benefits VP Fava and Carol Bressi ("Bressi"), an IOA employee**, at IOA's Headquarters located in Longwood, Florida to discuss Spagnuolo's business holdings and contacts in the private jet industry relative to converting same into written insurance with IOA as broker of record.

g.    **FERRARI OF CENTRAL FLORIDA**: On February 8, 2013, a day later, Spagnuolo communicated with Defendant John about Spagnuolo's connections with **Ferrari of Central Florida** about the potential for submitting insurance for **Racetrack Events** which are exclusive opportunities for exotic sports car owners to use their high-performance vehicles on a private racetrack.

h.    After speaking with Spagnuolo, Defendant John directed Mahalic to write an introductory email to **Ray Forsythe ("Forsythe"), the General Manager of Ferrari/Maserati of Central Florida, Inc.,** which stated in relevant part: "…<u>on behalf of Insurance Office of America, thank you for the opportunity to have IOA review your risk management needs. **[Plaintiff Louis] thank you for the warm introduction</u>**."

**CEO OF FERRARI NORTH AMERICA MATTIACCI**: On February 8, 2013, Spagnuolo communicated with Defendant John and Mahalic that, in addition to his relationship with Ferrari of Central Florida, he also had vast relationships "with Ferrari of Palm Beach, Fort Lauderdale, Miami, Tampa, North Carolina, Long Island and Wide World in New Jersey." Shortly after their initial communication, an in-person meeting was organized by Spagnuolo between Defendant John and **Forsythe, the General Manager of Ferrari of Central Florida**.

i.    In the February 8th email, Spagnuolo additionally advised:

Also I am personal friends with the [**CEO of Ferrari North America, Marco Mattiacci**] and the Head of the Ferrari Challenge, so in essence we have the possibility to provide all the drivers for the Challenge the insurance coverage [Forsythe] is requesting and not just his drivers from his dealership in Orlando. [Emphasis added].

In that same email, Spagnuolo also mentioned that he had similar relationships with **Lamborghini Dealerships**. **Exhibit "E."**

j.    **IOA TRACK INSURANCE SHOOPMAN**: On February 19, 2013, Mahalic introduced Spagnuolo to **Nick Shoopman ("Shoopman"), IOA's inhouse insurance agent of IOA Track Insurance**. **Shoopman** had been seeking to write Racetrack insurance and looking to make inroads into the Racetrack community.

On Friday February 22, 2022, Spagnuolo and Shoopman met in person and discussed how Shoopman could leverage Spagnuolo's connections to the owners of exotic vehicles through the friendships he built as an owner of numerous exotic vehicles himself, as well as the business connections he had built with various exotic car dealerships. As well, Shoopman and Spagnuolo discussed how IOA could build out

**www.RaceTrackInsurance.com**, a website domain that was owned by Spagnuolo, to write insurance policies for IOA.

On February 25, 2013, Shoopman wrote Spagnuolo an email which stated in relevant part:

> At this point, I am working off the premise that Ferrari Challenge is looking for physical damage coverage for the remaining 6 races of the year for the 12-15 cars that participate in each race. If I have anything incorrect, please let me know.

k.   **FERRARI OF PALM BEACH**: Spagnuolo's efforts as an IOA Agent led to IOA writing "**Fourteen (14) Individual Policies**" for the Ferrari of Palm Beach Track Day Event.

l.   **IOA AGENTS KERR AND SMITH**: On February 21, 2013, Spagnuolo was introduced to **IOA Commercial Agent Richard Kerr and Personal Lines Supervisor, Lisette Smith ("Smith")** to place non-exotic car insurance which Spagnuolo submitted to IOA.

m.   **BILLIONAIRE USMANOV**: On March 1, 2013, Spagnuolo shared with Mahalic that he was working on a deal for IOA to ensure the **Airbus A340 of Billionaire Alisher Usmanov,** who at the time was listed in the "Forbes 400" as one of the wealthiest persons in the world and who had partnered with Spagnuolo in a separate business venture related to the Private Jet industry. Spagnuolo had a business relationship with Usmanov through his interest in Jetsmarter.com.

n.   **BUSINESS DEVELOPMENT CONTACT EKEMAN**: On March 4, 2013, Spagnuolo introduced his contact **Zeynep Ekeman ("Ekeman")** to Mahalic. Ekeman heads a realty company and specializes in large commercial retail centers, office buildings, and multi-family properties. Spagnuolo indicated that **Ekeman** was interested in forming a partnership with IOA to be a preferred vendor for writing insurance. **Exhibit " F."**

(1) On March 4, 2013, Mahalic, "on behalf of IOA, John Ritenour" wrote to **Ekeman** stating:

> Louis Spagnuolo and I will be meeting with the Chairman [John Ritenour] this Friday at 4:00 pm. We will brief the Chairman on the objectives illustrated in this email from Louis. If you could explain, briefly what risk mgmt. will you need, what cities and states and who is your current

insurance broker it would help me prepare for Friday.  I have copied the Chairman to get the ball rolling.

(2) **Ekeman** responded that she was looking for insurance for "<u>National Golf Courses, 100+Multifamily Projects (new construction and existing), Office Complexes, Shipping Vessels (International Client), Livestock, etc.</u>" In her email, **Ekeman** noted that the introduction "couldn't have come at a better time."

o.  <u>**BUSINESS DEVELOPMENT CONTACT BERGER**</u>: On March 5, 2013, Spagnuolo met with **Attorney William Berger ("Attorney Berger") of Greenspoon Marder**, and thereafter emailed Berger introducing Defendant John and providing Berger a link to IOA's products and clients, to wit: www.ioausa.com/industry-expertise.

On March 6, 2013, attorney Berger indicated a willingness to refer business to Spagnuolo, and by extension IOA, as he was impressed by Spagnuolo's presentation the day prior.

p.  <u>**BUSINESS DEVELOPMENT CONTACT VOGEL**</u>: On March 6, 2013, Spagnuolo had lunch with **Ronnie Vogel, the head of Ferrari Racing in Fort Lauderdale** to discuss insuring his client's vehicles with IOA similar to **Ferrari of Palm Beach**.

q.  <u>**RAY LEONARD, JR:**</u> In early March, **2013**, Spagnuolo reached out to his Business Contact Ray Leonard, Jr. **(entrepreneur and son of Boxing Legend Sugar Ray Leonard)** for purposes of insuring with IOA.

r.  <u>**PRESIDENT OF IOA SPORTS GAROFALO**</u>: On March 7, 2013, **Paul Garofalo, on behalf of IOA Sports Partnerships**, asks Spagnuolo to follow up on Spagnuolo's introduction to the team of **Ray Leonard Jr., which he did.**

s.  <u>**BUSINESS DEVELOPMENT CONTACT KAPP**</u>: On March 11, 2013, Spagnuolo connected with **Commercial Real Estate Attorney Stuart Kapp ("Attorney Kapp") of the Prominent Law Firm "Proskauer Rose"**, about IOA writing business for his clients' existing properties and acquisitions. Subsequently, Attorney Kapp provided Spagnuolo a client referral which Spagnuolo submitted to IOA who quoted a policy.

t.  <u>**THE LEARNING EXPERIENCE CEO WEISSMAN**</u>: On March 12, 2013, Spagnuolo contacted **Richard Weissman, CEO of The Learning Experience ("TLE")** through Ekeman. At that time, TLE was one of the largest franchisors of pre-schools in the United States. After Spagnuolo spoke with TLE's CEO, TLE was interested in receiving a comprehensive package of insurance quotes from IOA.

u.  **IOA EXECUTIVE TODD O'CULL**: On March 12, 2013, Spagnuolo informed Mahalic of TLE's interest in IOA and that CEO Weissman was presently in Orlando.  On March 13, 2013, Mahalic emailed Weissman and immediately introduced him to **IOA Insurance Agent Todd O'Cull ("O'Cull")** who specialized in corporate insurance.  **TLE would end up binding all its insurance with IOA.**

v.  **TOM IRELAND OF THE IRELAND COMPANIES**: On March 14, 2013, Spagnuolo emailed Mahalic that Spagnuolo would be meeting with "one of his closest friends" **Tom Ireland of The Ireland Companies**, which holds "a massive real estate portfolio."  On March 15, 2013, Defendant John responded directly to Spagnuolo: "Louis, if we could get a summary of his current insurance program it would be helpful to show Tom what we can do for him."

w.  **BUSINESS PROSPECTS**: In late March 2013, Spagnuolo introduced Defendant John to opportunities with **JDM & Associates, a real estate company, Johnny Bohmer Racing, race car manufacturer, and Reed Horth of Robin Rile Fine Arts**.

x.  **UNIVERSITY OF MIAMI EXECUTIVE TAMOUSH**: On April 2, 2013, Spagnuolo reached out to **Brian Tamoush, a high-level administrator at the University of Miami** on behalf of IOA.

y.  **BUSINESS DEVELOPMENT CONTACT GARY**: On April 3, 2013, Spagnuolo reached **out** to another one of his business contacts, **Peter Gary, the CEO of Pinnacle Advertising ("Gary")** to discuss IOA insuring very large accounts.

z.  **NATIONAL FOOTBALL LEAGUE MIAMI DOLPHINS:** Spagnuolo and Gary discussed IOA ensuring the **National Football League ("NFL")** Miami Dolphins as Gary was a close friend of the **CFO of the Miami Dolphins**

aa.  **BOYS AND GIRLS CLUB OF BROWARD COUNTY:** Spagnuolo and Gary would also discuss IOA insuring the Boys and Girls Club of Broward County as he was a member of the corporate board of the Organization.

On April 3, 2013, after speaking with Gary, Spagnuolo wrote an email to ensure that IOA worked with non-profits such as the Boys & Girls Club of Broward County which stated in relevant part:

This morning I had a meeting with Peter Gary of Pinnacle Advertising and Marketing & Affinity Entertainment, who also has been tapped to be the incoming Chairman for the Boys and Girls Club of Broward County.

If you are not already aware, the Boys & Girls Club of Broward County is essential (sic) a who's who of South Florida's Ultra High Net Worth Individuals.

**Wayne Huizenga (Swisher), Stephen Ross (Related/Miami Dolphins), Christine Lynn (Lynn University, Felix Sabates (Trinity Yachts) and my friends John Staluppi and John Rosatti (Burger Fi Restaurants & A Current IOA Client) are just a few of its members**.  [Emphasis added].

**Exhibit "G**."

bb.  **IOA CHAIRMAN SOUTH FLORIDA MEETINGS**: On April 11, 2013, Spagnuolo had scheduled a powerhouse day of high-profile meetings ("April 11, 2013 Meetings") in South Florida between "C" level executives and IOA's team including Defendant John who flew down on his "Private Jet".    The meetings included: **(1) TLE; (2) Attorney Kapp of the Proskauer Rose law firm; (3) Attorney Berger of the Greenspoon Marder Law Firm; (4) "Heisman Trophy Winner" Gino Torretta of GAMCO Asset Management; and (5) Matthew Organ Executive Vice President for the Boys and Girls Club of Broward County** (collectively, the "Companies").

cc.  **CONGRATULATORY EMAILS:** In several emails, Spagnuolo would be congratulated by IOA Insurance Agents, John, Mahalic and others for his work to submit the Companies to IOA.  For example, on April 11 and 12, 2013, corresponding "thank you" emails from IOA were sent praising Spagnuolo for putting the April 11, 2013, Meetings together and for the opportunities created for IOA by Spagnuolo.



**Re: Sincere Thanks**
1 message

**Todd OCull (LNG)** <todd.ocull@ioausa.com>                                    Thu, Apr 11, 2013 at 8:15 PM
To: Louis David <ldavid@privatejet.com>
Cc: "John Ritenour (LNG)" <John.Ritenour@ioausa.com>, "Daniel Mahalic (LNG)" <Daniel.Mahalic@ioausa.com>, "Amy Leonard (LNG)" <Amy.Leonard@ioausa.com>

Louis,

Thank you for your time today and your coordinating efforts to make our visit very productive. It was a pleasure meeting a few of your key relationships. You have an impressive network and I look forward to the opportunity to capitalize on our partnership.

Again, thanks!

Todd M. O'Cull, ARM
Insurance Office of America
todd.ocull@ioausa.com<mailto:todd.ocull@ioausa.com>
407.998.4240 Direct
407.300.7211 Cell

dd.    **IOA SENDS "THANK YOU" EMAILS FOR APRIL 11, 2013, MEETINGS:** On April 12, 2013, Defendant John and IOA, through Mahalic, sent "very sincere" "thank you" emails to the Companies and individuals they had met with on April 11, 2013.  For example, on April 12, 2013, Defendant John directed Mahalic to write an email to Kapp **specifically indicating that Plaintiff was part of IOA's "Risk Mgmt Team"** stating in relevant part:

> Stuart T. Kapp, Esq., Just in case we have not made it abundantly clear, **on behalf of Insurance Office of America and their Chairman John Ritenour and Risk Mgmt Team, Louis Spagnuolo and myself. (sic) Thank you for the very thorough exposition on Proskauer Rose**. I know speaking on behalf of IOA, we would provide astounding customer service and risk mgmt for Proskauer on the Employee Benefits and Lawyer Liability coverages as well as for your client.  Don't think of Insurance Office of America as just another Insurance Brokerage.  If I may be forthright, think of www.ioausa.com as Proskauer's personal partner in the Insurance Brokerage and Risk Mgmt arena.  I am very sincere about speaking on everyone's behalf. [Emphasis added].

A copy of Mahalic's April 12, 2013, email to Kapp is appended hereto marked **Exhibit "H."**

ee.    **KAPP REFERRAL FOR INSURANCE QUOTE**: On April 12, 2013, Kapp referred Spagnuolo an insurance quote request for a $10.8 Million Dollar residential property purchase which Spagnuolo submitted to IOA's Lisette Smith. On April 18, 2013, Kapp wrote to Spagnuolo saying the insurance "quote looked very attractive."  **Exhibit "I."**

ff.    **HEISMAN TROPHY WINNER TORRETTA**: On April 11, 2013, **Heisman Trophy Winner" Gino Torretta** wrote an email to Spagnuolo and Defendant John discussing a referral source and scheduling a meeting.  **Exhibit "J."**  On April 11, 2013, Defendant John emailed "**Heisman Trophy Winner" Gino Torretta** thanking him for his time at the April 11, 2013 meeting procured by Spagnuolo relative to IOA insuring the University of Miami. **Exhibit "K."**

gg.    **NFL MIAMI DOLPHINS**: On April 16, 2013, Spagnuolo and Mahalic met with four senior members of the **National Football League Miami Dolphins**, including **Mark Brockelman, Senior Vice President and CFO, Brandon Shore, Finance and Legal Affairs Specialist, David Murphey, Director of Corporate Partnerships**, and **Twan Russelll, Director of**

**Youth and Community Programs at Dolphin's Stadium**.  Spagnuolo had procured the meeting which was aimed at IOA insuring the Miami Dolphins and the $400 Million construction project for stadium enhancements and improvements.

On April 16, 2013, Spagnuolo prepared an email thanking the Miami Dolphins team for the meeting and to schedule another meeting which would be attended by Defendant John personally.  Said email was approved by Defendant John who requested the next meeting to occur on April 29, 2013, to further discuss the partnership between **IOA** and the **Miami Dolphins**.

hh.    **BRAMAN MOTORS GENERAL MANAGER HARTE**: On April 16, 2013, at Spagnuolo's request and direction, Defendant John, as the founder and Chairman of "the 8th largest privately held insurance agency in the nation (at that time)," wrote an email to Ken Harte, General Manager of Braman Motor Cars. Defendant John's email to Harte's personal email stated in relevant part:

> **On behalf of Louis Spagnuolo, it was requested that I reach out to you and introduce myself and my company to Braman Automotive Group and its subsidiaries.**
>
> It is my understanding, that due to the diverse nature of your cumulative exposures, there has been a challenge with encompassing all polices under one provider in lieu of policy limits.
>
> As the 8th largest privately held insurance agency in the nation, I would like to extend assistance with addressing these exposures.   If possible (sic) I would like to coordinate an initial discovery meeting to see how IOA can help Braman Automotive and its subsidiaries.
>
> On behalf of my entire team, please accept my immediate thanks for this opportunity.  [Emphasis added].

**Exhibit "L."**

ii.    **MERGERS AND ACQUISITIONS**: Spagnuolo also submitted merger and acquisitions opportunities for IOA to grow through purchasing insurance agencies.

(3) In April 2013, Spagnuolo submitted the opportunity for IOA to purchase **TDC Risk Management** after contacting its **Principal, Jim**

**Schwarzkopf**. TDC specialized in exotic car insurance which would have fit perfectly with IOA's initiatives.

(4) On April 23, 2013, Spagnuolo wrote Defendant John an email regarding his recommendations as to another possible **merger and** acquisition possibility for IOA, **ABX Healthcare Solutions**. On that same day, Defendant John sent an email to Spagnuolo which indicated that he would discuss Plaintiff's concerns and recommendations with his son, and **IOA CEO, Defendant Heath** and stated in relevant part: "**I will be discussing this with Heath and then I will have a meeting with [ABX] to let them know our concerns. I agree with everything you said [Plaintiff] in this e-mail.**" [Emphasis added]. **Exhibit "M."**

jj.   **CHAIRMAN RITENOUR REFERRING TO SPAGNUOLO AS "AGENT"**: On April 17, 2013, after receiving an email from Schwarzkopf, Defendant John engaged an email conversation with Spagnuolo stating in relevant part: "Is he a better AGENT than you?" [Emphasis and capitalization added]. Spagnuolo responded, "Let's not go that far…." Defendant John concluded: "My money is on you." **Exhibit "N."**

kk.   **ENTREPRENEUR DAVID BILLITIER**: On April 30, 2013, Spagnuolo submits contact David Billitier to IOA for insurance quotes on a residential home, individual vehicles, a motorcycle, personal watercraft, and a boat. **Exhibit "O."**

ll.   **RITENOUR PRIVATE JET**: On May 2, 2013, Defendant John's Administrative Assistant email states that he is flying via Private Jet into Opa-Locka Private Jet Center "FBO" for an upcoming powerhouse meeting with: (1) NFL Miami Dolphins; (2) Braman Motors; (3) Boys & Girls Club of Broward County; and (4) John Furman of Furman Insurance. **Exhibit "P."**

mm.   **MATT ORGAN**: On May 6, 2013, **Matt Organ** of the **Boys & Girls Club of Broward County** wrote Spagnuolo an email indicating that they would be open to IOA submitting insurance quotes. **Exhibit "Q."**

nn.   **IOA SENIOR REPRESENTATIVE LEONARD**: On May 6, 2013, **Senior Account Representative for Employee Benefits for IOA, Amy Leonard**, wrote an email to **Matt Organ** and **Roberta Murphy of the Boys & Girls Club of Broward County**, which stated in relevant part:

> **Our mutual friend and colleague**, Louis has advised that IOA may have an opportunity to work with the Boys & Girls Clubs of Broward County. First and foremost, thank you for this opportunity!

We also understand that we are working on a tight time frame based upon your 6/1 plan year renewal. We would like to understand your current plans, what your current broker has presented and the organization's objectives in this upcoming renewal…

**Exhibit "R."**

oo.  **GINO TORETTA/IOA AGENT MORTON**: On May 9, 2013, Defendant John emailed Spagnuolo asking him if one of his contacts, **Heisman Winner Gino Toretta**, could help with IOA's efforts to insure University of Miami, as IOA had been pursuing "The U" through IOA Insurance Agent Rod Morton.

John Ritenour (LNG) <John.Ritenour@ioausa.com>                           Thu, May 9, 2013 at 5:00 AM
To: Louis David <ldavid@privatejet.com>
Cc: "Rod Morton (LNG)" <Rod.Morton@ioausa.com>

Do you think Gino could help on this?

---

**From:** Rod Morton (LNG)
**Sent:** Tuesday, May 07, 2013 10:53 AM
**To:** John Ritenour (LNG)
**Subject:** The "U"

John

We now have a splendid opportunity to the provide benefits at our scheduled May 21st 2013 meeting. As you are aware, I have met with the President, CFO and Senior Vice President. We have also met with Andrea Orange P&C Risk Manager. I will be again meeting this Thursday May 9th with Athletic Director and also the Head Football Coach whom both I have a good relationship with.

pp.  **MERGER AND ACQUISITION FURMAN INSURANCE**: On May 9, 2013, Mahalic emailed Spagnuolo, Defendant John, and Spagnuolo's contacts, **Scott Furman of Furman Insurance** to confirm a May 10th meeting at Boca Aviation. Defendant John attended this meeting and traveled to same via his private jet to discuss how IOA could work with **Furman Insurance**, with a possibility of purchasing the agency at a later time.

qq.  **SPANGNUOLO VETTING IOA CANDIDATES**: On or about May 10, 2013, Spagnuolo was asked to assist Malahic and Defendant John to "vet" a potential IOA candidate who was applying to become an IOA Insurance Agent, Dora Villavicencio. In July 2013, Plaintiff also assisted in vetting David Boone.

rr.  **CEO QUAIL**: On May 13, 2013, Spagnuolo emailed **Brian Quail** and **Matt Organ of The Boys & Girls Club of Broward County**, following

up on their recent meeting directed at IOA writing insurance for the organization.

ss.    **IOA HEAD OF IT TURNER**: On May 13, 2013, Spagnuolo worked with **Chris Turner, the head of IT for IOA** to get Spagnuolo set up with his IOA email and resolve other technology issues.

tt.    **MERGER AND ACQUISITIONS SCHWARZKOPF**: On May 16, 2013, Defendant John and Spagnuolo emailed about one of Spagnuolo's contacts, Jim Schwarzkopf of TD Risk Management, with whom Defendant John met as Defendant John expressed interest in acquiring the high-end insurance company.

uu.    **BUSINESS DEVELOPMENT CONTACT BLYER**: On May 19, 2013, **David Blyer, CEO of Donor Community**, an entity that provides many non-profit organizations with software, emailed Spagnuolo thanking him for introducing him to Defendant John and IOA. Spagnuolo had reached out to Blyer regarding introducing IOA to Blyer's Clients which resulted in a meeting between Spagnuolo, Defendant John and Blyer.

vv.    **BUSINESS DEVELOPMENT CONTACT CARTUZZO**: On May 22, 2013, Mahalic contacted Defendant John regarding Spagnuolo's relationship with Chris Cartuzzo, of Malibu, California. Cartuzzo is an extremely prominent realtor in California who averages about **$300 Million** annually in Real Estate sales annually.

ww.    **IOA AGENT RUEL**: Mahalic was informing Defendant John that he had spoken with California **IOA Insurance Agent Eileen Ruel** and she welcomed being the Account Executive on all of Spagnuolo's accounts in California.

---

**Contact Eileen Ruel**
1 message

**Daniel Mahalic (LNG)** <Daniel.Mahalic@ioausa.com>                    Wed, May 22, 2013 at 1:38 PM
To: "Louis D. Spagnuolo" <Louis.Spagnuolo@ioausa.com>, Louis Spagnuolo <ldavid@privatejet.com>, "John Ritenour (LNG)" <John.Ritenour@ioausa.com>, "Eileen Ruel (SFC)" <Eileen.Ruel@ioausa.com>

    John, Louis Spagnuolo has a relationship with Chris Cartuzzo, from Malibu, CA. Chris is one of the biggest Realtors in the USA. His average house he sells is 20 MM in value. He averages 300 MM a year in Real Estate sales.   I got counsel today from Steve Rathsack formally of Willis, Peggy Arledge, formally from Wells Fargo and Eileen Ruel of IOA on Insurance Premiums and Earthquake and Fire coverages as well.   Eileen welcomes being the AE on Louis's leads in CA w/ Chris.  Sincerely, Dan

---

xx.    **BUSINESS DEVELOPMENT CONTACT CANTER**: On May 31, 2013, Spagnuolo emailed one of his contacts, a prominent sports agent **David Canter of DEC Management**, who represented dozens of NFL players regarding working with IOA to bring its products to Canter and his contacts/clients.

yy.   **GOVERNOR RICK SCOTT**: On May 31, 2013, Spagnuolo emailed Defendant John and Mahalic about Spagnuolo's upcoming meeting with then **Governor, Rick Scott**.  On June 1, 2013, Defendant John emailed Spagnuolo that **John Furman of Furman Yachts** had contacted him.

zz.   **"WELCOME TO IOA"**: On June 3, 2013, Ruel, the California producer for IOA emailed Spagnuolo welcoming him to IOA:

> Eileen Ruel (SFC) <Eileen.Ruel@ioausa.com>                                           Mon, Jun 3, 2013 at 12:41 PM
> To: Louis David <ldavid@privatejet.com>
> Cc: "Louis D. Spagnuolo" <Louis.Spagnuolo@ioausa.com>
>
> Hi Louis,
>
> Welcome to IOA!
>
> I left you a message, however I'm not sure if I was calling the number you prefer.  I would love to chat with you a bit when you have a chance.
>
> All the best,
>
> Eileen

aaa.  **WARREN HENRY AUTOMOTIVE**: On June 4, 2013, Spagnuolo emailed with his contact, former **NFL player Floyd Raglin, of Warren Henry** Automotive, about providing insurance services.

bbb.  **IOA ACCOUNTING EMPLOYEE BOYD**:  Robin Boyd, an IOA employee in the accounting department emailed Spagnuolo: "***I am paying your license fees of $455.00. Please send Insurance Office of America $455.00 via wire into our CNL Bank Operating Account. The instructions are attached***."

ccc.  **BUSINESS DEVELOPMENT CONTACT RAGLIN**:  On June 4, 2013, Spagnuolo emailed with his contact, former **NFL player Floyd Raglin, of Warren Henry Automotive**, about providing insurance services.

ddd.  **CFO NFL MIAMI DOLPHINS BROCKELMAN**: In early June 2013, Spagnuolo reached out to **Mark Brockelman, CFO of the Miami Dolphins**, and **David Murphy, the EVP**, expressing that Spagnuolo was pleased the Miami Dolphins were interested in moving forward with IOA.

eee.   **IOA AGENT THORTON**: In early June 2013, Spagnuolo emailed IOA agent Rod Thorton about Plaintiff's connections with the University of Miami

fff.   **BILL MARSHALL**: On June 7, 2013, Spagnuolo emailed Peter Gary, CEO of Pinnacle Marketing, and Bill Marshall, a prominent businessman, following their meeting and discussing the potential of working together with IOA.

ggg. **CEO HUBLOT WATCHES BIVER**: On June 7, 2013, Spagnuolo emailed his contact Jean Claude Biver, CEO of Hublot Watches, about possibly working together and having IOA insure the numerous Hublot boutiques across the country. That same day, Rachel Branch, a national account executive at Hublot emailed Spagnuolo welcoming him to the Hublot family.

hhh. **NFL MIAMI DOLPHINS**: On June 7, 2013, Spagnuolo emailed Defendant John: "John hope you are well. I ran into Mark Brockelman, CFO of the Dolphins and he said we are going to get the IOA deal done."

iii. **NEW IOA AGENT RECRUITMENT TO SUPPORT SPAGNUOLO**: On June 7, 2013, Mahalic emailed Defendant John and Spagnuolo about two other agents potentially coming to IOA to assist Plaintiff with managing all of the contacts he was bringing to IOA.

jjj. **CEO ROLLS-ROYCE ARCHIBALD**: On June 9, 2013, Spagnuolo emailed his contact, **David Archibald, the CEO of Rolls Royce** about forming a strategic partnership with IOA.

kkk. **IOA EXECUTIVE SMITH**: On June 13, 2013, an **IOA Account Executive, Lissette Smith**, emailed Spagnuolo indicating that Federated National is processing his insurance appointment meaning Spagnuolo would be allowed to write Federated National insurance products for IOA.

lll. **CFO WARREN HENRY AUTOMOTIVE DAY**: On June 14, 2013, Spagnuolo met with **Floyd Raglin, former NFL player and marketing executive of Warren Henry Automotive, and CFO Eric Day** regarding written insurance business for them and their customers

mmm. **FERRARI OF MIAMI DURAN**: On June 17, 2013, Spagnuolo emailed his contact **Luis Duran of Ferrari of Miami** about collaborating to create a Racetrack Event which would procure additional written insurance for IOA.

nnn. **BUSINESS DEVELOPMENT CONTACT STARNES**: On June 26, 2013, **John Averill of IOA Aviation** sent proposals to one of Spagnuolo's contacts, **Ken Starnes**, a businessman in private aviation in Georgia.

ooo. **NEW IOA INSURANCE AGENT RECRUITMENT MARSHALL AND GURKA**: On June 28, 2013, Spagnuolo was asked to assist IOA in meeting with and vetting **Bill Marshall** and **Scott Gurka** about joining IOA Insurance.

ppp. **NATIONAL BASKETBALL ASSOCIATION MIAMI HEAT**: On June 28, 2013, Spagnuolo emailed Defendant John about his initial discussions

with the Miami Heat Basketball Team relative to IOA becoming the team's official insurance broker.  Spagnuolo conveyed that he had procured a tentative meeting with **Nick Arison, Mickey Arison and possibly "The Heat's" CFO, Sammy Schulman**.

---

**Miami HEAT**

1 message

**PrivateJet.com** <ldavid@privatejet.com>                                    Fri, Jun 28, 2013 at 2:09 PM
To: John Ritenour <John.Ritenour@ioausa.com>, Daniel Mahalic <daniel@privatejet.com>

John hope you are well.

Today I had some initial discussions with the Miami HEAT Basketball Team and they expressed an interest to meet with us tentatively the week of July 8th, predicated on possible travel schedules.

The meeting most likely will include Nick Arison, Mickey Arison and/or CFO Sammy Schulman.

After the 4th of July vacation I will speak with Nick and iron out the hard details and confirm dates and times.

Thank you.

--
**Mr. Louis David**

---

qqq.   **AUTONATION AND PLANET HOLLYWOOD HOTEL LAS VEGAS**: Spagnuolo was in touch with his contacts, including Attorney Berger, who was working on setting up a meeting with AutoNation and Planet Hollywood Hotel in Las Vegas (owned by David Siegel President of Westgate Resort and client of the firm Greenspoon Marder).

rrr.   **THE RAINBOW ACADEMY**: On July 18, 2013, Ekerman emailed Spagnuolo about an impressive lead, a father-son team **Guy Falzarano** and **David Falzarano** who own **The Rainbow Academy**, which operated 14 locations at the time and planned on expanding to at least 100 locations.

sss.   **SIR RICHARD BRANSON**: On July 26, 2013, Spagnuolo's business contact emailed him about potentially working with **Sir Richard Branson** about a partnership opportunity and an event at Branson's private Caribbean Island, Necker Island.

ttt.   **IOA BUSINESS DEVELOPMENT**: Spagnuolo corresponded with **Jason Tocci of Ortho Florida**, an orthopedic association, **Dave Murphy of the Miami Dolphins** (who noted that the business operations side was in favor of IOA's proposal), **Ryan Millsap and Alex Holmes of Arenda Capital, a private equity company, Oversea Insurance, and Luda Broich of Merrill Lynch.**

uuu.   **NFL MIAMI DOLPHINS**: On August 9, 2013, Defendant John wrote Spagnuolo an email stating he considered the Miami Dolphins proposal a "done deal."

vvv.   **IOA BUSINESS DEVELOPMENT**: In September 2013, Spagnuolo corresponded with and/or met with **Pedro Gongalves of GroupNV.com,**

       **Tom Ireland of Ireland and Co**.  Ireland asked Spagnuolo for insurance information for a condominium association in Miami known as the "Bath Club."

www.  **IOA EXECUTIVE DANIEL**: On September 25, 2013, IOA employee **Valerie Daniel** emailed Spagnuolo about the insurance quote for Arenda Capital (Spagnuolo's contact).

xxx.  **ARENDA CAPITAL**: Spagnuolo worked with various parties at IOA regarding the quote for Arenda Capital, but Arenda noted that IOA's quote was about three times higher than a competitor.

yyy.  **ARENDA CAPITAL DIRECTOR OF FINANCE PAVLOVICH**:  On October 16, 2013, Arenda's Director of Finance Matthew Pavlovich emailed Spagnuolo "**If you match our quote you get the business.  No question about it.**"

zzz.  **IOA AGENTS BOB AND JIM LOPKER**: On October 31, 2013, Defendant John emailed Spagnuolo and Mahalic that he wants Spagnuolo to work with IOA Agents in Boca Raton, Bob and Jim Lopker to quote the Mizner Property Insurance.

aaaa.  **SPAGNUOLO IDENTIFIED AS IOA PRODUCER [AGENT] TO IOA ARMON**:  On November 21, 2013, Mahalic emailed Zane Armon of IOA Technical Services stating that "**Louis Spagnuolo is an IOA Producer…**"

bbbb.  **BUSINESS DEVELOPMENT CONTACT STEIN**: In late 2013 and early 2014, Spagnuolo received a request for insurance quotes from Stanley Stein, owner of five nursing homes.

cccc.  **LANDMARK LTA REAL ESTATE BILLIONAIRE CEO LUBECK**: On February 12, 2014, Spagnuolo reached out to one of his business contacts **Joe Lubeck of Landmark LTA Real Estate Holdings** and Lubeck expressed interest in IOA insuring 20,000 apartment units, with a potential for $1,500,000 in insurance commissions for IOA per year.  IOA had previously been, but was no longer, Landmark's insurance broker and also one of IOA's largest accounts.

      i.    Notably, IOA had lost the Landmark account and Spagnuolo's connection with CEO Lubeck provided an avenue for IOA to recover substantial lost revenues.

      ii.    On March 22, 2014, the IOA Agent who previously held the account while it was with IOA wrote an email to Defendant John, Mahalic and Spagnuolo which stated in relevant part: "I just wanted to confirm for all parties on the initial email that Louis and I had a great

discussion on Thursday and we WILL be handling/[Landmark LTA] very soon!   We at IOA are fired up."

dddd.   **EMAIL INTERACTIONS WITH THE IOA'S CHAIRMAN, EXECUTIVES, RECRUITER, EMPLOYEES AND AGENTS** From late October 2012 through 2019, Plaintiff has recently approximately **TWO THOUSAND FIVE HUNDRED EMAILS** by and between himself and IOA Executives, Management, Insurance Agents and Employees relating to his employment as an IOA insurance agent.

eeee.   <u>**ADDITIONAL ESTIMATED EMAIL INTERACTIONS WITH IOA'S CHAIRMAN, EXECUTIVES, EMPLOYERS AND AGENTS:** Upon information and belief, from May 2013 through February 2019, Plaintiff's corporate IOA emails by and from LDS@ioausa.com and Louis.Spagnuolo@ioausa.com to IOA's Chairman, Executives, Recruiter Mahalic, Employees and Insurance Agents exceeded **FIVE HUNDRED**</u>. Through 2017, Spagnuolo received additional email communications from IOA Personnel regarding writing and binding insurance as an IOA Agent.

95.    Plaintiff procured at least **THIRTY-THREE (33)** business and individual prospects to IOA.

96.    Plaintiff's work as an IOA Insurance Agent procured and bound **FOURTEEN (14)** individual Rack Track insurance policies.

97.    As alleged further, *infra,* Plaintiff's work as an IOA Agent also procured and bound the TLE Account which consists of hundreds if not thousands of individual policies.

98.    While many of Plaintiff's business and individual connections he brought to IOA committed to working with Plaintiff as an IOA Agent, IOA consistently failed to provide matching or even competitive insurance quotes and failed, time and again, to onboard these Clients.

99.    Upon information and belief, while the numerous businesses and individuals whom Plaintiff introduced to IOA and whom also requested IOA to submit insurance quotes did not agree to IOA's proposals at that time, these introductions led to IOA writing insurance policies for which Plaintiff has never been renumerated.

### THE LEARNING EXPERIENCE ACCOUNT, ITS HISTORY, PROCUREMENT AND COMPONENTS

100.    One of the most significant Clients which Spagnuolo landed and secured during his tenure as an IOA Agent was the The Learning Experience or TLE.

101.    Landing that account opened the door to IOA writing insurance for TLE'S Corporate Policies ("TLE Corporate Policies"), as well as the majority of TLE's franchisees of pre-schools throughout the United States ("TLE Franchisee Policies"). (Collectively, the TLE Corporate Policies and Franchisee Policies are referred to as the "TLE Account").

102.    The TLE Account consists of hundreds, if not thousands, of corporate and franchisee insurance policies.

103.    Specifically, as it relates to TLE Corporate Policies, they include, *inter alia*:

  a.   Employee Health/Benefits Insurance
  b.   Property and Casualty Insurance
  c.   Corporate Insurance
  d.   Workers Compensation Insurance
  e.   Commercial Lines Insurance
  f.   General Liability Insurance
  g.   Cyber Security Insurance
  h.   Primary Management Liability
  i.   Representations and Warranties Coverage
  j.   Intellectual Property Coverage

104.    As it relates to TLE Franchise Policies, they include, *inter alia*:

  a.   Employee Health/Benefits Insurance
  b.   Employee 401k Retirement Plans
  c.   Property and Casualty Insurance
  d.   Corporate Insurance
  e.   Workers Compensation Insurance
  f.   Commercial Lines Insurance
  g.   General Liability Insurance
  h.   Umbrella Protection Insurance
  i.   Cyber Security Insurance
  j.   Errors and Omissions
  k.   Professional Liability

l.  Fire Damage Legal Liability
m. Sexual Abuse or Molestation
n.  Improvements and Betterments
o.  Personal Property
p.  Playground Equipment
q.  Business Income
r.  Hired/Non-owned Auto
s.  Student Accident
t.  Life Insurance

105.    However, to date, Spagnuolo has never been paid any commissions he was and continues to be owed on the TLE Account, especially  little to none of the commissions he was owed on the TLE Franchisee Policies by IOA.

106.    To date, Spagnuolo has only been sent monies purportedly related to the TLE Account by Defendant 1188 Partners, a Florida Limited Liability Company owned by Defendant John.

107.    From 2013 through 2019, after Plaintiff served Defendants with a pre-suit demand in early March 2019, Defendant 1188 Partner was an unlicensed entity for conducting insurance business or any kind.

108.    The monies paid to Plaintiff by 1188 Partners reflect only a small fraction of the remunerations owed to him relative to the TLE Account resulting in the loss of millions of dollars in past and future damages.

### *SPAGNUOLO INTRODUCES TLE TO IOA AND PROCURES THE TLE ACCOUNT*

109.    On March 12, 2013, Spagnuolo contacted **Richard Weissman, the CEO of The Learning Experience ("TLE")** through **Ekerman**. At that time, TLE was one of the largest (and is now the largest) franchisor of pre-schools in the United States.  After Spagnuolo spoke with TLE's CEO, TLE became interested in receiving insurance quotes from IOA.

110.     On March 12, 2013, Spagnuolo informed Mahalic of TLE's interest in IOA and that CEO Weissman was presently in Orlando.

111.     On March 29, 2013, a meeting was scheduled with TLE.

112.     TLE would become Spagnuolo's largest account.

113.     The meeting was scheduled for April 11, 2013, at the TLE headquarters in South Florida which Defendant John (attended via Private Jet) and Spagnuolo would attend, along with Mahalic, Fava and O'Cull.

114.     On April 2, 2013, **TLE's COO, Michael Shafir ("Shafir")** wrote an email indicating that TLE was looking for an all-encompassing insurance package for all TLE centers.

From: Michael Shafir [mailto:mshafir@tlecorp.com]
Sent: Tuesday, April 02, 2013 10:43 AM
To: Todd OCull
Cc: John Ritenour (LNG); Daniel Mahalic (LNG); Louis David; Amy Leonard (LNG); Todd OCull (LNG)
Subject: Re: IOA / The Learning Experience Luncheon

Sounds good, I hope you can also discuss the property and liability options for our centers as well.  Look forward to it.
Sent from my iPhone

115.     On April 2, 2013, after speaking with TLE's CEO and its COO, and reviewing TLE's requests for information, Spagnuolo wrote an email to Defendant John outlining the strategy to obtain TLE's business which was going to be discussed at an in-person meeting in South Florida. **Exhibit "S."**

116.      Defendant John immediately responded to Spagnuolo's email stating: "**I agree.**" **Exhibit "T**."

117.     Following Shafir's April 2, 2013 email, on April 5, 2013, TLE's Vice President of Human Resources sent an email to IOA with information relating to the breakdown of TLE's employees and details concerning its existing insurance coverage. **Exhibit "U"** is being intentionally omitted.

118.    On April 11, 2013, Spagnuolo had scheduled day of five (5) high-profile meetings in South Florida between "C" level executives and IOA's team including Defendant John who flew down on his Private Jet, as well as TLE's team.

119.    On April 15, 2013, following the April 11th Meeting, O'Cull sent an email to TLE's CEO and COO requesting "5 years of exposure base history: (a) [Worker's Compensation]/Payroll; (b) Student Counts; (c) Franchisees; and (d) Fleet vehicle counts. **Exhibit "V."**

120.    On May 9, 2013, Spagnuolo emailed TLE to ensure that IOA was meeting his expectations and on the same day Shafir, TLE's COO, responded that he was still waiting on additional information from IOA.

121.    On May 10, 2013, Defendant John emailed Spagnuolo and Mahalic about the status of the quotes for TLE.

122.    On May 31, 2013, Defendant John emailed Spagnuolo and Mahalic asking about the status of the TLE Account.

123.    From May 2013 onwards, Spagnuolo continued working to earn TLE's business, and exchanged numerous emails with Shafir, TLE's COO, in the interim.

124.    That work included, *inter alia,* ensuring that IOA was providing Shafir with the information he requested in a timely manner.

***Spagnuolo's Work as an IOA Insurance Agent Lands the TLE Account in December 2013***

125.    In December 2013, after an eight-month effort by Spagnuolo, he  earned TLE's entire insurance business.

126.    The TLE account encompassed 120 childcare centers in 2013 which has since grown to over 315 centers with 250 more under development in 2022.

127.    On December 29, 2013, Spagnuolo emailed Defendant John and Mahalic about closing on the TLE Account:

> **I just wanted to reach out and wish all of us congratulations on the TLE deal!** *John mentioned they signed prior to the holiday!* **I think this piece of business has a lot of potential, so I look forward to more good news in the future!** [Emphasis added].

128.    Spagnuolo followed up on January 6, 2014, noting "Lets see if we can all coordinate a time for a quick conference call to discuss our next objectives going forward with TLE…"

129.    However, immediately after Plaintiff closed the TLE account under IOA, Plaintiff began to encounter resistance and deception as to the collection of his earned insurance commissions.

130.    At the same time, in 2014, Plaintiff began to be intentionally omitted from emails by and between Defendants John and Account Executive Daniel related to the TLE account, its status and, most importantly, its growth – especially adding TLE franchises from across the United States.

131.    From late 2013 and thereafter, Defendants John and Daniel communicated regarding the TLE Account's growth and targeting TLE's franchisees through various strategies.

132.    While Daniel knew about Spagnuolo's involvement in procuring the TLE Account, she continued to intentionally omit him from emails related to the account's growth, increasing revenues and addition of corporate and franchisee policies.

133.    Upon information and belief, Defendant John instructed Daniel to omit Plaintiff from emails related to the TLE Account.

134.    Upon information and belief, Daniel personally financially benefited from working on the TLE Account.

135.    Spagnuolo requested payment reconciliations through emails but did not get paid anything for the first three months..

**DEFRAUDING PLAINTIFF OUT OF RIGHTFULLY OWED COMISSIONS
ON THE TLE ACCOUNT**

136.    From 2014-2019, John, Valli, Heath and 1188 Partners conspired to defraud Spagnuolo out of rightfully owed commissions from the TLE account by individual acts of mail fraud and wire fraud.

***WIRE FRAUD: John's March 18, 2014, Fraudulent Email to Spagnuolo***

137.    First, on March 18, 2014, at 2:07pm, Defendant John sent an email to Spagnuolo over interstate wires stating that TLE started with owed commission of $54,256 AND that 60% of the same amounted to $32,553 ("March 18, 2014, Fraudulent Email").

138.    Upon information and belief, based upon Defendant John's verbal statements to Plaintiff, the initial commissions on the TLE account were approximately $89,000.

139.    Defendant John's claim in the March 18, 2014, Fraudulent Email that the owed commission was only $54,256 was fraudulent and vastly different than what had been promised.

140.    Second, in the March 18, 2014, Fraudulent Email, Defendant John also fraudulently stated – for the very first time – that he was "splitting" the commission between himself and Spagnuolo.

141.    This was far from IOA's Signature Universal Offer which Spagnuolo accepted on March 8, 2013.

142.    Third, Defendant John's statement in the March 18, 2014, Fraudulent Email that IOA was taking another 5% out of the owed commission for "Risk Services" had never been

discussed with Spagnuolo, nor agreed upon and amounted to another scheme to defraud Spagnuolo.

143.    Fourth, in the March 18, 2014, Fraudulent Email, Defendant John promised Spagnuolo that he would "**keep tabs on [the TLE account and keep [Plaintiff] in the loop as we start adding more to this account**."

144.    This statement made by Defendant John over interstate wires was fraudulent as he would not "keep Plaintiff in the loop" regarding the TLE Account Status, and most importantly, about its expansion throughout 2014, 2015, 2016, 2017, 2018 and after his purported "retirement" in 2019 and beyond to present.

145.    From 2014 through present, Defendant John, and others under his control and direction, purposefully omitted Spagnuolo from communications and emails as to the status and, most importantly, the consistent growth of the TLE Account with the intent to defraud Spagnuolo by failing to disclose the actual amount of monies owed to him through the growth of the TLE Account.

146.    However, Defendant John's March 18, 2014, did confirm to Spagnuolo that his commission remunerations would "change as the account grows".

147.    As a result, Spagnuolo was entitled to increased commissions perpetually under the agreed upon IOA's Signature Universal Offer.

***Spagnuolo Immediately Contacts Mahalic***

148.    Immediately upon receipt of Defendant John's March 18, 2014, Fraudulent Email, Spagnuolo called IOA Recruiter Mahalic and asked what was going on with his commissions on the TLE account.

149.    Spagnuolo recited that he was offered and accepted IOA's Signature Universal Offer.

150.    Mahalic responded to the effect that "**Defendant John is the King, he owns the company – what can we do**?"

151.    Mahalic was extremely remorseful because he had assured Plaintiff of Defendant John's trustworthiness and integrity.

152.    Mahalic noted Defendant John's hypocrisy wherein John had claimed, "<u>**his word was his bond**</u>."

***MAIL FRAUD: The Fraudulent March 2014 Commission Reconciliation Package Sent Via U.S. Mail to Plaintiff's Designated South Florida Address***

153.    In March 2014, Spagnuolo received his first purported TLE commission remuneration report from Defendant Valli.

154.    The report was sent at the direction and/or with the consent of Defendant John.

155.    The report was sent via U.S. Mail to Spagnuolo.

156.    The report included a hand-written "commission breakdown" on piece of grade-school notebook paper with an attached hand-written live check from Defendant 1188 Partners ("March 2014 Fraudulent Commission Reconciliation Package").

157.    At that time, Spagnuolo knew nothing about 1188 Partners.

158.    Spagnuolo would later discover 1188 Partners was an unlicensed limited liability company owed by Defendant John.

159.    In the March 2014 Fraudulent Commission Reconciliation Package, it appeared that Defendant John had claimed the TLE Account as his own.

160.   The March 2014 Fraudulent Commission Reconciliation Package also fraudulently indicated that a 5% "Risk Service Fee" was being paid to IOA which was never disclosed or agreed upon by Spagnuolo.

161.   Further, Defendants John and Valli had calculated Spagnuolo's commission to be 27.5% while Defendant John, directly or indirectly, kept the aggregate of 72.5% (45% to IOA and 27.5% to Defendant John's unlicensed limited liability company Defendant 1188 Partners).

162.   The March 2014 Fraudulent Commission Reconciliation Package contradicted Defendant John's March 18, 2014, Fraudulent Email wherein Defendant John made no mention of a 5% Risk Service Fee that would be paid to IOA and taken out of Spagnuolo's owed commissions.

163.   Immediately upon receipt of the March 2014 Commission Reconciliation Package, Spagnuolo again contacted IOA Recruiter Mahalic via telephone and stated Defendant John appeared to have claimed the entire TLE Account for himself and that IOA wasn't paying him anything, it was Defendant 1188 Partners.

**WIRE FRAUD – Defendants John and Valli Cause IOA to Wire Monies for Commissions on the TLE Account to and from Defendant 1188 Partners an Unlicensed Entity**

164.   From 2014 through 2019, TLE and its franchisees paid their premiums to IOA.

165.   Upon information and belief, from 2014 through 2019, Defendants John and Valli caused numerous fraudulent wire transfers from IOA to 1188 Partners consisting of commission payments on the TLE Account.

166.   Fla. Stat. § 626.753(2) prohibits the payment of insurance commissions to "any corporation unless such corporation is [a licensed] insurance agency."

167.   At all times material hereto, Defendant 1188 Partners was **not** a licensed insurance company or entity.

168.    Defendant John did not procure 1188 Partners insurance license until Spagnuolo provided notice of his claims in or about April 2019.

169.    Each payment from IOA to unlicensed 1188 Partners directed by Defendants John and Valli which represented commissions owed to Spagnuolo on the TLE account constituted an act of wire fraud in violation of 18 U.S.C. § 1343 as the same was illegal transfer.

170.    Each transfer from IOA to 1188 Partners for commissions on the TLE Account was also inherently fraudulent because Spagnuolo was entitled to those commissions, not 1188 Partners nor Defendant John.

***WIRE FRAUD: Defendant John's January 21, 2015 Fraudulent Email***

171.    On January 21, 2015, Spagnuolo emailed Defendant John asking about the status of the TLE account as he would likely be meeting the CEO of TLE, Weisman at an upcoming event.

172.    A few hours later, Defendant John sent an email to Spagnuolo over interstate wires which fraudulently stated that TLE had "sold the company" and IOA expected to lose the account ("January 21, 2015 Fraudulent Email"):

> On Jan 21, 2015, at 2:07 PM, John Ritenour (LNG) <John.Ritenour@ioausa.com> wrote:
>
> We just renewed it and they sold the company to a big private equity group.
>
> I doubt that we will keep it long term.
> Sent from my iPhone

173.    Defendant John's statement that IOA was likely going to lose the TLE Account was a completely  fraudulent as he had personal knowledge that the TLE Account was in fact rapidly growing and that numerous TLE franchises had been written insurance policies by IOA in the fall of 2014.

174.     In mid-September 2014, it was reported to Defendant John by Daniel that IOA had acquired or was in the process of adding an additional $700,000 in premiums expected to close at the end of the 4th Quarter on the TLE Account.

175.     After receiving Defendant John's January 21, 2015, email, Spagnuolo spoke with TLE representatives.

176.     Spagnuolo discovered that TLE had not been sold.

177.     Spagnuolo also learned that the TLE Account had grown exponentially, because new additional insurance lines of coverage had been added.

178.     These discoveries demonstrate that the statements made by Defendant John to Spagnuolo over interstate wires were fraudulent.

**WIRE FRAUD: *Defendant John's Fraudulent February 15, 2015 Email***

179.     On February 6, 2015, Spagnuolo again emailed John as to the status of the TLE account and how it had grown.

180.     On February 15, 2015, at 5:31 A.M., Defendant John responded to Spagnuolo via email transmission over interstate wires and fraudulently provided Spagnuolo with incorrect amounts of commissions related to the TLE account ("February 15, 2015, Fraudulent Email").

181.     Notably, Defendant John specifically stated that Account Executive Daniel "verified" the fraudulent commission amounts:

**From:** John Ritenour (LNG)
**Sent:** Sunday, February 15, 2015 5:31 AM
**To:** 'Louis David'
**Subject:** RE: TLE

Louis,

I did get the numbers from Val yesterday and it looks like you will be getting a check this week for $10,936 for the 2014 year.  It looks like the revenue for 2015 will be slightly over $20,000 and when we get paid on it we will send you a check.

182.    On February 17, 2015, Spagnuolo confronted Defendant John in an email revealing to John that TLE representatives had advised of the account's growth, contradicting John's fraudulent statements in his January 21, 2015 email:

> From: **Louis David** <ldavid@privatejet.com>
> Date: Tue, Feb 17, 2015 at 10:04 AM
> Subject: Re: TLE
> To: John Ritenour (LNG) <John.Ritenour@ioausa.com>
>
> John just curious. When I spoke to the TLE guys they mentioned the account grew since the start, so I may be confused but it looks like what we received dropped significantly?
>
> Did something happen to cause it to go down so much?

### WIRE FRAUD: Defendant John's Fraudulent February 20, 2015 Email

183.    On February 20, 2015, Defendant John, realizing that he had been called out for falsely representing Plaintiff's owed commissions, wrote Spagnuolo another email over interstate wires which fraudulently attempted to account for the drop in TLE commission by falsely claiming that IOA had "negotiated a better price for TLE":

> On Feb 20, 2015, at 7:51 AM, John Ritenour (LNG) <John.Ritenour@ioausa.com> wrote:
>
> Louis,
>
> When we wrote this account you were paid $13,776 and because of growth you just received an additional $9,273.  On renewal we negotiated a better price for TLE so that is the reason that we are estimating that the 2015 revenue will go down slightly.

184.    IOA has recently produced emails regarding internal communications about the TLE account – none of which reference, evidence, discuss or mention that IOA had "negotiated a better price for TLE."

### MAIL FRAUD: The Fraudulent February 2015 Commission Reconciliation Package

185.    On February 17, 2015, Defendant Valli sent Spagnuolo another Commission Reconciliation Package via U.S. Mail.

186.    This package contained a letter which was not on IOA Stationary nor that of 1188 Partners.

187.    Defendant Valli's February 17, 2015, letter and enclosures were sent with the knowledge and/or consent of co-conspirator Defendant John via U.S. Mail

188.    Defendant Valli signed the letter as "Account Manager."

189.    This package also enclosed a fraudulent hand-written accounting of Spagnuolo's owed commissions on grade-school notebook paper along with a hand-written live check from Defendant 1188 Partners for the knowingly incorrect and fraudulent amounts related to the owed commissions on the TLE Account:

February 17, 2015

Don't Look Media LLC
Mr Louis Spagnuolo
401 E Las Olas Blvd #130 and #285
Fort Lauderdale, FL  33301

Dear Louis:

Attached please find a check for $9,273.76 for the policy year 2014-2015 for TLE. There will still be some smaller amounts due for some of the small Work Comp Policies that pay monthly, but the commissions are not in yet. Some of the small policies were not written until Sept through Dec, 2014, so commissions will continue until renewal.

The bulk of 2014-2015 is paid. The total Commission as of 2/17/2015 is $83,817.30. Five percent has been deducted for the Risk Management Services that our Claims Dept provides them. House gets 40% and John Ritenour gets 55%. John's total comes to $46,099.52, which gives you half, totaling $23,049.76. We previously paid you $13,776, leaving a balance of $9,273.76.

I will be tracking this and the 2015-2016 Commissions should be starting to come in. Do not hesitate to phone me on my direct line 407-998-4167, if you have any questions.

Sincerely,

Valli S Ritenour
Account Manager

Enclosure

190.    Upon information and belief, Spagnuolo did not receive this letter until after February 20, 2015.

191.    On June 10, 2015, Spagnuolo again attempted to determine the accurate status of the TLE Account by emailing Defendant John who had no answer.

192.    Defendant Valli wrote Spagnuolo an email indicating that she would get back to him the same day.

193.    Upon information and belief, akin to most "billion-dollar companies," IOA maintains a customer relationship management system named "EPIC" ("EPIC System") that has the capability of instantly pulling up commission owed to any IOA agent at any time.

194.    Neither Defendant John nor Defendant Valli sent Spagnuolo a printout of the TLE Account from IOA's EPIC System or from any equivalent system.

195.    From 2014 through 2019, Plaintiff received commission reconciliations in hand-written format/

196.    No one at IOA, including John, Valli had ever claimed that Spagnuolo, the Plaintiff was not an IOA Agent until John wrote Spagnuolo an email in February 2019.

***MULTIPLE INDIVIDUAL ACTS OF MAIL FRAUD: Plaintiff receives dozens of Fraudulent Commission Reconciliation Packages***

197.    From 2014 through December 2018, the same pattern would repeat itself on a monthly or quarterly basis.

198.    Defendant Valli, with the knowledge and/or consent of co-conspirator Defendant John, sent Spagnuolo via U.S. Mail a Fraudulent Commission Reconciliation Package.

199.    Over the course of approximately FIVE (5) Years, Spagnuolo received over twenty packages via U.S. Mail, each one containing: (1) a fraudulent accounting of Spagnuolo 's owed commissions; (2) fraudulently removing 5% to be paid to IOA for "Risk Services"; and (3) fraudulently asserting Defendant John was entitled to split the commission with Spagnuolo.

200.    For example, in the June 2015 Commission Reconciliation Package, Spagnuolo received the following hand-written breakdown of commissions owed to Spagnuolo, which is copied here in partial format and attached hereto as **Exhibit "W**."



**WIRE FRAUD: *Defendant Valli's Fraudulent April 25, 2016 Email to Spagnuolo***

201.    On April 25, 2016, Spagnuolo sent Defendant Valli an email to her office corporate

IOA email address, valli.ritenour@ioausa.com inquiring as to the status of the TLE account which

stated in relevant part:  "I wanted to take a moment and touch base with you regarding TLE.  I

noticed last year [in February 2015] I received one of the partial commissions and just wanted to

check on the status of this."

202.    A few minutes later, Defendant Valli responded: "On 3/29, 2016, I mailed you a

check for $7,102.30. Did you not receive it?"

203.    Spagnuolo immediately noted another drop in the amount of commissions and

inquired to Defendant Valli via email: "One question: Last year on 2/17/2015, the commission

was for $9,273.  Do you know why there was a $2,000 drop?  I was under the impression that the

account would continue to grow."

204.    On April 25, 2016, Defendant Valli caused to be transmitted an email to Spagnuolo

over interstate wires ("April 25, 2016, Fraudulent Email") which intentionally contained the

following false statement: "**Many of the [TLE] policies cancelled**.  There will be more during

the year.   I sent you what we got paid on since the end of last year until the end of March."

[Emphasis added].

205.    Valli's statement directly contradicted the fraudulent statement previously made

by John over interstate wires to Spagnuolo that the commissions for 2015 TLE would either end

because IOA was losing the account because TLE was sold to a private equity group or that the

2015 commissions would be going down because IOA gave TLE "better pricing".

206.    Neither of the two statements made by John attempting to explain the drop in 2015

TLE commissions was true.

207.    The statement made by Valli attempting to explain the drop in 2015 TLE

commissions was true was also not true.

***Proof from IOA's own Records that the Statements Made to Spagnuolo Regarding the Amounts
he was Owed on the  TLE Account were False and Fraudulent***

208.    IOA's internal emails confirm the falsity of the facts asserted by John and Valli as

to the status of the TLE Account.

209.    On August 27, 2015, Defendant Daniel reported to Defendant John that, as of

August 27, 2015, the TLE Account had grown continuously and substantially by adding

franchisees resulting in hundreds of thousands of dollars in additional commissions.

210.    Daniel intentionally omitted Plaintiff from the August 27, 2015 email.

211.    On August 27, 2015, John wrote an email back to Account Executive Daniel asking

how many franchises TLE had at the time.

212.    Defendant John intentionally omitted Spagnuolo from his August 27, 2015, email.

213.    Daniel responded that TLE currently had 200 franchises, and that they expected to

have 100 more in the next two years, information that was also publicly reported by TLE.

214.    On August 27, 2015, Daniel reported to John that IOA had been successful in

signing up a large majority of  the new TLE franchisees.

215.    Daniel's response directly contradicts both John and Valli's statements to

Spagnuolo about the size, growth, and status of the account from 2014 through August 27, 2015.

216.    Upon information and belief, each TLE franchise generates thousands of dollars in insurance commissions for IOA/Defendant John (or his assignee(s)) per year.

217.    The TLE Account continued to grow substantially between 2016 and 2018.

218.    However, Spagnuolo was purposely omitted from emails regarding TLE growth and status by Defendant John from 2014 through present.

219.    On March 1, 2018, ,  Defendant Valli inquired as to whether Plaintiff has "kept up with his licensing requirements."

220.    Additionally, prior to the filing of this lawsuit, Spagnuolo was able to procure a single printout as to the TLE account which demonstrates that Defendant Valli's hand-written reconciliations were, in fact, incorrect and fraudulent.

221.    For example, on or about September 20, 2015, Spagnuolo received a hand-written reconciliation from Defendant Valli showing a monthly premium for worker's compensation on the "EB Learning" account in the amount of $187.87.

222.    During that time period, the printed reconciliation provides that the annual premium for that same account totaled $6,064.65.

223.    This would amount to a monthly premium of $505.39 – almost three times more than the premium disclosed to Spagnuolo.

224.    Plaintiff also discovered that hand-written reconciliations from Defendant Valli from 2014-2018 failed to disclose that Defendants IOA, John, and 1188 Partners were not paying Spagnuolo commissions on TLE's franchisees and instead were paying solely on the smallest commission stream, which were the TLE Corporate Policies.

225.    Spagnuolo was never informed that he would not be receiving remunerations when a TLE franchisee was onboarded with Defendant IOA.

226.     The result was that Spagnuolo has not been paid for approximately 80 to 90% of his insurance commissions on the TLE account – which are significant considering that TLE now has 315 locations with 250 under construction.

227.     Upon information and belief, the TLE account today puts over $500,000.00 per year which, directly or indirectly, lined the pockets of Defendants Valli, John and 1188 Partners.

***January 2019 - John Claims to "Retire" from IOA and Decides to Stop Paying Spagnuolo on the TLE Account***

228.     In January 2019, John purportedly "retired" from IOA.

229.     Before announcing to Spagnuolo his retirement, on January 15, 2019, his son, and CEO of IOA, Defendant Heath, emailed his mother, Valli, stating in relevant part: "***I assume I am going to need to keep paying Louis [on the TLE Account] annually, right***?"

230.     Valli responded to him: "**I think so**, I copied your Dad on it…"

231.     A few minutes later, John wrote to Valli and Heath stating: "**I am not going to continue paying him**."

232.     Valli emailed John and Heath: "Ok. Well I sent him a commission in January because it was the December commissions.  **Anyway, you better tell him**."

233.     On January 16, 2019, John emailed Spagnuolo : "**Louis, I wanted to let you know that I have retired on 1/1/2019 and our deal on the TLC (sic) has come to an end**." [Emphasis added].

234.     Spagnuolo responded by asking John if IOA still had the TLE account.

235.     John responded: "Louis, as you know the commission that was paid to you came from me.  I will no longer be receiving commissions so there is no way that I can continue this."

236.     On or about February 3, 2019, Spagnuolo emailed John:

>      As mentioned on your website and conveyed by your employee and
>      recruiter Daniel Mahalic and also yourself both verbally and via

email on multiple occasions, it was very clear that I would receive
the **best compensation in the industry and have a vested
ownership for my TLE account** with the same rights and
privileged extended to any other IOA employee. [Emphasis added].

237.    When no response was received, on February 4, 2019, Spagnuolo again emailed

John:

In addition, your employee Daniel Mahalic, who recruited me and
introduced me to the company, instructed me to bring the TLE
account to IOA and **made it very clear both verbally and in
writing on a multitude of occasions exactly how the
producer/company relationship worked with IOA and the exact
agent commissions that any and all IOA agents receive**.
[Emphasis added].

***WIRE FRAUD: John's Fraudulent February 4, 2019 Email Disclaiming Spagnuolo as an IOA
Agent***

238.    On February 4, 2019, John caused to be sent an email to Spagnuolo over interstate

wires fraudulently claiming Spagnuolo was never an IOA Insurance Agent and that he only paid

Spagnuolo out of the "goodness of [his] heart."

**From:** "John Ritenour (LNG)" <John.Ritenour@ioausa.com>
**Date:** February 4, 2019 at 4:09:31 PM EST
**To:** Private Jet <ldavid@privatejet.com>
**Subject: RE: Retirement**

Louis,

When you referred TLE to IOA you were planning on joining us to become one of our independent
brokers. As you know that never happened so all of the things you are pointing out are for brokers that
are exclusive to IOA. Out of the goodness of my heart I decided to pay you on this from my personal
account and have done so way longer than normal. If you are still active in the insurance business
please feel free to go after the account and move it to whatever brokerage you are with. I have not
talked to you in many years and with my retirement I don't have any means to continue paying you on
this account. I am sorry that you are not looking at the income that I paid you on this account as a
blessing but that is exactly what it was.

I wish you all the best!

John K. Ritenour
Chairman
Insurance Office of America



**INSURANCE OFFICE OF AMERICA**
——— experience the edge ———
1855 West State Road 434
.ongwood, FL 32750

239.    John's February 4, 2019, statement that Spagnuolo never joined IOA as an insurance agent is contradicted by substantial evidence as alleged in this Complaint which was recently uncovered by Spagnuolo .

240.    This was the first time John ever indicated to Spagnuolo that Spagnuolo did not become one of IOA's insurance Agents.

241.    In fact, from the time Spagnuolo landed the TLE Account in late 2013, he sent both John and Valli numerous emails regarding the status of the TLE Account and the payment of Spagnuolo's owed commissions.

242.    In their respective 30 plus responses, including the Commission Reconciliation Packages sent to Spagnuolo over approximately 5 years, these Defendants demonstrated Spagnuolo was owed commissions for procuring and landing the TLE Account – even while they were defrauding him by only paying him a negligible fraction of what he was really owed.

***Defendant Heath Chooses to Continue to Defraud Spagnuolo***

243.    Heath, as IOA's CEO, believed Spagnuolo would still need to be paid on the TLE account after his father John announced his retirement.

244.    Heath's January 15, 2019, email recognized a duty to pay Plaintiff his commissions as an IOA Agent where his licenses are still active until 2023.

245.    However, Heath denied entirely Spagnuolo's commissions on the TLE Account.

246.    By acquiescing to, agreeing with, turning a blind eye toward and/or providing material support to John in defrauding Spagnuolo , Heath aided and abetted his parents and, on a continuing basis, is directly accountable for Spagnuolo 's failure to receive his rightfully owed commissions on the TLE Account.

**WIRE FRAUD**: Defendant Heath's December 2019 Deception of IOA Agent and Employees is Broadcast over Interstate Wires

247.    After Spagnuolo filed this lawsuit, Defendant Heath, Chief Executive Officer of Insurance Office of America, Inc., continued to defraud IOA employees, agents and Spagnuolo.

248.    In mid-December 2019, Defendant Heath stood before IOA employees, insurance agents and management at IOA's annual Christmas meeting to kick off IOA's "Annual Holiday Message."

249.    Just after the first minute of his opening remarks, **Heath stated to a "full house" of IOA's agents, administrators, management and agents**:

> As most of you are aware we've been in a really nasty lawsuit … **involving a Commission with a guy who was literally a ONE TIME referral source.  JUST ONE TIME…** [Emphasis added].

250.    Spagnuolo was the "guy" referred to by Heath in his comments.

251.    Spagnuolo was not a one-time referral source.

252.    Spagnuolo made extensive introductions, submissions and procured written insurance policies.

253.    Spagnuolo was an IOA Insurance Agent who agreed to the terms of IOA's Signature Universal Offer.

254.    Defendant Heath went on: And we're going to shine light on the truth in court..."

255.    In February 2019, Spagnuolo's access to his "LDS@ioausa.com" and Louis.Spagnuolo@ioausa.com email addresses has been blocked, preventing access to critical evidence.

256.    Defendant Heath's statement broadcast of interstate wires was in furtherance of defrauding Plaintiff.

257.    Defendant Heath's statement broadcast over interstate wires also to deceive IOA employees relative to Defendants ongoing scheme to artificially manipulate the price of IOA's stock.

## SCHEMES TO DEFRAUD SPAGNUOLO, OTHER IOA AGENTS AND/OR CLIENTS AND INTIMIDATE FORMER IOA RECRUITER MAHALIC

### Multiple Schemes of Defrauding Spagnuolo of Owed Insurance Commissions on the TLE Account through mail fraud and wire fraud

258.    Spagnuolo was renumerated far less than promised and was defrauded over interstate wires and U.S. Mail by John, Valli and 1188 Partners over the course of over five years.

259.    Spagnuolo is now receiving no commissions on the TLE Account.

260.    The failure to pay Spagnuolo commissions on the TLE Account directly and/or indirectly financially benefitted John, Valli, Heath and IOA.

### The Risk Service Fee a/k/a Risk Score Scheme

261.    While Spagnuolo was being recruited to become an IOA insurance Agent, he was promised the Signature Universal Offer.

262.    Defendants John, Valli and IOA failed to disclose that IOA would take 5% out of owed commissions for a Risk Service Fee from any commissions on accounts he procured as an IOA Agent.

263.    This Scheme is and was perpetrated through mail and wire fraud upon Plaintiff and other IOA Agents who were not advised that IOA would charge them 5% of owed commissions for a Risk Service Fee.

264.    Additionally, in some instances, IOA clients are victimized by the Risk Score Fee as it is passed through as a quasi-hidden profit to IOA.

*IOA's Fraudulent Stock Manipulation Scheme*

265.    This scheme involves the artificial boosting IOA's stock price through the use of U.S. Mail and interstate wires.

266.    The intent and goal of defrauding Spagnuolo out of his rightful TLE Account Commissions through numerous acts of mail and wire fraud was, in part, to affect the valuation of IOA's Stock in order to directly and/or indirectly financially benefit Defendants John, Heath and Valli.

267.    In 2010, John announced at a corporate meeting the concept that IOA would create a system for the purchase and sale of IOA's private stock.

268.    This system was a scheme whereby IOA shareholders leaving IOA through termination or retirement would be replaced by current or new "eligible" IOA employees, administrators, executives and agents who purchase or finance IOA's stock at the "new" value of the stock.

269.    Every year, IOA's stock is offered to "eligible" IOA employees and agents at a company shareholder meeting at IOA Headquarters in Longwood, Florida.

270.    During this meeting, all current and newly eligible shareholders receive a live sales pitch from Heath and other IOA Executives/Board Members which includes the circulation of materials and comparing IOA's soaring stock price to publicly held insurance brokerages' (such as Brown & Brown, Inc.) steady growth.

271.    Part of the sales pitch is that IOA's stock is an IOA employee, executive or agent's retirement plan – which Defendant John touts on at least one YouTube video will make "many of these individuals millionaires".

272.    IOA's stock scheme has the classic hallmarks of a Ponzi Scheme, with newer stockholders purchasing the shares of those who, for one reason or another, have left IOA.

273.    When an individual leaves IOA, they are not, in most instances, permitted to liquidate their shares.

274.    Instead, when they purchased their IOA stock, they are forced to execute documents which purportedly require them to sell back to IOA upon leaving the company.

275.    In exchange, these previous shareholders receive a promissory note with a five-year amortization and low interest rate.

276.    Once those shares become "available", they are offered to current and new eligible IOA employees and agents at the new valuation for purchase or finance.

277.    Hence, the IOA Stock Scheme guaranteed control over the shareholders such that there could never be a "run" on IOA's stock and that newer shareholders would continue to purchase shares at higher and higher valuations.

278.    When John announced his retirement, he purportedly put his substantial IOA shareholdings for sale to those eligible to purchase same.

279.    Since John first announced of this system/scheme, IOA's stock increased at an astounding rate, in many cases over 15% per year and over FOUR HUNDRED PERCENT (400%) in the last 12 years.

280.    Upon information and belief, as outlined below, IOA's stock valuation was manipulated by Defendant John and other IOA executives through a variety of methods involving mail and wire fraud.

281.    IOA's valuation was falsely inflated in part due to John designating himself as the Lead Agent on the TLE account.

282.    John's ownership of the TLE Account guaranteed the account would remain at IOA as opposed to if it was designated as being owned by an IOA agent, such as Spagnuolo, who could take the account if they left IOA.

283.    IOA's valuation was also inflated in part through IOA's "Risk Services" a/k/a "Risk Score" scheme.

284.    That scheme involved an additional 5% of insurance commissions to be taken from an IOA Agent, such as Spagnuolo, and instead be paid to IOA, thereby increasing IOA's "commission split" to 45% of the total insurance commission.

285.    That arrangement contradicts IOA's Signature Universal Offer (which Spagnuolo accepted in March 2013) which was made over interstate wires at the direction of John on numerous occasions to Spagnuolo and others.

286.    Upon information and belief, in some cases, this Risk Service Fee is tantamount to a hidden fee which is passed on to the IOA Client through the use of interstate wires.

287.    That action has a material effect on IOA's profitability and the valuation of its stock.

288.    In other instances, IOA, John, other IOA Agents and executives have been accused of fraudulent conduct which directly or indirectly provided a financial benefit to IOA translating to a higher stock valuation.

289.    Spagnuolo was directly damaged by the IOA Stock Manipulation Scheme as one of John's intentions of claiming himself to be the Lead Agent on the TLE Account and adding the 5% Risk Service Fee was to increase IOA's profitability such that its stock valuation could increase from 2014 through his retirement in 2019 where he would sell his IOA stock.

290.    John procured the TLE Account and thereafter, he and Valli defrauded Spagnuolo through the use of mail and wire fraud.

291.    Those actions supported an increase of IOA's Stock price which directly and indirectly benefitted John who purportedly resold his IOA stock to new and current IOA shareholders in 2019.

***Witness Harassment and Intimidation Scheme***

292.    Spagnuolo filed his original complaint on May 9, 2019.

293.    That complaint attached a sworn affidavit by former IOA Recruiter Mahalic.

294.    Mahalic attested that Spagnuolo was an IOA Agent and that he was entitled to commissions on the TLE Account.  **Exhibit "X."**

295.    Shortly thereafter, on June 6, 2019, Mahalic was contacted on his cellular phone by IOA's corporate counsel, Defendant Tatum.

296.    In his June 19, 2019 Affidavit, Mahalic testified that Defendant Tatum contacted him for purposes of attempting to coerce him into not participating in the instant lawsuit as a witness for Spagnuolo. *Id.*

297.    Mahalic also attested that, based upon his knowledge of Defendants John and Tatum's relationship, Tatum's conduct and actions were directed and/or informed by John, and/or taken with John's consent/knowledge.

298.    Mahalic is a material fact witness having personal knowledge as to material facts including:

a.    Mahalic's Recruitment of Spagnuolo on behalf of IOA to become an IOA Insurance Agent;

b.    John's Recruitment of Spagnuolo to join IOA as an Insurance Agent;

c.    the Signature Universal Offer IOA made to Spagnuolo;

d.    Spagnuolo's acceptance of IOA's Signature Universal Offer in March 2013;

e.    Spagnuolo's work as an IOA insurance Agent to introduce and submit his business contacts to IOA for insurance placement;

f.    Spagnuolo's integral work to bring in and sign up the TLE Account;

g.    Mahalic's attendance at "C" level meetings with Spagnuolo and John to procure insurance business for IOA;

h.    Mahalic's nearly daily contact with Spagnuolo and his business submissions to IOA;

i.

j.    Spagnuolo's interactions with IOA Executives, Management, Agents, Administrators and other staff; and,

k.    other general material issues of fact alleged herein.

299.    Tatum's conduct is a clear violation of 18 U.S.C. §1512(b) and/or (d) –the crime of Tampering with a Witness, Victim, or Informant.

***Conditions Precedent***

300.    All conditions precedent for bringing the above captioned matter have occurred, been waived, or have been satisfied.

301.    Spagnuolo has retained the services of undersigned counsel to represent his interests in this matter and is obligated to pay reasonable attorneys' fees and costs incurred herein and is entitled to recover same from Defendants as alleged hereinbelow.

**COUNT I - CIVIL VIOLATION OF**
**FEDERAL RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT**
**("CIVIL RICO")**
**PURSUANT TO 18 U.S.C. § 1961, *et. seq.***
(Against Valli, John, Heath and 1188 Partners)

302.    Spagnuolo realleges Paragraph Numbers 1 through 301 as if fully and completely set forth herein.

303.     This is an action for civil damages pursuant to the Federal Racketeer Influenced and Corrupt Organizations Act **18 U.S.C. § 1961**, *et. seq.* **as against Defendants Valli, John, Heath and 1188 Partners ("RICO Defendants").**

304.     As set forth in the general allegations above, Count I involves:

a.     **THE DEFRAUDING PLAINTIFF OF OWED INSURANCE COMMISSIONS ON THE TLE ACCOUNT SCHEMES** - FIVE PLUS YEAR multiple fraudulent schemes perpetrated by Defendants John, Valli, Heath and 1188 Partners (**"RICO Defendants"**) to illegally deceive and defraud Plaintiff out of rightfully owed insurance commissions on the TLE Account through the use of U.S. Mail and Interstate Wires;

b.     **THE RISK SERVICE FEE a/k/a RISK SCORE SCHEME** which directly and/or indirectly financially benefited the RICO Defendants by defrauding Plaintiff, other IOA Agents and/or IOA through the use of U.S. Mail and Interstate Wires;

c.     **THE IOA STOCK MANIPULATION SCHEME** the use of the fruits of their fraud against Plaintiff, other IOA **Agents** and/or IOA Clients for a period exceeding five years procured through mail and wire fraud, to directly and/or indirectly financially benefit the RICO Defendants by artificially inflating IOA's stock value; and

d.     **THE SCHEME TO INTIMIDATE/HARRASS FORMER IOA RECRUITER MAHALIC** - to further achieve their goals of defrauding Plaintiff by victimizing IOA's former Recruiter Mahalic, by directing

IOA's in-house counsel, Defendant Tatum, to violate 18 U.S.C. §1512(b)

and/or (d) –the crime of Tampering with a Witness, Victim, or Informant.

**Applicable Statutes**

305.    This is an action for civil violations of the Federal Racketeer Influenced and

Corrupt Organizations Act ("Federal Civil RICO") pursuant to 18 U.S.C. § 1962(c) and §1964(c).

which provides.

306.    Pursuant to 18 U.S.C. § 1962(c):

It shall be unlawful for "any person employed by or associated with
an enterprise engaged in, or the activities of which affect, interstate
or foreign commerce to conduct or participate, directly or indirectly,
in the conduct of such enterprise's affairs for a pattern of
racketeering activity or collection of unlawful debt.

307.    Pursuant to 18 U.S.C. § 1962(d), it shall be unlawful to conspire to violate any of

the RICO substantive provisions, including section 1962(c).

308.    18 U.S.C. § 1964(c), creates a private right of action for any person injured in his

business or property by reason of violation of § 1962 and provides for threefold the damages

sustained including reasonable attorney fees.

**The Enterprise**

309.    Under Federal law, an "enterprise" is defined under 18 U.S.C. § 1961 as follows:

**(4)** "enterprise" includes any individual, partnership, corporation,
association, or other legal entity, and any union or group of
individuals associated in fact although not a legal entity;

310.    The individual RICO Defendants John, Valli, Heath and 1188 Partners, and others

associated in fact, such as non-RICO Defendants IOA, constitute an "Enterprise" (hereinafter the

"Enterprise" or "Association in Fact Enterprise"), which functioned for the purpose of defrauding

the Plaintiff, other IOA Agents, IOA's Clients and criminally intimidating IOA's former Recruiter
Mahalic while enriching the Enterprise's members and associates.

311.    Each RICO Defendant conducted the affairs of the Association in Fact Enterprise
or acted at the direction of Defendant John and or Valli, and later Heath, in the conduct of the
affairs of the Enterprise.

312.    The Enterprise is an ongoing organization which engages in, and whose activities
affect interstate commerce.

313.    The Enterprise had longevity, over five years, sufficient to permit each of the RICO
Defendants to pursue the Enterprise's purpose.

**Function Together as Continuing Unit**

314.    At all times relevant hereto, members and associates of the Enterprise functioned
together as a continuous unit, with a common purpose for the economic benefit and gain of the
RICO Defendants who control the Enterprise at the expense of Plaintiff and other similarly situated
individuals and/or IOA Clients as further described below.

315.    Each participant in the RICO Enterprise had systematic linkage to each other
through corporate ties, contractual relationships, employment, financial ties and continuing
coordination of activities.

316.    Each RICO Defendant conducted the affairs of the Enterprise or acted at the
direction of Defendant Valli, John and/or Heath in the conduct of the affairs of the Enterprise.

317.    The Enterprise associates utilized IOA as the vehicle for their racketeering
activities.

318.    IOA is a legal entity controlled by Defendants John, Valli and Heath.

319.    1188 Partners is a legal entity controlled by Defendant John.

320.    Based upon the RICO Defendants' unlawfully obtaining, transmitting, and collecting monies through the use of interstate mailings and wirings issued in IOA and 1188 Partner's name, the same affected interstate commerce in furtherance of the racketeering schemes as alleged herein.

321.    Defendant Valli, Defendant John's wife, worked closely with Defendant John and caused to be placed in the stream of U.S. Mail the fraudulent and misleading Commission Reconciliation Packages from March 2014 through January 2019.

322.    Defendant Heath, the son of Defendants John and Valli, was directly involved in continuing the fraud against Plaintiff by following Defendant John's directive to stop paying Plaintiff even the negligible fraction of owed commission on the TLE Account from January 2019 through present.

323.    1188 Partners was totally owned and controlled by Defendant John and was used as a mechanism to receive commissions and transmit the fraudulent commission payments via U.S. Mail and wire transfers.

324.    IOA and 1188 Partners were used as vehicles through which the RICO Defendants ran their Enterprise by engaging in over thirty (30) acts of mail or wire fraud – predicate activity in violation of 18 U.S.C. § 1341 and 1343.

325.    Tatum was the legal counsel for IOA who under the direction of Defendant John engaged in criminal witness tampering and victimizing IOA's former Recruiter Mahalic at the direction of Defendant John - predicate activity in violation of 18 U.S.C. § 1512 and 1513.

326.    The RICO Defendants had the specific intent to participate in the overall RICO enterprise, which is evidenced by the schemes to defraud Plaintiff, other IOA Agents and/or IOA Clients.

**Common Purpose**

327.    The members and associates of the Association in Fact Enterprise banded together with the common purpose: to enrich themselves at the expense of Spagnuolo and other unsuspecting insurance agents and/or IOA Clients.

328.    The RICO Defendants share the bounty of their criminal enterprise – by sharing the financial gain from their fraudulently obtained monies.

329.    As an independent scheme, Enterprise members worked together to increase IOA's valuation by defrauding Spagnuolo, other IOA Agents and/or IOA Clients for their own financial gain.

**Operation and Management/Distinctness**

330.    As described herein, the RICO Defendants participated in the operation and management of the RICO Enterprise by directing its affairs as described herein.

331.    While the RICO Defendants participated in –and are members of– the enterprise, they have a separate existence from the enterprise, as each individual RICO Defendant is different than the Enterprise which they direct.

332.    The Enterprise is an association of these individuals, other individuals, and entities working collectively to defraud Plaintiff and others as set forth hereinabove and below.

333.    The Association in Fact Enterprise has existed for more than six (6) years and continues to exist and operate.

**The Racketeering Violation**

334.    From approximately November 2013, and continuing up through the date of the filing of this Amended Complaint, the RICO Defendants  –each of whom are persons associated with or employed by the Association in Fact Enterprise– did knowingly and unlawfully conduct

or participate, directly or indirectly, in the Association in Fact Enterprise through a pattern of

criminal activity within the meaning of 18 U.S.C. § 1961(5) (defining "pattern") and 18 U.S.C. §

1961(1) (defining "racketeering activity"), all in violation of 18 U.S.C. § 1962 ("Prohibited

Activities").

335.    Defendants have engaged in a pattern of racketeering activity by committing at least

two acts of racketeering activity after the effective date of the statute, and also within ten (10)

years after a prior incident of racketeering conduct.  Defendants' actions:

        a.      violated 18 U.S.C. § 1341 and § 1343 mail fraud and wire fraud; and

        b.      violated 18 U.S.C. § 1512 (2) and § 1513(b) victim, or informant, and retaliation against a witness, victim, or informant, all which is also a violation of state law, Fla. Stat. § 914.22 and § 914.23.

**Defendants' Commission of Specific Predicate Activity**

336.    Mail and Wire Fraud Violations, 18 U.S.C. § 1341 (mail fraud) and 18 U.S.C. §

1343 (wire fraud):

        a.      Defendants John, Valli, Heath and 1188 Partners engaged in this violative conduct in the conduct of the affairs of the Enterprise, *i.e.*, the Defendants together engaged in at least four (4) schemes to deprive the Spagnuolo , and other victims, of money and property by fraud through these Schemes which they accomplished, in part, through a regular way of conducting business using mail and wire fraud (*See generally Pages 40 through 61 hereinabove*);

        b.      Defendants John, Heath, and Valli intentionally failed to disclose a full accounting to Plaintiff as to the TLE Account, failed to report refunds which would otherwise belong to Spagnuolo and intentionally omitted Spagnuolo from status emails between Defendant John and Account Executive Daniel (*Id.*);

        c.      Defendant John wrongfully claims to be lead producer of the TLE Account to deprive Spagnuolo of owed commissions and monies (*Id.*);

        d.      At the direction of Defendant John, from at least year 2014-2019 hand-written reconciliations were prepared by Defendant Valli

which falsely evidenced the circumstances in order to illegally deprive Spagnuolo of monies (*Id.*);

e.  The hand-written reconciliations are purposely riddled with deception and shortages when compared with actual printed policy premium documents and do not include the entire account activity and, in fact, hide premiums otherwise attributable to the account so that Spagnuolo could never detect the extent of the fraud (*Id.*);

f.  The hand-written ledgers prepared by Defendant Valli fraudulently indicating that Defendant John would receive commission, and she calculated the commission split to be 60% minus a 5% "risk services" fee – which was never disclosed to Spagnuolo prior to joining IOA (*Id.*); Spagnuolo received intermittent hand-written reconciliations from Defendant Valli from March **2014-2018** and Spagnuolo was unable to determine what was owed (*Id.*);

g.  While Spagnuolo had received some hand-written reconciliations from Defendant Valli from 2014-2018, the same failed to disclose that Defendants IOA, John and 1188 Partners were not paying Spagnuolo commissions on TLE's franchisees.  (*Id.*); and

h.  E-mail transmissions from January 2014 through February 2019 (which are interstate wirings for purposes of section 1343) caused by John in furtherance of the scheme to defraud as described.

i.  Defendant Heath's statements made over interstate wires in mid-December 2019.

337.  Examples of Specific Violations 18 U.S.C. § 1341 (mail fraud) and 18 U.S.C. § 1343 (wire fraud) by the RICO Defendants from 2014 through February 2019 and beyond:

-  ***WIRE FRAUD: Defendant John's March 18, 2014 Fraudulent Email to Plaintiff;***

-  ***MAIL FRAUD: The Fraudulent March 2014 Commission Reconciliation Package Sent Via U.S. Mail to Plaintiff's Designated South Florida Address by Defendants John and Valli;***

-  ***NUMEROUS ACTS OF WIRE FRAUD – From 2014 through 2019, Defendants John and Valli Cause IOA to Wire Monies for Commissions on the TLE Account to an Unlicensed Entity – Defendant 1188 Partners;***

- *WIRE FRAUD: Defendant John's January 21, 2015 Fraudulent Email to Plaintiff;*

- *WIRE FRAUD: Defendant John's Fraudulent February 15, 2015 Email to Plaintiff;*

- *WIRE FRAUD: Defendant John's Fraudulent February 20, 2015 Email to Plaintiff;*

- *MAIL FRAUD: The Fraudulent February 2015 Commission Reconciliation Package;*

- **MULTIPLE INDIVIDUAL ACTS OF MAIL FRAUD: From 2014 through 2019, Plaintiff receives dozens of Fraudulent Commission Reconciliation Packages;**

- *WIRE FRAUD: Defendant Valli's Fraudulent April 25, 2016 Email to Plaintiff; and*

- **WIRE FRAUD:** *Defendant John's Fraudulent February 4, 2019 Email to Plaintiff*

- **WIRE FRAUD:** *Defendant Heath's broadcasting over interstate wires in mid-December 2019*

**Intimidating and Harassing Former IOA Recruiter and Material Witness Mahalic in Violation of 18 U.S.C. § 1512 (2) and § 1513(b)**

338.    IOA's Corporate Counsel, defendant Tatum, on June 6, 2019, contacted Mahalic, the individual who had recruited Spagnuolo to be an IOA sales agent.

339.    Mahalic testified that Defendant Tatum contacted him for purposes of attempting to coerce him into not participating in the instant lawsuit as a witness for Spagnuolo.

340.    Mahalic also testified that, based upon his knowledge of Defendants John and Tatum's relationship, Tatum's conduct and actions were directed or informed by Defendant John.

341.    Mahalic is a fact witness as to the critical issues in the case regarding the terms of the 2013 Contract and the TLE account.

342.    The attempted intimidation of Mahalic is in violation of 18 U.S.C. § 1512 (2) and § 1513(b).

**Pattern of Racketeering Activity**

343.    A 'pattern of racketeering activity' requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5).

344.    Under Supreme Court law, *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229 (1989) each RICO Defendant must engage in a pattern of racketeering, as described above, which requires each Defendant meet the "continuity" plus "relationship" tests.

**Continuity Plus Relationship**

345.    Spagnuolo alleges that the course of conduct engaged in by the RICO Defendants satisfy both "continuity" and "relationship" of the racketeering activity, thereby constituting a pattern of racketeering activity, as that term is defined in 18 U.S.C. § 1961(5).

346.    Spagnuolo can show the relatedness prong because the predicate acts have the "similar purposes, results, participants, or methods of commission or are related to the affairs of the Enterprise."

347.    All predicate acts had the same purpose of defrauding Spagnuolo, other IOA Agents and/or Clients of directly and/or indirectly financially benefitting the RICO Defendants through the Schemes Defined hereinabove.

348.    The continuity of the pattern of racketeering activity constitutes closed-ended continuity as it occurred over a substantial period of time, *i.e.*, from about December 2013 through February 2019 and up to the present, and involves, as described, multiple schemes and multiple victims as alleged hereinabove.

349.     Spagnuolo also alleges that the pattern of racketeering activity is shown by the threat of continued activity as Defendants John, and in later years, his son Heath, have directed associates throughout the years to repeatedly engage in the same illegal and illicit activities involving the operation of IOA with other agents..

350.     Thus, engaging in the pattern of racketeering as set forth herein is the way Defendants regularly conduct the operations of the Association in Fact Enterprise and their predicate acts threaten future criminal conduct.

351.     Furthermore, the RICO Defendants continue to engage in these predicate acts to harm Spagnuolo and other IOA Agents and/or Clients, which establishes a threat of long-term racketeering activity and evidences the continuity of Defendants' open-ended pattern of racketeering activity.

**The Injury**

352.     RICO Defendants, and Defendants Valli and John in particular, profited directly or indirectly, from the Enterprise and Spagnuolo, proximately and directly, suffered substantial damages in the form of unpaid commissions on the TLE Account which are ongoing and accruing through present day.

**WHEREFORE**, Plaintiff demands judgment as to Count I against the **RICO Defendants** for compensatory and treble damages, pre- and post-judgment interest, attorneys' fees and costs incurred in bringing this action and for such other relief as this Honorable Court deems just and proper.

**COUNT II – CIVIL RICO CONSPIRACY – CIVIL VIOLATION OF
RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT
("CIVIL RICO") PURSUANT TO
18 U.S.C. § 1962 (CONSPIRACY TO COMMIT PROHIBITED ACTIVITIES**
(Against RICO Defendants John, Valli, Heath, and Tatum)

353.     Spagnuolo repeats each of the allegations contained in Paragraphs 1 through 301 as if set forth herein at length.

**The Conspiracy**

354.     Plaintiff alleges that commencing in February 2014, and continuing until the present time, the RICO Defendants described above, conspired to violate 18 U.S.C. § 1962(c), all in violation of Fla. Stat. § 18 U.S.C. § 1962(d). Each Defendant agreed that a conspirator would conduct or participate in the affairs of the Enterprise through a pattern of racketeering, consisting of the predicate activity as more fully described in Count I. Plaintiff alleges that the conspiratorial objective of that mutual agreement was intended to obtain Plaintiff's interests in business and/or property, and that such conspiratorial conduct violates 18 U.S.C. § 1962(d), i.e., to conspire or endeavor to violate any of the provisions of 18 U.S.C. § 1962(c).

355.     Each RICO Conspiracy defendant intended to further the schemes to defraud, which as described in Count I were completed and satisfied by at least one substantive individual Defendant.  As demonstrated in detail above, the Defendants have engaged in numerous predicate racketeering acts in furtherance of the conspiracy as alleged in Count I.

356.     The nature of the above-described acts, material misrepresentations, and omissions in furtherance of the conspiracy give rise to an inference that each Defendant not only agreed to the objective of conspiring to violate 18 U.S.C. § 1962(c), but they were aware that their ongoing fraudulent acts have been and are part of an overall pattern of racketeering activity.

357.     The agreement to violate RICO with regard to each conspiracy defendant is as follows:

a. Defendant John, until sometime in year 2008, was the CEO of IOA, and the leader of the association in fact enterprise. John himself caused and directed other conspirators to engage in multiple acts of mail fraud, wire fraud, securities violations, and witness tampering, all predicate activity, to further effectuate the defrauding of Plaintiff and other similarly situated agents and investors. Through the causing of multiple racketeering acts and his leadership of the enterprise, Defendant John has conspired to violate 18 U.S.C. § 1962(c), all in violation of 18 U.S.C. § 1962(d).

b. Defendant Heath became the CEO of IOA sometime in year 2008 and later Chairman and CEO of IOA in 2018 and since that time has the been the leader of the Enterprise. Heath himself caused and directed other conspirators to engage in multiple acts of mail fraud, wire fraud, illegal distribution of insurance commissions and securities violations all predicate activity, to further effectuate the defrauding of Plaintiff and other similarly situated agents and/or IOA Clients. Through the causing of multiple racketeering acts and his leadership of the enterprise, Defendant Heath has conspired to violate 18 U.S.C. § 1962(c), all in violation of 18 U.S.C. § 1962(d).

c. Defendant Valli is the wife of John and mother of Heath. Valli has followed directions from these aforementioned leaders in furthering the fraudulent schemes by preparation and distribution of the misleading and thereby fraudulent hand-written reconciliations which unlawfully deprived the Plaintiff, and others, of commissions due them, and furthered the part of the scheme involving the manipulation of Defendant IOA's stock price. Through the causing of multiple racketeering acts, at the direction of the Enterprise leaders, Defendant Valli has conspired to violate 18 U.S.C. § 1962(c), all in violation of 18 U.S.C. § 1962(d).

d. Defendant Tatum is corporate counsel for Defendant IOA and has followed directions from these aforementioned leaders John, Heath, and Valli, to seek to coerce a witness (Mahalic) to not testify as a witness in this instant proceeding. Tatum is a proper RICO conspiracy defendant because by seeking to tamper with a witness (predicate activity) Defendant Tatum agreed to further the fraudulent schemes described herein and agreed that a substantive Defendant would engage in multiple acts of racketeering, all in violation of 18 U.S.C. § 1962(c), all in violation of 18 U.S.C. § 1962(d).

**The Injury**

358.    As a direct and proximate result of the Defendants' agreement that conspirators would violate 18 U.S.C. § 1962(c), Spagnuolo, and others similarly situated, has been and is

continuing, directly and proximately, to be injured in their business or property as set forth more fully above.

**WHERFORE,** Spagnuolo demands entry of judgment against Defendants John, Valli, Heath, and Tatum as to Count II and seeks an award of compensatory and treble damages, for attorneys' fees costs, and for such other further relief this Court deems just and proper.

<u>**COUNT III – CONVERSION**</u>
(Against John, Valli, IOA, and 1188 Partners)

359.    Spagnuolo realleges Paragraph Numbers 1 through 301 above as if fully set forth herein.

360.    At all times material hereto, the commission remunerations from the TLE Account were Spagnuolo's property pursuant to his acceptance of IOA's Universal Offer.

361.    At all times material hereto, Defendants John, Valli, IOA and 1188 Partners intentionally and substantially interfered with Spagnuolo 's commissions by stealing, concealing, and transferring the commission remunerations through either false accounting, concealing actual commission remunerations, or fraudulent transfers to other entities or persons.

362.    More specifically, Defendants knowingly and intentionally diverted Spagnuolo 's commission remunerations to themselves through deception and concealment.

363.    As a direct and proximate result of the Defendants John, Valli, IOA, and 1188 Partners' intentional, substantial unjustified interference and exercise of dominion over the TLE Account, Spagnuolo has suffered damages.

364.    Spagnuolo did not consent to Defendants' conduct.

365.    Spagnuolo s damages are ongoing and increasing due to Defendants John, Valli, IOA, and 1188 Partners' continued interference with Spagnuolo 's rightful entitlement to his insurance commission remunerations.

366.    Spagnuolo reserves the right to amend his pleadings to assert a claim for punitive

damages due to the Defendants John, Valli, IOA, and 1188 Partners' intentional, malicious and

deceitful conduct alleged herein.

**WHEREFORE,** Spagnuolo demands judgment as to Count III against Defendants John, Valli,

IOA, and 1188 Partners for compensatory damages, together with interest, and costs for instituting

and prosecuting the instant action and for such further relief as this Honorable Court deems just

and proper.

<u>**COUNT IV - BREACH OF CONTRACT**</u>
(Against IOA)

367.    Spagnuolo realleges Paragraphs Number 1 through 301 above, as if fully and

completely set forth herein.

368.    This action is plead in the alternative to Counts I, II, VI, VII and VIII.

369.    Spagnuolo and IOA entered into an Agreement whereby Spagnuolo agreed to work

as an IOA Insurance Agent under the terms of IOA's Signature Universal Offer (the "2013

Contract").

370.    Spagnuolo performed under the 2013 Contract.

371.    IOA repeatedly breached the 2013 Contract by, *inter alia*, failing to pay Spagnuolo

insurance commissions as agreed.

372.    As a result of IOA's breach of contract, Plaintiff has been damaged.

**WHEREFORE**, Spagnuolo demands judgment as to Count IV of the Complaint and an award

of compensatory damages and costs and for such other relief as this Court deems just and proper.

## COUNT V - BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING
### (Against IOA)

373.    Spagnuolo realleges Paragraph Numbers 1 through 301 as if fully and completely set forth herein.

374.    This Count is plead in the alternative to Counts I, II, VI, VII and VIII.

375.    Spagnuolo and Defendant IOA entered into an Agreement, the 2013 Contract, whereby Spagnuolo agreed to work as an IOA Insurance Agent under the terms of IOA's Signature Universal Offer.

376.     Spagnuolo performed under the contract.

377.    IOA's actions and omissions of, *inter alia*, underreporting the TLE Account and failing to provide timely accounting and compensation unfairly interfered with Spagnuolo s receipt of duly owed commissions.

378.    IOA's conduct did not comport with Spagnuolo's reasonable contractual expectations and breached the implied covenant of good faith and fair dealing under the specific terms of contract.

379.    As a result of IOA's conduct, Spagnuolo suffered damages.

**WHEREFORE**, Spagnuolo demands judgment as to Count V of the Complaint against Defendant IOA and for an award of compensatory damages, costs and for such further relief as this Court deems just and proper.

## COUNT VI - UNJUST ENRICHMENT
### (Against IOA)

380.    Spagnuolo realleges only the Jurisdictional Allegations as if fully and completely set forth herein.

381.    This action is pled in the Alternative to Count IV – Breach of Contract.

382.    Spagnuolo conferred a benefit upon IOA in the form of referring and procuring the TLE Account.

383.    Upon information and belief, the TLE Account procures substantial profits for IOA and has grown exponentially from 2013 to the present.

384.    IOA accepted and retained the benefit referenced hereinabove without fully compensating Spagnuolo for such benefit.

385.    Under these circumstances, it would be inequitable for IOA to retain the benefit without compensating Spagnuolo for same.

386.    Under the circumstances, Spagnuolo lacks an adequate remedy at law and is entitled to a judgment for compensatory damages.

**WHEREFORE**, Spagnuolo demands judgment as to Count VI of the Complaint and for an award of compensatory damages and costs and for such further relief as this Court deems just and proper.

<u>**COUNT VII - FRAUDULENT IN THE INDUCEMENT/**</u>
<u>**FRAUDULENT MISREPRESENTATION**</u>
(Against John, Valli, and IOA)

387.    Spagnuolo incorporates and realleges Paragraph Numbers 1 through 301 above as if fully set forth herein.

388.    John, Valli, and IOA ("Fraudulent Misrepresentation Defendants") willfully and intentionally made material misrepresentations to Spagnuolo before, during and after Spagnuolo became an IOA Insurance Agent.

389.    John and IOA willfully and intentionally misrepresented to Spagnuolo that he would be paid under the terms of IOA's Signature Universal Offer.

390.    Valli and John willfully and intentionally misrepresented to Spagnuolo that commissions being paid to Plaintiff were accurate and true reflections based on the TLE insurance policy premiums being paid to IOA.

391.    Defendants knew that these misrepresentations, concealments, and manipulations of Spagnuolo 's commissions, commission reports, insurance policy premium documentation, and hiding or falsifying the purpose and/or use of the 5% Risk Service Fee charged to Spagnuolo were made with the intent to defraud Spagnuolo out of rightfully owed insurance commissions.

392.    Defendants also knew or should have known that the "5% Risk Service Fee" was, in whole or in part, a fraudulent fee which would be paid, directly or indirectly, to Defendants John and/or IOA.

393.    Defendants' statements were made with the intent to defraud Spagnuolo and prevent him from receiving the actual and true commissions earned from the insurance policy premiums from the TLE Account.

394.    Spagnuolo reasonably and justifiably relied on Defendants' fraudulent misrepresentations to his detriment.

395.    Defendants' unconscionable acts are fraudulent, deceitful and were committed intentionally to significantly damage Spagnuolo.

396.    As a direct and proximate result of Defendants' conduct, Plaintiff has suffered damages.

397.    Spagnuolo reserves the right to amend its pleadings to assert a claim for punitive damages due to Defendants John and Valli's intentional and malicious and deceitful conduct alleged herein.

**WHEREFORE,** Spagnuolo demands Judgment as to Count VII against the Fraudulent Misrepresentation Defendants and seeks an award of compensatory damages and costs and for such other further relief this Court deems just and proper.

## COUNT VIII – FRAUDULENT CONCEALMENT
### (Against John, Valli, IOA, Heath, and 1188 Partners)

398.    Spagnuolo incorporates and realleges Paragraphs 1 through 301 above as if fully set forth herein.

399.    Defendants John, Valli, IOA, Heath, and 1188 Partners, and their representatives intentionally concealed or failed to disclose material facts to Spagnuolo as alleged hereinabove.

400.    Defendants never provided Spagnuolo with, and instead concealed from him, the full performance of the TLE account which included an estimated 200 franchise plus locations.

401.    Defendants purposely and intentionally omitted Spagnuolo from emails between Defendant John, Valli, and Account Executive Daniel related to the status of the TLE Account.

402.    John, Valli, IOA, Heath, and 1188 Partners, and their representatives knew that the manipulation of Spagnuolo 's commissions, commission reports, insurance policy premium documentation and charging hidden and unknown fees whereby John, Valli, IOA, 1188 Partners, and their representatives procured hidden profits, were material facts that should have been disclosed to Spagnuolo.

403.    John, Valli, IOA, Heath, and 1188 Partners and their representatives knew that failing to disclose the TLE franchisee insurance policy commissions and its remunerations whereby John, Valli, IOA, and their representatives received hidden profits, were material facts that should have been disclosed to Spagnuolo .

404.    These Defendants knew or should have known that their concealment of the above referenced material facts would prevent Spagnuolo from discovering the true amount of insurance commissions owed to him.

405.    This Defendants  had a duty to disclose these material facts to Spagnuolo.

406.    Spagnuolo relied on Defendants  to his detriment and, pursuant to John, Valli, IOA, Heath, and 1188 Partners' conduct, was unable to discover John, Valli, IOA, and 1188 Partners' fraudulent concealment at the time it occurred.

407.    Spagnuolo reserves the right to amend his pleadings to assert a claim for punitive damages due to the Defendants John, Valli, IOA, Heath and 1188 Partners' intentional, malicious and deceitful conduct alleged herein.

**WHEREFORE**, Spagnuolo demands judgment as to Count VIII of this Complaint, compensatory damages together with interest, and costs for instituting and prosecuting the instant action and for such further relief as this Court deems just and proper.

## COUNT IX- ACCOUNTING
(Against IOA and 1188 Partners)

408.    Spagnuolo realleges Paragraph Numbers 1 through 301 as if fully and completely set forth herein.

409.    IOA was required under the 2013 Contract to pay Spagnuolo commissions.

410.    Although requested, IOA and 1188 Partners both have failed and refused to provide Spagnuolo with an accurate accounting for insurance policies sales with regard to the entire TLE Account.

411.    Because IOA and 1188 Partners are in possession of the data and information that accurately reflects the compensation due to Spagnuolo, Spagnuolo is unable to calculate the monies owed without an accounting by IOA and 1188 Partners.

412.    Spagnuolo is without an adequate remedy at law unless IOA and 1188 Partners are ordered to provide the accounting.

413.    Spagnuolo is dependent on IOA and 1188 Partners to provide him with a calculation of sales by IOA and 1188 Partners for the TLE account.

**WHEREFORE,** Spagnuolo respectfully requests this Honorable Court enter an order requiring Defendants IOA and 1188 Partners to provide an accounting of all insurance commissions and compensation owed to the Spagnuolo for the Spagnuolo insurance policies sales to TLE and its franchisees and for such other further relief as this Court deems just and proper.

## COUNT X – AIDING & ABETTING
(Against Heath and Tatum)

414.    Spagnuolo incorporates and realleges Paragraphs 1 through 301 above as if fully set forth herein.

415.    Tatum is a present officer, attorneys, directors, shareholders and/or employee of IOA who manages and develops the inner workings of IOA's business and financial enterprise.

416.    Heath is IOA's CEO and Board Member.

417.    Heath manages and develops the inner-workings of IOA's business and financial enterprise.

418.    Tatum and Heath through their respective positions at IOA, rendered substantial assistance to Valli, John, IOA, and 1188 Partners in their perpetration of the fraudulent misrepresentation and fraudulent concealment alleged herein.

419.    But for Tatum and Heath's active or passive participation in the fraudulent misrepresentation and concealment, the same would not have succeeded, and Spagnuolo would not have been victimized by Valli, John, IOA, and 1188 Partners.

420.    Tatum and Heath failed to institute adequate policies and procedures to monitor
and prevent the very type of fraud and scheme that occurred as alleged hereinabove.

421.    Upon information and belief, Tatum and/or Heath had actual or constructive
knowledge of the fraudulent misrepresentations against Spagnuolo as alleged herein and played
vital roles in the success and maintenance/expansion of the fraudulent malfeasance.

422.    As a direct and proximate result of the foregoing, Tatum and Heath are liable for
damages caused to Spagnuolo through Valli, John, IOA, and 1188 Partners' fraudulent actions and
omissions.

**WHEREFORE,** Spagnuolo demands entry of a judgment as to Count X against
Defendants for compensatory damages and costs and for such further relief as this Court deems
just and proper.

### COUNT XI – CIVIL CONSPIRACY
(Against John, Valli, Heath, and Tatum)

423.    Spagnuolo realleges Paragraph Numbers 1 through 301 as if fully and completely
set forth herein.

424.    John, Valli, Heath, and Tatum conspired with one another, as well as other
individuals and entities, to perpetrate an unlawful act upon Spagnuolo or to perpetrate a lawful act
by unlawful means, *to wit*: to deprive Spagnuolo of remunerations for the TLE Account.

425.    IOA, John, and Valli routinely doctored commission reports and falsified
reconciliations to Spagnuolo to avoid paying the insurance commission owed to Spagnuolo.

426.    IOA, John, and Valli would pay Spagnuolo commissions a negligible fraction of
the insurance commissions he was owed through a separate, unlicensed corporate entity, 1188
Partners, to avoid detection of their scheme to defraud Spagnuolo.

427.    Daniel would intentionally omit Plaintiff from emails related the TLE Account which would have disclosed to him accurate information related to the account's growth and revenues.

428.    The participants in the conspiracy, including Defendants John, Valli, Heath, and Tatum, put their own pecuniary interests ahead of the welfare and economic safety of victims of the conspiracy, including Spagnuolo and Mahalic.

429.    Upon information and belief, John, Valli, Heath, and Tatum had actual or constructive knowledge of the insurance commissions scam and Defendants were aware that they were playing a vital role in the success and maintenance/expansion of the insurance commissions scam against Spagnuolo.

430.    As a direct and proximate result of John, Valli, Heath and Tatum's participation in, and furtherance of, the conspiracy, Spagnuolo has suffered damages.

431.    Spagnuolo reserves the right to amend his pleadings to assert a claim for punitive damages due to John, Valli, Heath and Tatum's intentional and malicious and deceitful conduct alleged herein.

**WHERFORE,** Spagnuolo demands entry of judgment against Defendants as to Count XI and seeks an award of compensatory damages and costs and for such other further relief this Court deems just and proper.

## JURY DEMAND

Spagnuolo demands a trial by jury on all issues so triable.

Dated this _____ day of _____, 2023.

**<u>CERTIFICATE OF SERVICE</u>**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished

via Electronic Mail via the Florida E-Portal and facsimile to Timothy Kolaya, Esquire, *Counsel*

*for Defendants,* STUMPHAUZER FOSLID SLOMAN ROSS & KOLAYA, PLLC, Two South

Biscayne Boulevard, Suite 2550, Miami, FL 33131 tkolaya@sfslaw.com this 3rd day of March

2023.

Respectfully submitted,

**FARROW LAW, P.A.**
*Attorneys for Plaintiff*
1 Alhambra Plaza, Penthouse
Coral Gables, Florida 33134
Telephone: (954) 252-9818
jay@farrowlawfirm.com
service@farrowlawfirm.com

BY: **<u>/s/Jay L. Farrow, Esq.,</u>**
     Jay Lewis Farrow, Esquire
     Florida Bar Number: 625213

Private.com Mail - Re: Sincere Thanks

**Exhibit "A"**



Louis David <ldavid@privatejet.com>

---

## Re: Sincere Thanks
1 message

---

**Louis David** <ldavid@privatejet.com>                                    Fri, Feb 8, 2013 at 11:48 AM
To: "John Ritenour (LNG)" <John.Ritenour@ioausa.com>
Cc: "Daniel Mahalic (LNG)" <Daniel.Mahalic@ioausa.com>

> Thank you sir.
>
> All the best!
>
> Louis
>
> On Fri, Feb 8, 2013 at 11:47 AM, John Ritenour (LNG) <John.Ritenour@ioausa.com> wrote:
>
>> Louis,
>>
>> I enjoyed the time together and look forward to seeing you chart on what this all would look like.
>>
>> Have a great time in California.
>>
>>
>> John K. Ritenour
>>
>> Chairman
>>
>> Insurance Office of America
>>
>> 
>>
>> 1855 West State Road 434
>>
>> Longwood, FL  32750
>>
>> john.ritenour@ioausa.com
>>
>> T  407-998-4101
>>
>> F  407-998-4181
>>
>>
>> IMPORTANT - Spam Filters are in place on Insurance Office of America systems. If you do not receive an email response from your emails, please contact the person above via phone.

Official Insurance Broker of




## Frustrated with health care? Click life ring.



Need help with health core?
Advocacy Services
888-622-1200

---

**From:** Louis David [mailto:ldavid@privatejet.com]
**Sent:** Friday, February 08, 2013 11:41 AM
**To:** John Ritenour (LNG)
**Cc:** Daniel Mahalic (LNG)
**Subject:** Sincere Thanks

John it was a sincere pleasure meeting you yesterday.

Thank you for taking us to a wonderful lunch as well as a tour of your beautiful country club and community.

Your office and platform was beyond anything I could have anticipated.

I am truly grateful for your time and opportunity.

All the best!

--

# Mr. Louis David
Principal
www.PrivateJet.com
401 East Las Olas Blvd
Suites 130 & 285
Fort Lauderdale, FL 33301
Ph: 561.317.5511

PrivateJet.com Corporate Headquarters
1075 Peachtree Street NE, 36th floor

PrivateJet.com Mail - Re: Service thanks

Atlanta, GA 30303
Ph: 1.855.359.8677

--
**Mr. Louis David**
Principal
www.PrivateJet.com
401 East Las Olas Blvd
Suites 130 & 285
Fort Lauderdale, FL 33301
Ph: 561.317.5511

PrivateJet.com Corporate Headquarters
1075 Peachtree Street NE, 36th floor
Atlanta, GA 30303
Ph: 1.855.359.8677

06/20/22, 8:09 AM    Gmail - Re: Ray Forsythe; General Manager

**Exhibit "B"**



Louis David <ldavid@privatejet.com>

---

## Re: Ray Forsythe; General Manager
1 message

---

Louis David <ldavid@privatejet.com>                                    Mon, Feb 11, 2013 at 12:15 PM
To: "John Ritenour (LNG)" <John.Ritenour@ioausa.com>
Cc: "Daniel Mahalic (LNG)" <Daniel.Mahalic@ioausa.com>, "Valli Ritenour (LNG)" <Valli.Ritenour@ioausa.com>

John it was my sincere pleasure meeting both you and your wife.

I am truly grateful for the generosity you extended me last week.

I will work in conjunction with Daniel in drafting the Mind Map for you to review so that we can proceed.

All the best!

Louis

On Mon, Feb 11, 2013 at 12:09 PM, John Ritenour (LNG) <John.Ritenour@ioausa.com> wrote:

> Louis,
>
> Valli and I want to thank you for the gift baskets that we received today.  I hope that you had fun at the Grammys last night and have a safe flight home.
>
>
> John K. Ritenour
>
> Chairman
>
> Insurance Office of America
>
> 
>
> 1855 West State Road 434
>
> Longwood, FL  32750
>
> john.ritenour@ioausa.com
>
> T  407-998-4101
>
> F  407-998-4181
>
>
> IMPORTANT - Spam Filters are in place on Insurance Office of America systems. If you do not receive an email response from your emails, please contact the person above via phone.

Ocala Mail - Re: Ray Forsythe; General Manager

Official Insurance Broker of

       

      

# Frustrated with health care? Click life ring.



Need help with health care?
Advocacy Services
888-622-1200

---

**From:** Louis David [mailto:ldavid@privatejet.com]
**Sent:** Friday, February 08, 2013 11:39 AM
**To:** Daniel Mahalic (LNG)
**Cc:** John Ritenour (LNG)
**Subject:** Re: Ray Forsythe; General Manager


Daniel thank you.

In additional to Ferrari of Central Florida, I have relationships with Ferrari of Palm Beach, Fort Lauderdale, Miami, Tampa, North Carolina, Long Island and Wide World in New Jersey.

Also I am personal friends with the Head of Ferrari North America and the Head of the Ferrari Challenge, so in essence we have the possibility to provide all the drivers for the Challenge the insurance coverage Ray is requesting and not just his drivers from his dealership in Orlando.

I have the same relationships with Lamborghini as well.

All the best!

Louis

On Fri, Feb 8, 2013 at 3:53 AM, Daniel Mahalic (LNG) <Daniel.Mahalic@ioausa.com> wrote:

Ray Forsythe

**General Manager**

Ferrari/Maserati of Central Florida, Inc.

525 S. Lake Destiny Drive

Orlando, FL 32810

(407)667-4300  Office

(407) 667-4301 Fax

(321) 202-6306 Mobile

rforsythe@ferraricf.com

www.ferraricf.com


Ray Forsythe; General Manager of Ferrari/Maserati of Central Florida, Inc.,


Meet John Ritenour,  Chairman of Insurance Office of America.   Ray as discussed Insurance Office of America already writes  Insurance for Race teams.


John,  Ray Forsythe has asked if IOA could write their "**On Track Coverage**"  for the Ferrari Racing Division.  Ferrari Motorsports, LLC., is their Race Company.  I believe the coverage (s ) are "One Day Events".  The second discussion was insuring the Ferrari of Central Florida and Naples, FL dealership locations.  The Central FL location is breaking ground and doing a whole new facility starting March 2013.


Ray Forsythe,  on behalf of Insurance Office of America thank you for the opportunity to have IOA review your risk management needs.  Louis,  thank you for the warm introduction.


Most Sincerely,


Daniel Mahalic (LNG)


John Ritenour

**Chairman**

Insurance Office of America

(407) 998-4101 Direct

(407) 399-5900 Mobile

John.Ritenour@ioausa.com

www.ioausa.com  www.poausa.com


Daniel Mahalic

Recruiter

Insurance Office of America

(561) 714-6184

Daniel.Mahalic@ioausa.com

http://twitter.com/IOARecruiter



Official Insurance Broker of



Please be aware that security measures in place at IOA may

unintentionally prevent your e-mail from reaching its

destination.  If you do not receive a timely response to your

email, please call or fax us.  Thank you.

--

## Mr. Louis David
Principal
www.PrivateJet.com
401 East Las Olas Blvd
Suites 130 & 285
Fort Lauderdale, FL 33301
Ph: 561.317.5511

PrivateJet.com Corporate Headquarters
1075 Peachtree Street NE, 36th floor
Atlanta, GA 30303
Ph: 1.855.359.8677

--

## Mr. Louis David
Principal
www.PrivateJet.com
401 East Las Olas Blvd
Suites 130 & 285
Fort Lauderdale, FL 33301
Ph: 561.317.5511

PrivateJet.com Corporate Headquarters
1075 Peachtree Street NE, 36th floor
Atlanta, GA 30303
Ph: 1.855.359.8677

**Exhibit "C"**



Louis David <ldavid@privatejet.com>

---

## License
1 message

---

**Angela Harms (LNG)** <Angela.Harms@ioausa.com>                    Wed, May 1, 2013 at 8:28 AM
To: Louis David <ldavid@privatejet.com>

The appointment process is completed however your appointments initially terminated because you were behind on completing CE.  You will still need to complete this before the state will reinstate you.  You will need to complete credits for both the 2009-2011 period and 2011-2013 period.  Easiest and fastest way to complete is online at www.webce.com.  If easier I can get you setup with the classes you need and send you an invoice.

I've setup your account with the state and have attached all the correspondence that was in your mailbox. The state does not mail out any type of notification, only electronically.

Login to view your profile

User: spagnuolol

Password: Louis1

Please let me know how you want to proceed.

Thanks!

## Angela Harms

**Field Operations Supervisor**



**1855 W. State Road 434 Longwood, FL 32750**

**407-998-4162 (Direct) 407-788-7933 (Fax)**

Official Insurance Broker of

       

      

Please be aware that security measures in place at IOA may
unintentionally prevent your e-mail from reaching its
destination.  If you do not receive a timely response to your
email, please call or fax us.  Thank you.

---

**1479_001.pdf**
553K

PrivateJet.com Mail - RE: Congratulations: Top South Florida Insurance Agencies

# Exhibit "D"

 Gmail

Louis David <ldavid@privatejet.com>

---

## RE: Congratulations: Top South Florida Insurance Agencies
1 message

---

**John Ritenour (LNG)** <John.Ritenour@ioausa.com>                                        Fri, May 3, 2013 at 3:24 PM
To: Louis David <ldavid@privatejet.com>

With your success next year we will have a shot at number one!!!!



John K. Ritenour

Chairman

Insurance Office of America



1855 West State Road 434

Longwood, FL  32750

john.ritenour@ioausa.com

T  407-998-4101

F  407-998-4181


IMPORTANT - Spam Filters are in place on Insurance Office of America systems. If you do not receive an email response from your emails, please
contact the person above via phone.


Official Insurance Broker of

        

        

---

**From:** Louis David [mailto:ldavid@privatejet.com]
**Sent:** Friday, May 03, 2013 2:33 PM
**To:** John Ritenour (LNG); Daniel Mahalic (LNG)
**Subject:** Congratulations: Top South Florida Insurance Agencies


IOA $520 Million Ranked #2.

I like the #1 better......

http://www.bizjournals.com/southflorida/blog/morning-edition/2013/05/the-list-top-insurance-agencies.html?s=image_gallery

PrivateJet.com Mail - RE: Congratulations - updated Florida Insurance quotes

--

**Mr. Louis David**
Principal
www.PrivateJet.com
401 East Las Olas Blvd
Suites 130 & 285
Fort Lauderdale, FL 33301
Ph: 561.317.5511

PrivateJet.com Corporate Headquarters
1075 Peachtree Street NE, 36th floor
Atlanta, GA 30303
Ph: 1.855.359.8677

6/4/23, 9:00 PM     Gmail - Re: Ray Forsythe; General Manager

**Exhibit "E"**

 Gmail

Louis David <ldavid@privatejet.com>

---

## Re: Ray Forsythe; General Manager
1 message

---

**Louis David** <ldavid@privatejet.com>                                   Fri, Feb 8, 2013 at 11:39 AM
To: "Daniel Mahalic (LNG)" <Daniel.Mahalic@ioausa.com>
Cc: "John Ritenour (LNG)" <John.Ritenour@ioausa.com>

Daniel thank you.

In additional to Ferrari of Central Florida, I have relationships with Ferrari of Palm Beach, Fort Lauderdale, Miami, Tampa, North Carolina, Long Island and Wide World in New Jersey.

Also I am personal friends with the Head of Ferrari North America and the Head of the Ferrari Challenge, so in essence we have the possibility to provide all the drivers for the Challenge the insurance coverage Ray is requesting and not just his drivers from his dealership in Orlando.

I have the same relationships with Lamborghini as well.

All the best!

Louis

On Fri, Feb 8, 2013 at 3:53 AM, Daniel Mahalic (LNG) <Daniel.Mahalic@ioausa.com> wrote:

> Ray Forsythe
>
> **General Manager**
>
> Ferrari/Maserati of Central Florida, Inc.
>
> 525 S. Lake Destiny Drive
>
> Orlando, FL 32810
>
> (407)667-4300  Office
>
> (407) 667-4301 Fax
>
> (321) 202-6306 Mobile
>
> rforsythe@ferraricf.com
>
> www.ferraricf.com
>
>
> Ray Forsythe; General Manager of Ferrari/Maserati of Central Florida, Inc.,
>
>
> Meet John Ritenour,  Chairman of Insurance Office of America.   Ray as discussed Insurance Office of America already writes  Insurance for Race teams.
>
>
> John,  Ray Forsythe has asked if IOA could write their "**On Track Coverage**" for the Ferrari Racing Division.  Ferrari Motorsports, LLC., is their Race Company.  I believe the coverage (s )  are "One Day Events".  The second discussion was insuring the Ferrari of Central Florida and Naples, FL dealership locations.  The Central FL location is breaking ground and doing a whole new facility starting March 2013.

Gmail - Gmail - Re: Recruiting Financial Manager

Ray Forsythe,  on behalf of Insurance Office of America thank you for the opportunity to have IOA review your risk
management needs.  Louis,  thank you for the warm introduction.

Most Sincerely,

Daniel Mahalic (LNG)

John Ritenour

**Chairman**

Insurance Office of America

(407) 998-4101 Direct

(407) 399-5900 Mobile

John.Ritenour@ioausa.com

www.ioausa.com  www.poausa.com

Daniel Mahalic

Recruiter

Insurance Office of America

(561) 714-6184

Daniel.Mahalic@ioausa.com

http://twitter.com/IOARecruiter



Official Insurance Broker of

       

      

```
Please be aware that security measures in place at IOA may
unintentionally prevent your e-mail from reaching its
destination.  If you do not receive a timely response to your
email, please call or fax us.  Thank you.
```

--

06/14/23, 2:10 AM    Mail - Re: Flight Operations and Management

**Mr. Louis David**

Principal

www.PrivateJet.com

401 East Las Olas Blvd

Suites 130 & 285

Fort Lauderdale, FL 33301

Ph: 561.317.5511


PrivateJet.com Corporate Headquarters

1075 Peachtree Street NE, 36th floor

Atlanta, GA 30303

Ph: 1.855.359.8677



Louis David <ldavid@privatejet.com>

---

## Re: New Client: Commercial Realty Insurance: ZRealtyGroup.com

1 message

---

**Louis David** <ldavid@privatejet.com>                                                       Mon, Mar 4, 2013 at 2:47 PM
To: Zeynep `Z` Ekemen <Z@zrealtygroup.com>
Cc: "Daniel Mahalic (LNG)" <Daniel.Mahalic@ioausa.com>

Thank You Z.

Look forward to working with you.

All the best!

Louis

On Mon, Mar 4, 2013 at 2:46 PM, Zeynep `Z` Ekemen <Z@zrealtygroup.com> wrote:

Louis,

It was a pleasure speaking with you as well. Below is my contact information.

*Regards,*

*from the desk of:*

**Zeynep "Z" Ekemen, Broker**

*Z Realty Group, LLC*
*A Commercial Real Estate Brokerage House*

*1564 Lemoine Avenue*
*Fort Lee, NJ 07024*
*Ph: 201.867.1110*
*Fax: 201.867.1199*
*Mobile: 201.232.9922*
*www.zrealtygroup.com*

*Become a fan of Z Realty Group on* 

*Licensed Real Estate Broker. All Information is from sources deemed reliable and is submitted subject to errors, omissions, change of price, terms, rental prior sale and withdrawal notices.*

-------- Original Message --------
Subject: Re: New Client: Commercial Realty Insurance: ZRealtyGroup.com
From: Louis David <ldavid@privatejet.com>
Date: Mon, March 04, 2013 2:15 pm
To: "Daniel Mahalic (LNG)" <Daniel.Mahalic@ioausa.com>
Cc: "Z@ZRealtyGroup.com" <Z@zrealtygroup.com>

Z it was a pleasure speaking with you!

My team will service you to the highest level possible.

All the best!

(Here is the best email to reach me directly)

--

# Mr. Louis David
Principal
www.PrivateJet.com
401 East Las Olas Blvd
Suites 130 & 285
Fort Lauderdale, FL 33301
Ph: 561.317.5511

PrivateJet.com Corporate Headquarters
1075 Peachtree Street NE, 36th floor
Atlanta, GA 30303
Ph: 1.855.359.8677

On Mon, Mar 4, 2013 at 2:10 PM, Daniel Mahalic (LNG) <Daniel.Mahalic@ioausa.com> wrote:

> Zeynep,
>
> I look fwd to speaking to you at your earliest availability,
>
> Daniel Mahalic (LNG)
>
> Daniel Mahalic
> Recruiter
> Insurance Office of America
> (561) 714-6184
> Daniel.Mahalic@ioausa.com
> http://twitter.com/IOARecruiter



Official Insurance Broker of

       

      

**From:** Louis David [mailto:ldavid@privatejet.com]
**Sent:** Monday, March 04, 2013 2:09 PM
**To:** Daniel Mahalic (LNG)
**Subject:** New Client: Commercial Realty Insurance: ZRealtyGroup.com

Daniel hope you are well.

I just got off the phone with Zeynep, the Principal of http://www.zrealtygroup.com/, who specializes in large commercial retail centers, Office Buildings and MultiFamily properties.

She is interested in forming a partnership with IOA to be her preferred vendor for all of her clients and transactions related to real estate.

In lieu of me having email capabilities, would you be kind enough to reach out to her at Z@ZRealtyGroup.com (201-232-9922 Cell Phone) and pass on our contact information, so that we can initiate servicing her client's and their corresponding insurance needs?

Thank you.

All the best!

--
**Mr. Louis David**
Principal
www.PrivateJet.com
401 East Las Olas Blvd
Suites 130 & 285
Fort Lauderdale, FL 33301
Ph: 561.317.5511

PrivateJet.com Corporate Headquarters
1075 Peachtree Street NE, 36th floor
Atlanta, GA 30303
Ph: 1.855.359.8677

--
**Mr. Louis David**
Principal
www.PrivateJet.com
401 East Las Olas Blvd
Suites 130 & 285
Fort Lauderdale, FL 33301
Ph: 561.317.5511

PrivateJet.com Corporate Headquarters

1075 Peachtree Street NE, 36th floor
Atlanta, GA 30303
Ph: 1.855.359.8677

Exhibit "G"

 Gmail

Louis David <ldavid@privatejet.com>

---

## Re: Boys & Girls Club of Broward County & FAU University
1 message

---

**Louis David** <ldavid@privatejet.com>                                      Wed, Apr 3, 2013 at 3:31 PM
To: "Daniel Mahalic (LNG)" <Daniel.Mahalic@ioausa.com>
Cc: "John Ritenour (LNG)" <John.Ritenour@ioausa.com>, "Todd OCull (LNG)" <todd.ocull@ioausa.com>

Perfect!

I think this is a tremendous opportunity, based upon the C-Level members of the organization, which comprises of major car dealers, real estate investors, Private Yacht Manufacturers etc.

I am meeting Mr. Gary Thursday evening on Star Island and will express our capabilities.

Thank you

Louis

On Wed, Apr 3, 2013 at 3:28 PM, Daniel Mahalic (LNG) <Daniel.Mahalic@ioausa.com> wrote:
We specialize in Non Profit organizations Louis, not just in Florida, but in California too, so the short answer is yes. We can certainly work this opportunity.

Sent from my iPhone

On Apr 3, 2013, at 11:55 AM, "Louis David" <ldavid@privatejet.com<mailto:ldavid@privatejet.com>> wrote:

Daniel hope you are well.

This morning I had a meeting with Peter Gary of Pinnacle Advertising and Marketing & Affinity Entertainment, who also has been tapped to be the incoming Chairman for the Boys and Girls Club of Broward County.

If you are not already aware, the Boys & Girls Club of Broward County is essential a who's who of South Florida's Ultra High Net Worth Individuals. See Link: www.yachtrendezvous.com/admirals.htm<http://www.yachtrendezvous.com/admirals.htm>

Wayne Huizenga (Swisher), Stephen Ross (Related/Miami Dolphins), Christine Lynn (Lynn University), Felix Sabates (Trinity Yachts) and my friends John Staluppi and John Rosatti (Burger Fi Restaurants & A Current IOA Client) are just a few of its members.

-During our discussion Mr. Gary asked if IOA was able to insure 503C Non Profits and mentioned that he would be happy to set up a meeting for me to speak with the Boys & Girls Club as well as Florida Atlantic University (FAU).

Before proceeding, I first wanted to see if this was something we had the capacity to handle and/or if it would be something we would have an interest in.

I conveyed to Mr. Gary that I would first speak with our people and then follow up with him.

Thank you.


--
Mr. Louis David
Principal
www.PrivateJet.com
401 East Las Olas Blvd
Suites 130 & 285
Fort Lauderdale, FL 33301
Ph: 561.317.5511

PrivateJet.com<http://PrivateJet.com> Corporate Headquarters
1075 Peachtree Street NE, 36th floor
Atlanta, GA 30303
Ph: 1.855.359.8677

--
# Mr. Louis David

Principal
www.PrivateJet.com
401 East Las Olas Blvd
Suites 130 & 285
Fort Lauderdale, FL 33301
Ph: 561.317.5511

PrivateJet.com Corporate Headquarters
1075 Peachtree Street NE, 36th floor
Atlanta, GA 30303
Ph: 1.855.359.8677

Exhibit "H"



Louis David <ldavid@privatejet.com>

## Just in case.
1 message

**Daniel Mahalic (LNG)** <Daniel.Mahalic@ioausa.com>                              Fri, Apr 12, 2013 at 11:13 PM
To: "skapp@proskauer.com" <skapp@proskauer.com>, "John Ritenour (LNG)" <John.Ritenour@ioausa.com>, "Amy Leonard
(LNG)" <Amy.Leonard@ioausa.com>, "Todd OCull (LNG)" <todd.ocull@ioausa.com>, Louis David <ldavid@privatejet.com>

Proskauer Rose LLP

Stuart T. Kapp

2255 Glades Road

Suite 421 Atrium

Boca Raton, FL 33431-7360

d. 561-995-4730

f. 561-241-7145

skapp@proskauer.com


Stuart T. Kapp, Esq., Just in case we have not made it abundantly clear, on behalf of Insurance Office of America and
their Chairman John Ritenour and Risk Mgmt team, Louis Spagnuolo and myself.  Thank you for the very through
exposition on Proskauer Rose.  I know speaking on behalf of IOA, we would provide astounding customer service and
risk mgmt  for Proskauer on the Employee Benefits and Lawyer Liability coverages as well as for your clients.   Don't think
of Insurance Office of America as just another Insurance Brokerage.  If I may be forthright, think of www.ioausa.com as
Proskauer's personal partner in the Insurance Brokerage and Risk Mgmt arena.


I am very sincere about speaking on everyone's behalf,


Daniel Mahalic (LNG)


John K. Ritenour

**Chairman**

Insurance Office of America

(407) 998-4101 Direct

(407) 399-5900 Mobile

John.Ritenour@ioausa.com

Todd M. O'Cull, ARM

Insurance Office of America

(407) 998-4240 Direct

(407) 300-7211 Cell

Todd.OCull@ioausa.com


Daniel Mahalic

Recruiter

Insurance Office of America

(561) 714-6184

Daniel.Mahalic@ioausa.com

http://twitter.com/IOARecruiter



Official Insurance Broker of

       

      


```
Please be aware that security measures in place at IOA may
unintentionally prevent your e-mail from reaching its
destination.  If you do not receive a timely response to your
email, please call or fax us.  Thank you.
```

Exhibit "I"

 Gmail

**Louis David <ldavid@privatejet.com>**

---

## Re: chubb indication $5MM.pdf
1 message

---

**Daniel Mahalic (LNG)** <Daniel.Mahalic@ioausa.com>                      Thu, Apr 18, 2013 at 4:52 PM
To: Louis David <ldavid@privatejet.com>
Cc: "John Ritenour (LNG)" <John.Ritenour@ioausa.com>, "Lissette Smith (LNG)" <Lissette.Smith@ioausa.com>

Team work!  Follow through and IOA
Thank you Lissette!
Sent from my iPhone

On Apr 18, 2013, at 4:50 PM, "Louis David" <ldavid@privatejet.com<mailto:ldavid@privatejet.com>> wrote:

See below

Sent from my iPhone

Begin forwarded message:

From: "Kapp, Stuart T." <SKapp@proskauer.com<mailto:SKapp@proskauer.com>>
Date: April 18, 2013, 4:01:43 PM EDT
To: "Louis David" <ldavid@privatejet.com<mailto:ldavid@privatejet.com>>
Subject: Re: chubb indication $5MM.pdf

Lou,

Quote looks very attractive.  Thanks for timely response, apologize for delay on my part, dealing with some medical
issues, hope to be back on track next week and follow up then to discuss.

Stk

Stuart T. Kapp
Proskauer
skapp@proskauer.com<mailto:skapp@proskauer.com>
561-995-4730

On Apr 12, 2013, at 5:20 PM, "Louis David" <ldavid@privatejet.com<mailto:ldavid@privatejet.com>> wrote:


>
>

<chubb indication $5MM.pdf>


*******************************************************
To ensure compliance with requirements imposed by U.S.
Treasury Regulations, Proskauer Rose LLP informs you that
any U.S. tax advice contained in this communication
(including any attachments) was not intended or written to
be used, and cannot be used, for the purpose of (i)
avoiding penalties under the Internal Revenue Code or (ii)
promoting, marketing or recommending to another party any
transaction or matter addressed herein.

6/14/23, 1:11 PM     Gmail - RE: 1000 Rwv Zar 2023 MM.pdf

****************************************************************

This message and its attachments are sent from a law firm
and may contain information that is confidential and
protected by privilege from disclosure. If you are not the
intended recipient, you are prohibited from printing,
copying, forwarding or saving them. Please delete the
message and attachments without printing, copying,
forwarding or saving them, and notify the sender
immediately.


=============================================================================
==================

**Exhibit "J"**



Louis David <ldavid@privatejet.com>

---

### FW: Fwd: Golf Tournament Stuff
1 message

---

**Gino Torretta** <gino@touchdownradio.com>                    Thu, Apr 11, 2013 at 1:58 PM
To: Louis David <ldavid@privatejet.com>, john.ritenour@ioausa.com

John and Louis,

Great meeting today.

This is the event up in Tampa that I was talking about.  Ed is a great referral source and a great guy, even if he is from Philly.

I am flying up Friday for dinner and then back after golf on Friday.  We're eating at Texas Cattle Company in Clearwater on Friday.  I think this would be a great thing to make it over to and start the ball rolling.

---



**2 attachments**

**2013_UFCW_Brochure-rev.pdf**
51K

**2013_Golf_Tournament-CLC_pg_1.pdf**
58K

 Gmail

Louis David <ldavid@privatejet.com>

## RE: FW: Fwd: Golf Tournament Stuff
1 message

**John Ritenour (LNG)** <John.Ritenour@ioausa.com>              Thu, Apr 11, 2013 at 7:14 PM
To: Louis David <ldavid@privatejet.com>, Gino Torretta <gino@touchdownradio.com>

Gino,

I agree with Louis on your generosity of your time.  I look forward to spending more time together.

---

**From:** Louis David [mailto:ldavid@privatejet.com]
**Sent:** Thursday, April 11, 2013 6:10 PM
**To:** Gino Torretta
**Cc:** John Ritenour (LNG)
**Subject:** Re: FW: Fwd: Golf Tournament Stuff

Gino I can't thank you enough for all of your generosity with your time today.

We were all truly grateful that we were able to meet and sit down with you and discuss how we can all work together.

John is en route to The Masters and will be back on Monday.

Once he gets back we will discuss this and follow up.

Good luck tonight with your event!

All the best!

Louis

On Thu, Apr 11, 2013 at 1:58 PM, Gino Torretta <gino@touchdownradio.com> wrote:

John and Louis,

Great meeting today.

This is the event up in Tampa that I was talking about.  Ed is a great referral source and a great guy, even if he is from Philly.

I am flying up Friday for dinner and then back after golf on Friday.  We're eating at Texas Cattle Company in Clearwater on Friday.  I think this would be a great thing to make it over to and start the ball rolling.

\-\-

## Mr. Louis David

Principal

www.PrivateJet.com

401 East Las Olas Blvd

Suites 130 & 285

Fort Lauderdale, FL 33301

Ph: 561.317.5511

PrivateJet.com Corporate Headquarters

1075 Peachtree Street NE, 36th floor

Atlanta, GA 30303

Ph: 1.855.359.8677

**Exhibit "I"**



Louis David <ldavid@privatejet.com>

---

## FW: Braman
1 message

---

**John Ritenour (LNG)** <John.Ritenour@ioausa.com>                    Tue, Apr 16, 2013 at 6:52 PM
To: Louis David <ldavid@privatejet.com>, "Daniel Mahalic (LNG)" <Daniel.Mahalic@ioausa.com>

FYI

---

**From:** John Ritenour (LNG)
**Sent:** Tuesday, April 16, 2013 6:51 PM
**To:** 'kharte10@aol.com'
**Subject:** Braman

Subject Line: Reference Mr. Peter Gary: Message for Mr. Ken Harte

On behalf of Louis Spagnuolo, it was requested that I reach out to you and introduce myself and my company to Braman Automotive Group and its subsidiaries.

It is my understanding, that due to the diverse nature of your cumulative exposures, there has been a challenge with encompassing all policies under one provider in lieu of policy limits.

As the 8th largest privately held insurance agency in the nation, I would like to extend assistance with addressing these exposures. If possible I would like to coordinate an initial discovery meeting to see how IOA can help Braman Automotive and its subsidiaries.

On behalf of my entire team, please accept my immediate thanks for this opportunity.

All the best.

John K. Ritenour

Chairman

Insurance Office of America



1855 West State Road 434

Longwood, FL  32750

john.ritenour@ioausa.com

T  407-998-4101

F  407-998-4181

IMPORTANT - Spam Filters are in place on Insurance Office of America systems. If you do not receive an email response from your emails, please contact the person above via phone.



## Frustrated with health care? Click life ring.



```
Please be aware that security measures in place at IOA may
unintentionally prevent your e-mail from reaching its
destination.  If you do not receive a timely response to your
email, please call or fax us.  Thank you.
```

**Exhibit "M"**



Louis David <ldavid@privatejet.com>

---

## Re: ABX
1 message

---

**Louis David** <ldavid@privatejet.com>                                  Tue, Apr 23, 2013 at 12:08 PM
To: "John Ritenour (LNG)" <John.Ritenour@ioausa.com>

Perfect. ;)

On Tue, Apr 23, 2013 at 12:04 PM, John Ritenour (LNG) <John.Ritenour@ioausa.com> wrote:

I will be discussing this with Heath and then I will have a meeting with them to let them know our concerns.  I agree with everything you said in this e-mail.

---

**From:** Louis David [mailto:ldavid@privatejet.com]
**Sent:** Tuesday, April 23, 2013 11:50 AM
**To:** John Ritenour (LNG); Daniel Mahalic (LNG)
**Subject:** ABX

In Regard To ABX:

After meeting with both principals and analyzing their corporate structure, licensing agreement, assets and intellectual property, it is my professional opinion that we may want to evaluate re-calibrating the original deal structure that they proposed.

-From what they expressed, they own NO intellectual property and only have a sub-license for the animation and the "Harvey" character, which is owned by the Licensor and is unassignable to IOA on an exclusive basis.

-At the present time they are functioning as a competitor to IOA through the selling of insurance related products, to the companies they presently have signed up. (i.e. Ruth's Chris etc.) With this structure, we would essentially be bankrolling a competitor in addition to providing them with trade secrets.

-It is 1,000% essential that IOA owns any/all intellectual property, trademarks, content and code that is attached to any IOA related property or asset. (With the present structure, the Licensor in San Francisco owns all of these properties and not ABX nor IOA, which in turn makes a liquidity event impossible)

-As per Noah, the animation and voice over loops can be replicated in less than one week and could be custom built, coded, trademarked and optimized solely for IOA. This is an essential element 1) To Prevent Future Competition 2) To Build An Additional Asset We Would Own & Generate Revenue From Both Internally & Externally 3) To Construct & Position For An Eventual Liquidity Event

In Closing: The principals of ABX would be best suited becoming part of IOA Media and dissolving the ABX entity, where their sole focus would be business development, to  aggregate new prospects for both the software & IOA insurance related products.

There are no assets + multiple liabilities + uncontrollable risk exposure = Too much risk to partner/purchase or engage.

Louis

--
## Mr. Louis David
Principal
www.PrivateJet.com
401 East Las Olas Blvd
Suites 130 & 285
Fort Lauderdale, FL 33301
Ph: 561.317.5511

PrivateJet.com Corporate Headquarters
1075 Peachtree Street NE, 36th floor
Atlanta, GA 30303
Ph: 1.855.359.8677

--
## Mr. Louis David
Principal
www.PrivateJet.com
401 East Las Olas Blvd
Suites 130 & 285
Fort Lauderdale, FL 33301
Ph: 561.317.5511

PrivateJet.com Corporate Headquarters
1075 Peachtree Street NE, 36th floor
Atlanta, GA 30303
Ph: 1.855.359.8677

Private.com Mail - Re: Contact information    **Exhibits "N"**

 Gmail

**Louis David**
**<ldavid@privatejet.com>**

---

## Re: Contact information
1 message

---

**John Ritenour (LNG)** <John.Ritenour@ioausa.com>                    Wed, Apr 17, 2013 at 5:12 PM
To: Louis David <ldavid@privatejet.com>
Cc: "Daniel Mahalic (LNG)" <Daniel.Mahalic@ioausa.com>

My money is on you.

John K. Ritenour
Chairman
Insurance Office of America, Inc.

On Apr 17, 2013, at 5:01 PM, "Louis David" <ldavid@privatejet.com<mailto:ldavid@privatejet.com>> wrote:

Let's not go that far.....

Sent from my iPhone

On Apr 17, 2013, at 4:48 PM, "John Ritenour (LNG)" <John.Ritenour@ioausa.com<mailto:John.Ritenour@ioausa.com>> wrote:

Is he a better agent than you?

_____
From: Louis David [mailto:ldavid@privatejet.com]
Sent: Wednesday, April 17, 2013 4:48 PM
To: John Ritenour (LNG)
Cc: Daniel Mahalic (LNG)
Subject: Re: Contact information

He is a good guy and understands how to do things the right way.

Sent from my iPhone

On Apr 17, 2013, at 4:43 PM, "John Ritenour (LNG)" <John.Ritenour@ioausa.com<mailto:John.Ritenour@ioausa.com>> wrote:
I wanted to let you all know that I called Jim today and had a good conversation.

_____
From: Jim Schwarzkopf [mailto:jschwarzkopf@tdcriskmanagement.com]
Sent: Wednesday, April 17, 2013 10:23 AM
To: John Ritenour (LNG)
Cc: Beth Loy
Subject: Contact information

Thanks again for the call John.  Please forward this to your assistant and I will connect Beth Loy in our office to help coordinate another call and a face to face meeting.

Look forward to it.

Jim

Best Regards,
TDC Risk Management
Jim Schwarzkopf, Principal
1440 Arrowhead Dr.
Maumee, OH 43537
Direct Dial 419-794-1075

Mobile 419-466-7327
Fax 419-891-9993
jschwarzkopf@tdcriskmanagement.com<mailto:jschwarzkopf@tdcriskmanagement.com>
www.tdcriskmanagement.com<http://www.tdcriskmanagement.com>

TDC Insurance Agency
Ca License 0H27258


Confidentiality Notice: This email is intended for the sole use of the intended recipient(s) and may contain confidential or
privileged information. No one other than the intended recipient is authorized to copy or re-use this email or any
information contained in it.  If you are not the intended recipient we request that you please notify us by reply email and
destroy all copies of the message and any attachments.  Thank you for your cooperation.


Please be aware that security measures in place at IOA may

unintentionally prevent your e-mail from reaching its

destination.  If you do not receive a timely response to your

email, please call or fax us.  Thank you.



**Exhibit "O"**



Louis David <ldavid@privatejet.com>

---

## Fwd: Insurance
1 message

---

Louis David <ldavid@privatejet.com>                                    Tue, Apr 30, 2013 at 2:04 PM
To: "Daniel Mahalic (LNG)" <Daniel.Mahalic@ioausa.com>

Danny, this is a friend of mine what would like to see if we could wrap all his coverages into one policy.

Attached is his Citizens HI policy.

Let me know what else I will need from him and I will procure it.

Thanks

Louis


-----Original Message-----
From: dbillitier <dbillitier@aol.com>
To: SLD7 <SLD7@aol.com>
Sent: Tue, Apr 30, 2013 1:55 pm
Subject: Insurance

Lou, here is the forced policy I have to get out of ASAP.  It ridiculous. Also I'm including all other insurance items I would like a quote on. Please advise ASAP as to what else you need from. Thanks again for all your help.  I appreciate it.

House:
2808 NE 25th St
Ft Lauderdale, Fla
(see attached declaration page)

Vehicles:
2010 Infinity Q56
2012 Ford F150
2000 Ford F350
2003 Mercedes E320

Motorcycle:
1998 Harley Davidson, Road King

Personal watercraft:
2008 See Doo
2008 Sea Doo

Boat:
2000 Sea Ray  410 Sun Dancer  (Please show ins. price for boat so I can decide it I want it included).

Thanks again,
Dave




Dave

--

## Mr. Louis David

Principal

www.PrivateJet.com

401 East Las Olas Blvd

Suites 130 & 285

Fort Lauderdale, FL 33301

Ph: 561.317.5511

PrivateJet.com Corporate Headquarters

1075 Peachtree Street NE, 36th floor

Atlanta, GA 30303

Ph: 1.855.359.8677

📄 **1_2013_04_30_13_28_06_503.pdf**
232K

IOA Email Mail - Re: Meeting Update #230 for Rae

Do we have address in Miami ?  I need to find the closest FBO and whether John is going to need a rental?

**Kim Demanche**

**Administrative Assistant II**

**1855 W SR 434**

**Longwood, FL  32750**

**407-998-4275**

**407-998-4152 fax**

**kim.demanche@ioausa.com**

**<image005.jpg>**

**Celebrating 20 Years of Excellence**

<image006.jpg>

---

**From:** Daniel Mahalic (LNG)
**Sent:** Thursday, May 02, 2013 12:01 PM
**To:** Louis David
**Cc:** Carol Musselwhite (LNG); Kim Demanche (LNG); John Ritenour (LNG)
**Subject:** Re: Miami Dolphins

Kindly factor John Furman into the Braman, Boys and Girls Club and Dolphin's schedule.

Sent from my iPhone

On May 2, 2013, at 11:57 AM, "Louis David" <ldavid@privatejet.com> wrote:

> Dolphin's Management just confirmed via email that we are on for May 10th at 11:00 am at the SunLife Stadium Offices to meet with CFO Mark Brockelman and Dave Murphey to discuss a plan of action on how we can work together.
>
> Similar to last time, I will begin coordinating the rest of the day.
>
> All the best.
>
> --
> # Mr. Louis David
> Principal
> www.PrivateJet.com
> 401 East Las Olas Blvd
> Suites 130 & 285
> Fort Lauderdale, FL 33301
> Ph: 561.317.5511
>
> PrivateJet.com Corporate Headquarters
> 1075 Peachtree Street NE, 36th floor
> Atlanta, GA 30303
> Ph: 1.855.359.8677

Confidential Mail - RE: Medium Op for RO for Page

**Exhibit "Q"**

 Gmail

**Louis David <ldavid@privatejet.com>**

---

## Re: Important; Amy
1 message

---

**Louis David** <ldavid@privatejet.com>                                   Mon, May 6, 2013 at 2:38 PM
To: "Daniel Mahalic (LNG)" <Daniel.Mahalic@ioausa.com>
Cc: "Amy Leonard (LNG)" <Amy.Leonard@ioausa.com>, "John Ritenour (LNG)" <John.Ritenour@ioausa.com>

Agreed. They want us to handle there account.

This can potentially open a lot of doors for us as well.

Thank you!

Louis

Sent from my iPhone

On May 6, 2013, at 2:35 PM, "Daniel Mahalic (LNG)" <Daniel.Mahalic@ioausa.com> wrote:

> Amy, to my understanding, this is our business to to win or lose.  Do your magic friend.  Warm Regards, Daniel
>
> Sent from my iPhone
>
> On May 6, 2013, at 2:17 PM, "Louis David" <ldavid@privatejet.com<mailto:ldavid@privatejet.com>> wrote:
>
> Please see below.
>
> They are ready to move.
>
> Lets address this ASAP!
>
> We have them in our sight line.
>
> Louis
>
> Sent from my iPhone
>
> Begin forwarded message:
>
> From: Matt Organ <MOrgan@bgcbc.org<mailto:MOrgan@bgcbc.org>>
> Date: May 6, 2013, 2:13:38 PM EDT
> To: Louis David <ldavid@privatejet.com<mailto:ldavid@privatejet.com>>
> Cc: Roberta Murphy <rmurphy@bgcbc.org<mailto:rmurphy@bgcbc.org>>
> Subject: RE: Pleasure Meeting You
>
> Hello Lou
>
> Hope all is well
>
> After receiving some initial quotes from our Insurance Agent, the Management team at the Boys & Girls Clubs of Broward County has decided to open the process up to other Insurance Carriers / Agents to see what Health Insurance products are best available to the Boys & Girls Clubs of Broward.
>
> Please ask Amy to contact Roberta Murphy in our office.  Roberta is our HR Director and her email is rmurphy@bgcbc.org<mailto:rmurphy@bgcbc.org>  I have copied Roberta on this email
>
> Please also ask Amy to cc me on all emails to start with .
>
> Thanks

> Matt
>
> Ps  Time is not our friend with this......  Thanks
>
> From: Louis David [mailto:ldavid@privatejet.com]
> Sent: Wednesday, April 17, 2013 4:25 PM
> To: Matt Organ
> Subject: Re: Pleasure Meeting You
>
> Matt yes I am excited to attend.
>
> I will check on the week of the 6th and follow up.
>
> In the meantime I believe your health benefits is up the end of May so I wanted to see if I could place Amy Leonard in touch with you to procure the necessary information so we meet we can present some solutions for you.
>
> All the best!
>
> Louis
>
> Sent from my iPhone
>
> On Apr 17, 2013, at 4:16 PM, Matt Organ <MOrgan@bgcbc.org<mailto:MOrgan@bgcbc.org>> wrote:
> HI Louis
>
> Hope all is well and very nice meeting you last week
>
> I believe I might see you this Saturday night at our fundraiser at the Hard Rock
>
> I am on vacation next week and in a conference the following week......How does the week of the 6th look like to meet with our President / CEO?
>
> Please let me know of some date options
>
> Thanks
> Matt
>
> From: Louis David [mailto:ldavid@privatejet.com]
> Sent: Thursday, April 11, 2013 7:46 PM
> To: PFG@pa-mg.com<mailto:PFG@pa-mg.com>; Matt Organ
> Cc: Daniel Mahalic (LNG)
> Subject: Pleasure Meeting You
>
> Matthew it was a pleasure meeting with you today.
>
> We appreciate you taking the time out of your schedule to sit down with us.
>
> I genuinely feel that we have a lot of synergies and are confident that we can add significant value to your organization.
>
> Lets see if we can circle back some time next week.
>
> Peter, as always thank you. You're the best!
>
> -In the meantime, I will reach out to Mr. Rosati and find out where the disconnect is.
>
> All the best!
>
>
> --
> Mr. Louis David
> Principal
> www.PrivateJet.com<http://www.PrivateJet.com>
> 401 East Las Olas Blvd
> Suites 130 & 285
> Fort Lauderdale, FL 33301

> Ph: 561.317.5511
>
> PrivateJet.com<http://PrivateJet.com> Corporate Headquarters
> 1075 Peachtree Street NE, 36th floor
> Atlanta, GA 30303
> Ph: 1.855.359.8677

privatejet.com Mail - IOA Employee Benefits

**Exhibit "R"**



Louis David <ldavid@privatejet.com>

---

## IOA Employee Benefits
1 message

**Amy Leonard (LNG)** <Amy.Leonard@ioausa.com>                   Mon, May 6, 2013 at 5:18 PM
To: "MOrgan@bgcbc.org" <MOrgan@bgcbc.org>, "rmurphy@bgcbc.org" <rmurphy@bgcbc.org>
Cc: Louis David <ldavid@privatejet.com>, "Daniel Mahalic (LNG)" <Daniel.Mahalic@ioausa.com>, "Jennifer Botting (LNG)" <Jennifer.Botting@ioausa.com>

Good Evening Matt and Roberta,

Our mutual friend and colleague, Louis has advised that IOA may have an opportunity to work with the Boys and Girls Clubs of Broward County.  First and foremost, thank you for this opportunity!

My partner Jennifer Botting and I will be in South Florida next Thursday, May 16.  Would you possibly have some time that we could meet and review IOA's employee benefits services and capabilities?  I am confident that during this meeting you will quickly see that IOA is different from most brokers and would make an excellent partner for your organization.

We also understand that we are working on a tight time frame based upon your 6/1 plan year renewal.  We would like to understand your current plans, what your current broker has presented and the organization's objectives in this upcoming renewal.  As I am sure you are familiar with, in order for IOA to provide any proposals, we would need a current census, plan designs, rates and a letter of authority that would allow us to work with the carrier markets to obtain proposals.  If you are available tomorrow, we would like to have a brief call to discuss these items as well as next steps.  Please let us know some times that may work with your schedule tomorrow for this brief call.

Again, thank you for this opportunity!

All The Best,

Amy

-

**Amy Leonard** | **Senior Account Executive – Employee Benefits** | **Insurance Office of America, Inc.**

1855 West State Rd 434 | Longwood, FL  32750 | **Phone:** 407.998.5484 | **Cell:** 407.687.7737





Official Insurance Broker of

Please be aware that security measures in place at IOA may
unintentionally prevent your e-mail from reaching its
destination.  If you do not receive a timely response to your
email, please call or fax us.  Thank you.

**Exhibit "S"**



Louis David <ldavid@privatejet.com>

---

### Fwd: IOA / The Learning Experience Luncheon
1 message

**Louis David** <ldavid@privatejet.com>                                  Tue, Apr 2, 2013 at 11:22 AM
To: "John Ritenour (LNG)" <John.Ritenour@ioausa.com>

John through reading through and analyzing the emails, it is my humble opinion that there is a possibility that TLE is experiencing some financial challenges and is looking to IOA to assist in providing some monetary relief.

Again in my humble opinion, I feel the focus should be centered on the cost savings and efficiency advantages IOA can bring to TLE to help strengthen there balance sheet, while still providing them the necessary coverage.

Payroll savings may also be a driver in this equation as well as possibly Merchant Processing.

Shafir seems like a "bottom line" guy, so for us to address his needs in a simple and clear manner, we may want to explore how we can increase there bottom line through multiple product offerings to net "X" amount of savings versus there present situation.

I would strongly look to procure all the necessary information regarding there Health/Benefits, P&C and the additional mentioned items, so that the presentation is based upon the overall value we can bring to the table in exchange for transitioning.

All the best!

Louis

---------- Forwarded message ----------
From: **Todd OCull (LNG)** <todd.ocull@ioausa.com>
Date: Tue, Apr 2, 2013 at 11:05 AM
Subject: RE: IOA / The Learning Experience Luncheon
To: Michael Shafir <mshafir@tlecorp.com>
Cc: "John Ritenour (LNG)" <John.Ritenour@ioausa.com>, "Daniel Mahalic (LNG)" <Daniel.Mahalic@ioausa.com>, Louis David <ldavid@privatejet.com>, "Amy Leonard (LNG)" <Amy.Leonard@ioausa.com>

Yes, sir.  We can discuss program options as well as a la carte commercial packages to address your exposures.  Depending on your risk tolerance and financial objectives, we can also explore retention and large deductible options that help control fixed insurance costs and incentivize a strong safety culture.

Do you have an insurance summary page you could send me in advance of the meeting outlining your current exposures, limits, and deductibles?

---

**From:** Michael Shafir [mailto:mshafir@tlecorp.com]
**Sent:** Tuesday, April 02, 2013 10:43 AM
**To:** Todd OCull (LNG)

Photo Gmail - Mail - Fwd: IOA / The Learning Experience Luncheon

**Cc:** John Ritenour (LNG); Daniel Mahalic (LNG); Louis David; Amy Leonard (LNG); Todd OCull (LNG)
**Subject:** Re: IOA / The Learning Experience Luncheon

Sounds good, I hope you can also discuss the property and liability options for our centers as well.  Look forward to it.

Sent from my iPhone

On Apr 2, 2013, at 10:37 AM, "Todd OCull (LNG)" <todd.ocull@ioausa.com> wrote:

Michael,

We will have 5 troops in our party and we will not require any audio/visual equipment.  Our intent is to provide a little background about our agency and business model, highlight our risk management capabilities, and discuss our employee benefits initiatives to meet the changing demands of the Affordable Health Care for America Act.

We look forward to seeing you for lunch on Thursday, 11 April.

Regards,

**Todd M. O'Cull, ARM**

Insurance Office of America

(407) 998-4240 Direct

(407) 300-7211 Cell

<image004.jpg>

---

**From:** Michael Shafir [mailto:mshafir@tlecorp.com]
**Sent:** Monday, April 01, 2013 3:45 PM
**To:** Todd OCull (LNG)
**Cc:** John Ritenour (LNG); Daniel Mahalic (LNG); Louis David
**Subject:** RE: Michael Shafir, Esq., meet Todd O'Cull (407) 998-4240 www.ioausa.com

No worries, we will order in, just let me know how many people you will be, and if you need any audio/visual equipment.

**Michael A. Shafir, Esq.**

**Vice President & General Counsel**

The Learning Experience®
4855 Technology Way, Suite 700
Boca Raton, FL 33431
P: (561) 886-6400
F: (561) 886-6433
mshafir@tlecorp.com
www.TheLearningExperience.com
**<image001.jpg>**


<image002.jpg>   <image003.jpg>

---

**From:** Todd OCull (LNG) [mailto:todd.ocull@ioausa.com]
**Sent:** Monday, April 01, 2013 3:23 PM
**To:** Michael Shafir
**Cc:** John Ritenour (LNG); Daniel Mahalic (LNG); Louis David
**Subject:** RE: Michael Shafir, Esq., meet Todd O'Cull (407) 998-4240 www.ioausa.com


Michael,


Lunch "in" would work well for us.  We will only need about 1 ½ hours of your time for our first meeting.  Let me know the lunching options and I can help coordinate that, too.


Regards,


**Todd M. O'Cull, ARM**

Insurance Office of America

(407) 998-4240 Direct

(407) 300-7211 Cell

<image004.jpg>

---

**From:** Michael Shafir [mailto:mshafir@tlecorp.com]
**Sent:** Monday, April 01, 2013 9:20 AM
**To:** Todd OCull (LNG)
**Cc:** John Ritenour (LNG); Daniel Mahalic (LNG)
**Subject:** RE: Michael Shafir, Esq., meet Todd O'Cull (407) 998-4240 www.ioausa.com

Personal Gmail - Fwd: ICM and The Learning Experience Page ...

I received your lunch invite for next Thursday.  Not sure whether you had wanted to make a presentation
in our offices (we can order in) or meet for lunch elsewhere – pls let me know, thanks, and advise how
much time you will need.

Regards,

Michael Shafir

**Michael A. Shafir, Esq.**

**Vice President & General Counsel**

The Learning Experience®
4855 Technology Way, Suite 700
Boca Raton, FL 33431
P: (561) 886-6400
F: (561) 886-6433
mshafir@tlecorp.com
www.TheLearningExperience.com
**<image001.jpg>**

<image002.jpg>   <image003.jpg>

---

**From:** Todd OCull (LNG) [mailto:todd.ocull@ioausa.com]
**Sent:** Thursday, March 28, 2013 4:18 PM
**To:** Michael Shafir
**Cc:** John Ritenour (LNG); Daniel Mahalic (LNG); Todd OCull (LNG)
**Subject:** RE: Michael Shafir, Esq., meet Todd O'Cull (407) 998-4240 www.ioausa.com

Let me check our flight schedule and get back to you with a firm time.

Regards,

**Todd M. O'Cull, ARM**

Insurance Office of America

(407) 998-4240 Direct

(407) 300-7211 Cell

**From:** Michael Shafir [mailto:mshafir@tlecorp.com]
**Sent:** Thursday, March 28, 2013 1:56 PM
**To:** Todd OCull (LNG)
**Cc:** John Ritenour (LNG); Daniel Mahalic (LNG)
**Subject:** RE: Michael Shafir, Esq., meet Todd O'Cull (407) 998-4240 www.ioausa.com


That should work, anytime after 10.


**Michael A. Shafir, Esq.**

**Vice President & General Counsel**

The Learning Experience®
4855 Technology Way, Suite 700
Boca Raton, FL 33431
P: (561) 886-6400
F: (561) 886-6433
mshafir@tlecorp.com
www.TheLearningExperience.com
**<image001.jpg>**


<image002.jpg>   <image003.jpg>


---

**From:** Todd OCull (LNG) [mailto:todd.ocull@ioausa.com]
**Sent:** Thursday, March 28, 2013 1:57 PM
**To:** Michael Shafir
**Cc:** John Ritenour (LNG); Daniel Mahalic (LNG)
**Subject:** RE: Michael Shafir, Esq., meet Todd O'Cull (407) 998-4240 www.ioausa.com


Michael,


We have Thursday, 11 April, available.  Will that work for you?


**Todd M. O'Cull, ARM**

Insurance Office of America

(407) 998-4240 Direct

(407) 300-7211 Cell

Pll Confidential - Fwd: ICA ... Est... Learning Experience ... get co...

**From:** Michael Shafir [mailto:mshafir@tlecorp.com]
**Sent:** Thursday, March 28, 2013 12:56 PM
**To:** Todd OCull (LNG)
**Cc:** John Ritenour (LNG); Daniel Mahalic (LNG)
**Subject:** RE: Michael Shafir, Esq., meet Todd O'Cull (407) 998-4240 www.ioausa.com

I'm sorry for the delayed response. How about the second half of the following week?

**Michael A. Shafir, Esq.**

**Vice President & General Counsel**

The Learning Experience®
4855 Technology Way, Suite 700
Boca Raton, FL 33431
P: (561) 886-6400
F: (561) 886-6433
mshafir@tlecorp.com
www.TheLearningExperience.com
**<image001.jpg>**

<image002.jpg>   <image003.jpg>

---

**From:** Todd OCull (LNG) [mailto:todd.ocull@ioausa.com]
**Sent:** Friday, March 15, 2013 3:39 PM
**To:** Michael Shafir
**Cc:** Todd OCull (LNG); John Ritenour (LNG); Daniel Mahalic (LNG)
**Subject:** FW: Michael Shafir, Esq., meet Todd O'Cull (407) 998-4240 www.ioausa.com

Michael,

Thanks for the time on the phone Wednesday to share a little about The Learning Experience. Your courtesies are appreciated.

We discussed meeting in early April to spend a little more time together face-to-face. We are available 01 April or 04 April. Can you please let me know if either of those dates is convenient for a visit to your Boca Raton office?

Regards,

**Todd M. O'Cull, ARM**

**Risk Management Consultant**

Insurance Office of America

(407) 998-4240 Direct

(407) 300-7211 Cell

<image004.jpg>

---

**From:** Daniel Mahalic (LNG)
**Sent:** Wednesday, March 13, 2013 10:07 AM
**To:** 'Louis David'; Todd OCull (LNG); 'Z@zrealtygroup.com'; 'mshafir@tlecorp.com'
**Subject:** Michael Shafir, Esq., meet Todd O'Cull (407) 998-4240 www.ioausa.com


**Michael A. Shafir, Esq.**   It was a pleasure speaking to you this morning,  have a good day,  Daniel Mahalic (LNG)

**Vice President & General Counsel**
The Learning Experience®
4855 Technology Way, Suite 700
Boca Raton, FL 33431
P:  (561) 886-6400
F:  (561) 886-6433
mshafir@tlecorp.com
www.TheLearningExperience.com


Richard Weissman

President

The Learning Experience

rsw@tlecorp.com

http://www.thelearningexperience.com/


Good Morning Richard Weissman & Michael Shafir, Esq,


Below the body of this email is the Chairman's Acct Manager,  Todd O'Cull contact information.   Kindly email your cell # so I may Schedule a meeting for you.  You can call Daniel Mahalic at 561-714-6184 or Todd O'Cull at 407-998-4240.

Ploud the Mail - Fwd: ICA Client Learning Experience.... Florida

I look forward to www.ioausa.com becoming your Risk Manager.


Warmest Regards,


Daniel Mahalic (LNG)



Daniel


In addition, I believe Mr. Weissman is in Orlando at the moment so I would like to see if you can coordinate having him come by our headquarters and meet with the appropriate individuals.


Thank you


Louis


On Tue, Mar 12, 2013 at 3:19 PM, Zeynep `Z` Ekemen  Z@zrealtygroup.com wrote:


Gentlemen,


I hope this email finds everybody well. I would like to introduce Mr. Richard Weissman President at The Learning Experience to Mr. Louis David working with Insurance Office of America.


Richard I have provided Mr. Davis an overview of your business and feel confident that they will be able to provide you with the highest level of service in your risk management and insurance needs for TLE.


Regards,


from the desk of:


Zeynep "Z" Ekemen, Broker


Z Realty Group, LLC

A Commercial Real Estate Brokerage House

1564 Lemoine Avenue

Fort Lee, NJ 07024

Ph: 201.867.1110

Fax: 201.867.1199

Mobile: 201.232.9922

www.zrealtygroup.com

Become a fan of Z Realty Group on

Licensed Real Estate Broker. All Information is from sources deemed reliable and is submitted subject to errors, omissions, change of price, terms, rental prior sale and withdrawal notices

John Ritenour

**Chairman**

Insurance Office of America

(407) 998-4101 Direct

John.Ritenour@ioausa.com

Todd O'Cull                    Mr. Weissman,  Todd O'Cull will be handling your meeting in Longwood (Orlando)  this is his contact information.

Risk Management

Insurance Office of America

(407) 998-4240 Direct

Todd.OCull@ioausa.com

Daniel Mahalic

Recruiter

Insurance Office of America

(561) 714-6184

Daniel.Mahalic@ioausa.com

http://twitter.com/IOARecruiter

PhoneeMaililwd: ICRiFitst Q4n/2x4f/2priorence nangeo…

<image002.jpg>

Please be aware that security measures in place at IOA may unintentionally prevent your e-mail from reaching its destination. If you do not receive a timely response to your email, please call or fax us. Thank you.

```
Please be aware that security measures in place at IOA may

unintentionally prevent your e-mail from reaching its

destination.  If you do not receive a timely response to your

email, please call or fax us.  Thank you.
```

---------------------------------------------------------------------------------------------------------------
The information contained in this e-mail, and any attachment, is confidential and is intended solely for the use of the intended recipient. Access, copying or re-use of the e-mail or any attachment, or any information contained therein, by any other person is not authorized. If you are not the intended recipient please return the e-mail to the sender and delete it from your computer. Although we attempt to sweep e-mail and attachments for viruses, we do not guarantee that either are virus-free and accept no liability for any damage sustained as a result of viruses.

---------------------------------------------------------------------------------------------------------------
The information contained in this e-mail, and any attachment, is confidential and is intended solely for the use of the intended recipient. Access, copying or re-use of the e-mail or any attachment, or any information contained therein, by any other person is not authorized. If you are not the intended recipient please return the e-mail to the sender and delete it from your computer. Although we attempt to sweep e-mail and attachments for viruses, we do not guarantee that either are virus-free and accept no liability for any damage sustained as a result of viruses.

---------------------------------------------------------------------------------------------------------------
The information contained in this e-mail, and any attachment, is confidential and is intended solely for the use of the intended recipient. Access, copying or re-use of the e-mail or any attachment, or any information contained therein, by any other person is not authorized. If you are not the intended recipient please return the e-mail to the sender and delete it from your computer. Although we attempt to sweep e-mail and attachments for viruses, we do not guarantee that either are virus-free and accept no liability for any damage sustained as a result of viruses.

---------------------------------------------------------------------------------------------------------------
The information contained in this e-mail, and any attachment, is confidential and is intended solely for the use of the intended recipient. Access, copying or re-use of the e-mail or any attachment, or any information contained therein, by any other person is not authorized. If you are not the intended recipient please return the e-mail to the sender and delete it from your computer. Although we attempt to sweep e-mail and attachments for viruses, we do not guarantee that either are virus-free and accept no liability for any damage sustained as a result of viruses.

```
Please be aware that security measures in place at IOA may

unintentionally prevent your e-mail from reaching its

destination.  If you do not receive a timely response to your

email, please call or fax us.  Thank you.
```

---------------------------------------------------------------------------------------------------------------
The information contained in this e-mail, and any attachment, is confidential and is intended solely for the use of the intended recipient. Access, copying or re-use of the e-mail or any attachment, or any information contained therein, by any other person is not authorized. If you are not the intended recipient please return the e-mail to the sender and delete it from your computer. Although we attempt to sweep e-mail and attachments for viruses, we do not guarantee that either are virus-free and accept no liability for any damage sustained as a result of viruses.

--

# Mr. Louis David

Principal

www.PrivateJet.com

401 East Las Olas Blvd

Suites 130 & 285

Fort Lauderdale, FL 33301

Ph: 561.317.5511

PrivateJet.com Corporate Headquarters

1075 Peachtree Street NE, 36th floor

Atlanta, GA 30303

Ph: 1.855.359.8677

**Exhibit "T"**

**From:** "John Ritenour (LNG)" <John.Ritenour@ioausa.com>
**Date:** April 2, 2013 at 11:25:13 AM EDT
**To:** Louis David <ldavid@privatejet.com>
**Subject: RE: IOA / The Learning Experience Luncheon**

I agree.

John K. Ritenour
Chairman
Insurance Office of America



1855 West State Road 434
Longwood, FL  32750
john.ritenour@ioausa.com
T  407-998-4101
F  407-998-4181

IMPORTANT - Spam Filters are in place on Insurance Office of America systems. If you do not receive an email response from your emails, please contact the person above via phone.

Official Insurance Broker of



Frustrated with health care? Click life ring.





Exhibit "V"

Louis David <ldavid@privatejet.com>

---

## Thank You!
1 message

---

**Todd OCull (LNG)** <todd.ocull@ioausa.com>                          Mon, Apr 15, 2013 at 11:05 AM
To: Michael Shafir <mshafir@tlecorp.com>, "Richard Weissman (rsw@tlecorp.com)" <rsw@tlecorp.com>, Jacqueline Garofalo <js@tlecorp.com>
Cc: Daniel Mahalic <daniel@privatejet.com>, Louis David <ldavid@privatejet.com>, "John Ritenour (LNG)" <John.Ritenour@ioausa.com>, "Amy Leonard (LNG)" <Amy.Leonard@ioausa.com>, "Todd OCull (LNG)" <todd.ocull@ioausa.com>

Jacqueline, Richard, and Michael:

Thank you for your courtesies and interest in Insurance Office of America.  We sincerely appreciate the information shared about your operations and your candor outlining the areas for brokerage improvement.  We are confident our service model will meet your expectations.

In order for us to start our analysis of your current property and casualty cover, we will need to secure copies of your in force policies.  This is an important step in the process to evaluate not only the coverage, schedules, limits, and deductibles, but also to review the policy exclusions.  You can either email them to me or make copies and package them up.

In addition to the policies, we will also need the following to prepare our marketing submission:

1.    Current and historical loss information.  5 years total history required for trending.  I can provide you a template for ordering direct from Markel, or you can request from your current agent.

2.    5 years of exposure base history.

        a.    WC Payroll

        b.    Student Counts

        c.    Franchisees

        d.    Fleet vehicle counts

Once I get this information, I will start completing the carrier supplemental applications.  If you have a copy of your Markel supplemental from last year, that would help me get started.

In addition to Markel, we will be approaching the following markets with expertise in your niche:

·    Philadelphia

·    Travelers

·    Great American

·    Utica (Non-Florida locations)

·    Harleysville (Non-Florida locations)

·    Selective Insurance (Non-Florida locations)

PrivateJet.com Mail - Re: 4/16/23

We are excited to get started working for you!  Please let me know if you have any questions or concerns.


Regards,

**Todd M. O'Cull, ARM**

Insurance Office of America

1855 West State Road 434

Longwood, FL   32750

(407) 998-4240 Direct

(407) 300-7211 Cell


Todd.O'Cull@ioausa.com

www.ioausa.com



Official Insurance Broker of

       

      

```
Please be aware that security measures in place at IOA may
unintentionally prevent your e-mail from reaching its
destination.  If you do not receive a timely response to your
email, please call or fax us.  Thank you.
```

The Learning Exp.

| 15-16 | WC - Oldsmar | 25.50 | final |
| 15-16 | WC - EB Learning | 115.80 | final |
| 15-16 | WC - Goldenchild | 89.76 | Dec/Jan 2016 |
| 15-16 | WC - CoralSpring/Boynton | 251.05 | Dec/Jan 2016 |
| 15-16 | WC - Dove Ent | 58.82 | Jan/March 2016 |
| | WC - Dove Ent | 34.61 | Audit |
| 15-16 | WC - Random Express | 328.89 | |
| 15-16 | WC - HS Child | 9304 | Jan/March 2016 |
| 15-16 | Disability - TLE Holding | 127.20 | Jan 2016 |
| 15-16 | WC - Velox | 241.53 | Nov, Dec, Jan 2016 |

| 16-17 | WC Corporate | 181.46 |
| 16-17 | Accident | 1680.80 |
| 16-17 | Comml Pkg (school) | 9626.40 |
| 16-17 | WC - Master | 1445.01 |
| 16-17 | Auto | 210.45 |
| 16-17 | Umbrella | 1636.08 |
| 16-17 | Comml Pkg - HQ | 520.20 |
| 16-17 | Prop - Wind | 4370.00 |
| 16-17 | Auto - Massachusetts | 288.12 |
| 16-17 | Event Cancellation | 374.00 |
| 16-17 | WC - OLDSMAR | 29.60 |
| 16-17 | Flood - Denville | 257.10 |
| 16-17 | WC - EB Learning | 121.48 |
| 16-17 | WC - Goldenchild | - not yet |

| 14-15 | WC – Wayne | (280.82) | Audit |
| | WC – Lake Worth | 54.84 | Audit |
| | WC – Coral Spring | 169.52 | |
| | WC – Tray | 2.49 | |
| | WC – Livingston | (189.32) | |
| | WC – Dove | 61.49 | Audit |
| | WC – Dove | 21.98 | Aug, 2015 |
| | WC – Dove | 14.65 | June, 2015 |
| | WC – Random Exp | 40.73 | Audit |
| | WC – Random Exp | 86.80 | Aug 2015 |
| | WC – Corporate | 458.57 | Aug 2015   Audit |
| | WC – Creative Amer | 63.22 | Aug 2015 |
| | WC – Creative Amer | 61.94 | June 2015 |
| | WC – Velez | 153.87 | Jan, March 2014 |
| 15-16 | WC – Masters Schools | 2322.64 | Jan, March 2016 |
| 15-16 | WC  Corporate | 677.53 | Short-term pol - Rewritten |



25,826.55
X .55

$ 14,204.60    John

X .50

$ 7102.30    pd 3/29/16

IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA

LOUIS SPAGNUOLO,

    Plaintiff,

CASE NO.: CACE-19-010212
DIVISION: 18

v.

**EXHIBIT "X"**

INSURANCE OFFICE OF AMERICA,
INC., ET AL.,

    Defendants.

_____/

## AFFIDAVIT OF WITNESS DANIEL MAHALIC

STATE OF ___FL___

COUNTY OF ___Broward___

    **BEFORE ME**, a person duly authorized to administer oaths in the State of Florida, *personally appeared* **DANIEL MAHALIC**, whom after being first duly sworn, affirm and state as follows:

1.    I am over 18 years of age and have personal knowledge of all facts and circumstances set forth herein in these proceedings and I am competent to testify as to the facts and matters contained in my affidavit.

2.    I was employed by Insurance Offices of America, Inc. ("IOA") from July 2010 to January 2018 where I served as a company recruiter to attract licensed insurance agents to join IOA and was instrumental in recruiting Louis Spagnuolo for that role.

3.    On June 6, 2019, I received a call from George "Tony" Tatum, the in-house counsel (Florida Bar Number 21306) for IOA to my personal cell phone. I have known Mr. Tatum for a couple of years only through my relationship and employment at IOA.  Mr. Tatum is a long-time personal friend of Mr. Ritenour as well as in-house corporate counsel.

1

4.    I felt it was inappropriate for Mr. Tatum to be calling me and took offense to his tone and stern demeanor during the call. Mr. Tatum engaged the conversation to the effect that:

> "I heard you jammed up Ritenour in a lawsuit and that he is very unhappy you're your involved in this."

5.    I responded by saying "I didn't appreciate the call" and that I was only stating what was "true and accurate" about the situation between John Ritenour and Mr. Spagnuolo.

6.    I felt that Mr. Tatum was trying to influence me to not have any further involvement with the case between Mr. Spagnuolo, IOA, and Mr. Ritenour.   I let him know that it was inappropriate for him to be calling me regarding this and I hung up the phone.

7.    It is my opinion that Mr. Tatum wouldn't have made this call without Mr. Ritenour's direction based upon my knowledge and experience of their personal relationship.


**FURTHER AFFIANT SAYETH NAUGHT.**

_____

**DANIEL MAHALIC**


STATE OF _FL_ )
COUNTY OF _Broward_ )

**SWORN TO AND SUBSCRIBED** before me this _19_ day of July 2019, by **DANIEL MAHALIC**, who is personally known to me or who has produced his Florida's Driver's License as identification.

_____
**NOTARY PUBLIC**

ALAN FRIEDLAND
NOTARY
My Comm. Expires
05/03/20
No. FF 948861
PUBLIC
STATE OF FLORIDA

2